

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Attorneys at Law

280 King of Prussia Road • Radnor, Pennsylvania 19087
(610) 667-7706 • Fax: (610) 667-7056
www.sbtklaw.com

E-Mail: gwells@sbtklaw.com

**MEMO ENDORSED**   June 26, 2008



**VIA HAND-DELIVERY**

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
United States Courthouse
500 Pearl Street, Room 540
New York, NY 10007

    Re:  *Melissa Eng-Hatcher v. Sprint Nextel Corp., et al.,*
         **Case No. 07-7350 (BSJ)(KNF)**

Dear Judge Fox:

    On behalf of the plaintiff in this action ("Plaintiff"), I write to respond briefly to Defendants' June 23, 2008 letter to the Court ("June 23 Letter"), and in further support of Plaintiff's June 20 request for i) an informal conference with Your Honor concerning certain outstanding discovery matters, and ii) an appropriate extension of the discovery period sufficient to address these outstanding matters.

    As an initial matter, Defendants' argument in their June 23 Letter that Plaintiff's anticipated modest extension request is "inappropriate" is belied by Defendants' voluntary and necessary discovery efforts to date.. Despite the elapsing of the current end date for certain discovery, Defendants have produced additional documents and deponents (including a videoconference deposition taking place today), and expressed a willingness to discuss provision of at least one additional deponent. Thus, with respect to this issue, the only apparent area of disagreement is whether such a *de facto* extension should be memorialized by order of the Court. Respectfully, Plaintiff believes the appropriate course is to seek the Court's formal consent, especially as there remains, despite the parties' best efforts, a discrete set of discovery disputes regarding deposition testimony scope and outstanding document requests.

    Furthermore, many of the arguments set forth in Defendants' June 23 Letter are now moot. For example, by producing additional Rule 30(b)(6) designees, Defendants tacitly concede that their initial designees were not, in fact, sufficient. With respect to the remaining arguments, Plaintiff does not wish to unnecessarily burden the Court with a detailed rebuttal of Defendants letter – a missive which is simply, in Plaintiff's view, a transparent attempt to avoid

The Honorable Kevin Nathaniel Fox
June 26, 2008
Page 2 of 4

their discovery obligations. Suffice it to say that Defendants' argument with respect to a supposed "delay" is unavailing. In accordance with Defendants' schedule, Plaintiff took depositions of Defendants' designees in Kansas, Maine and New York between June 12 and June 19, 2008 -- sometimes on a double-track basis. Plaintiff had no reason to suspect that the scope of those depositions would be unilaterally limited by defense counsel – to a far greater extent than that set forth in Ms. Hurst's May 22, 2008 letter (attached to the June 23 Letter). Thereafter, Plaintiff's counsel took issue with these attempted limitations as soon as they were set forth – on the deposition record and through direct communication. To the extent the Court is interested in communications between the parties regarding these discovery issues, we annex as Exhibit A e-mail correspondence generated by Plaintiff in its effort to resolve these matters. Much of this correspondence was omitted from Defendants' June 23 Letter, while some was generated after that letter.

Rule 30(b)(6) Depositions

Turning to the issue of outstanding depositions, to the parties' credit an agreement has been reached with respect to the production of an additional Rule 30(b)(6) designee regarding, *inter alia*, the duties of certain types of Defendants' employees. As noted above, that deposition is taking place today.

Unfortunately, Defendants remain intransigent with respect to one critical deposition and related document production issue that go to the very crux of this matter. In the context of this nationwide "off-the-clock" case, Defendants have attempted to argue that Plaintiff's request for a designee who can speak to "time-keeping policies, practices and procedures" nationwide, does not encompass the production of a witness who can testify as to *problems* and *complaints* arising from such policies, practices and procedures. Defendants first revealed this indefensible strategy to Plaintiff only during the course of a 30(b)(6) deposition in Kansas on June 12. After extensive meet-and-confer between the parties, Defendants then tacitly abandoned this manifestly untenable position, and agreed to produce an additional witness to address (i) Defendants' procedures for investigating complaints of off-the-clock work, (ii) how such complaints are processed, (iii) what corrective action, if any, the Company has taken as a result of such complaints, and (iv) information concerning actual complaints of off-the-clock work from across the country (the "complaints designee").[1] Defendants made this offer on the morning of June 23, but insisted nonetheless that the deposition, in Kansas City, take place no later than June 27.

Then, on the morning of June 24, Defendants erected yet another roadblock to obstruct Plaintiff's discovery of "off-the-clock" complaints. Prior to deposing the complaints designee, Plaintiff insisted that Defendants produce long overdue documents regarding complaints received regarding "off-the-clock" work via Defendants' national employee hotlines. Plaintiff initially requested these records in document requests served on or about April 3, 2008, but had been stonewalled by Defendants since that time. These records are obviously integral to

---

[1] It should be noted that Defendants have imposed certain limitations on the complaints designee's testimony with respect to topic areas (iii) and (iv).

The Honorable Kevin Nathaniel Fox
June 26, 2008
Page 3 of 4

Plaintiff's ability to conduct a proper examination of Defendants' complaints designee. On June 24, Defendants finally produced (two days before the scheduled deposition, in electronic form but in an unsearchable format) 1,400 pages of records regarding complaints received via the hotline, but only for stores in New York, and only since April 2005.

Thus, on the one hand, as Defendants themselves have represented, and as Plaintiff is entitled, their proposed complaints designee is prepared to speak to nationwide complaints -- not just complaints from New York from April 2005 to the present. Yet, on the other hand, Defendants limited their relevant document production to complaints via the helpline occurring only in New York and only from April 2005 to present. When pressed with respect to these improper geographic and temporal limitations, Defendants forwarded the following indecipherable explanation:

> The scope of [the complaint designee's] testimony is in no way impacted by the [New York-only] document production. She remains able to testify as previously represented. Let us know by 6 p.m. tonight whether you intend to go forward on Thursday at 9:30 am. with her deposition . . . As to the documents, we believe that our production is more than sufficient. First and foremost, Ms. Eng-Hatcher has never claimed that she made a complaint. Thus, the entire area of inquiry is not relevant. As we told you in our letter of June 23, 2008 there were two centralized sources for actual complaints. We checked both for New York. There was nothing in the ethics hotline. We gave you the relevant complaints from the Helpline. In terms of the time frame, that is the time frame for data that can be searched. We believe that data prior to April of 2005 is not in a searchable format.

Elise Bloom email, 6/24/2008, 5:08 p.m., annexed as Exhibit B hereto.

Nothing in Ms. Bloom's email—or in any other communication from Defendants—supports their refusal to provide Plaintiff with documents to which she is plainly entitled in advance of taking the deposition of Defendants' complaints designee. Indeed, the documents and testimony at issue are central to the nationwide allegations of "off-the-clock" work in this case.[2] Plaintiff is also perplexed by Ms. Bloom's assertion that because Plaintiff never made a formal hotline complaint, that fact renders irrelevant the "entire area of inquiry" concerning the hotlines. Because the central issue in this action is whether employees were paid for all hours worked, any complaints regarding Defendants' time-keeping practices and policies are plainly relevant. Nonetheless, Defendants persist in arguing without foundation that, even if Plaintiff is entitled to a complaints designee of national scope, Plaintiff is not entitled to related documents of a corresponding national scope.

---

[2] In their June 23 letter to the Court, Defendants represent that they have not "global[ly] limit[ed]" their discovery response to New York stores. *Id.* at 5. Given this representation, Defendants' refusal to produce nationwide "off-the-clock" complaints is all the more indefensible.

The Honorable Kevin Nathaniel Fox
June 26, 2008
Page 4 of 4

As a result, in spite of Defendants' threats not to make the complaints designee available after this week, Plaintiff was forced to hold this deposition in abeyance pending intervention by the Court. Plaintiff believes that it is entitled to a complete production of helpline documents in advance of deposing Defendants' complaints designee. Given the current impasse, Plaintiff respectfully requests that the Court convene an informal hearing to consider this issue, as well as the limited additional issues addressed below.

Additional Production Issues

In addition to the documents identified above, Plaintiff also seeks the production of certain "hold notices" identified in the deposition of Bob Bair in Kansas on June 12. Defendants have not stated their position with respect to the production of these clearly relevant documents, and instead, have simply ignored Plaintiff's repeated requests for their production. *See, e.g.*, June 19 letter from Gerald D. Wells to Elise Bloom, annexed hereto as Exhibit C, at 4. Similarly, Defendants have failed to respond to Plaintiff's request (*see id.* at 3) for board minutes concerning overtime issues or "off-the-clock" work. To the extent that such records exist, Plaintiff reiterates its request that they be produced. Finally, in light of the fact that Defendants have continued to produce documents and interrogatory responses up through the writing of this letter (including productions or responses on June 10, 16, 17, 20, 23 and 25), Plaintiff seeks certification from Defendants, when appropriate, that their discovery response is complete.

In sum, although Defendants oppose Plaintiff's request for a brief extension to address the few remaining—albeit critical—discovery issues, they continue to negotiate and produce discovery. Thus, Defendants would plainly suffer no prejudice if the Court were to grant a modest extension to allow time for these issues to be addressed appropriately, and Plaintiff requests that the Court grant the same. In addition, Plaintiff respectfully requests the Court's informal intervention with respect to the limited issues identified above. Counsel for Plaintiff are available to confer in person or via teleconference at Your Honor's convenience.

6/30/08
Applications denied.

SO ORDERED:

*/s/ Kevin Nathaniel Fox*

Hon. Kevin Nathaniel Fox
United States Magistrate Judge

Respectfully submitted,

Gerald D. Wells, III
Counsel for Plaintiff

GDW/db

cc: Elise Bloom, Esq. (via facsimile only)
Ashley R. Hurst, Esq. (via facsimile only)
Hunter R. Hughes, Esq. (via facsimile only)