**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Joseph H. Meltzer, Esq.
Gerald D. Wells, III, Esq.
Robert J Gray, Esq.
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056


- and -

**THE SHAPIRO FIRM, LLP**
Robert J Shapiro, Esq. (RS-3220)
Jonathan S. Shapiro, Esq. (JS-3068)
500 Fifth Avenue, 14th Floor
New York, NY  10110
Telephone: (212) 391-6464
Facsimile: (212) 719-1616

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELISSA ENG-HATCHER, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>SPRINT NEXTEL CORPORATION; SPRINT/UNITED MANAGEMENT COMPANY; and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO.07-CV-7350 –BSJ-KNF<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR (1) CONDITIONAL COLLECTIVE CERTIFICATION; (2) COURT AUTHORIZED NOTICE; AND (3) PRODUCTION OF NAMES AND ADDRESSES PURSUANT TO 29 U.S.C. § 216(b)**<br><br>ORAL ARGUMENT REQUESTED<br><br>Date Action Filed: August 17, 2007 |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF ISSUES .............................................................................. 3

III. STATEMENT OF FACTS ................................................................................ 6

 A. Defendant Is A Highly Centralized Organization...................................... 6

 B. Retail Employees Are Paid Based On The Number Of Hours They Are *Recorded* As Having Worked ............................................................ 8

 C. Plaintiff and Retail Employees Were Not Paid For All Hours They Worked..................................................................................................... 9

 D. Defendant Is Well Aware Of Its Failure To Pay For All Hours Worked By Retail Employees............................................................................... 11

IV. ARGUMENT .................................................................................................. 12

 A. The Issuance of the *Hoffman-La Roche* Notice is Appropriate ............... 12

  1. The Statutory Purpose Of The FLSA Will Be Furthered Through Expedited Notice To The Collective Class .................................. 12

  2. Conditional Collective Certification is Governed by An Extremely Lenient Standard ...................................................... 13

  3. Plaintiff And Members Of The Putative Collective Class Meet The "Similarly Situated" Standard.............................................. 18

 B. Court Authorized Notice Is Appropriate And Should Be Granted .......... 24

V. CONCLUSION............................................................................................... 25

## I.  **INTRODUCTION**

This is a collective action brought pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b) on behalf of all current and former "Retail Consultants" of Defendant's Sprint Nextel Corporation and Sprint/United Management Company ("Sprint" or "Defendant") who worked in its retail stores at any time since August 17, 2004. "Retail Consultants" are defined as: "current and former non-exempt hourly paid employees of Defendant, who are, or were, employed in a retail store."

By her motion, Plaintiff Melissa Eng-Hatcher ("Plaintiff") seeks certification of this action under 29 U.S.C. § 216(b) and judicial facilitation of *Hoffman-La Roche* notice to the following similarly situated Sprint employees:

> (i) All non-exempt hourly paid employees of Defendant's retail stores; (ii) who are, or were not paid for all the hours they worked in any given workweek; and (iii) are, or were not paid premium overtime compensation at a rate not less than one and one-half times their regular rate for all hours worked beyond the forty (40) hour work week, within the three years prior to the granting of this motion.

Notice and the opportunity to opt-in to this action is eminently appropriate in this case because all Retail Consultants are similarly situated under the ("FLSA"). They are all classified by Defendant as non-exempt employees, are all paid according to the number of work hours recorded, are all subject to similar working conditions, and are all subject to Defendant's nationwide policies and practices in which Retail Consultants were required to meet pre-determined sales quotas without incurring overtime expense.

Plaintiff seeks conditional certification of this suit as a collective action and leave to send notice to putative collective action class members. Conditional certification is crucial because time is expiring on the statute of limitations for each putative member of the "collective class," which is not tolled until each member receives notice of this action and affirmatively "opts-in" to

1

the litigation. As a means to protect the rights of affected employees, courts routinely order conditional certification of a collective action at an early stage of litigation. Indeed, conditional certification of the class in a collective action is subject to an extremely lenient standard and, as such, conditional certification is usually granted. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F.Supp.2d 91, 95-96 (S.D.N.Y. 2003) (Smith J) ("[a] plaintiff's burden [at this stage] is minimal"); *Damassia v. Duane Reed, Inc.*, No. 04-CV-8819, 2006 WL 2853971 (S.D.N.Y. 2006) (Lynch J).

The deposition testimony of named Plaintiff Melissa Eng-Hatcher clearly establishes that she and the putative class of Retail Consultants are similarly situated. Moreover, documents produced to date by Defendant, along with the deposition testimony of certain of its corporate designees, confirm that Defendant's uniform labor management and bonus compensation policies created a nationwide *de facto* policy whereby store managers, district managers and retail directors ("Management Personnel") were incentivized to ensure that Retail Consultants met established sales quotas while keeping labor costs to a minimum. Likewise, the quota system established by Sprint for Retail Consultants encouraged them to work "off the clock" to receive compensation and/or avoid corrective action.

Principally, at all times during the relevant period, Defendant exercised strict control and direction over its labor costs (including overtime expense, which were considered one of the most significant costs of doing business). Indeed, part of Defendant's strategy was to have its Retail Consultants incur as close to zero overtime hours as possible. In fact, Defendant's corporate headquarters allocated the maximum number of employee each store could have on a weekly basis. Because the over-arching concern was to reduce labor costs, Management Personnel routinely reviewed and monitored whether overtime expenses were being incurred.

2

Moreover, Defendant utilized a "carrot and stick" approach to ensuring that its Management Personnel met prescribed revenue targets while at the same time keeping overtime expense to a minimum. On the one hand, it rewards them with lucrative bonus compensation for meeting (or exceeding) sales targets. On the other, it disciplines them (including termination) if they exceed the headcount budgets[1] allocated to them and/or permitted unauthorized overtime hours. Combined, Defendant's nationwide labor management-bonus compensation policies created an incentive for Management Personnel to meet revenue targets while keeping labor budgets in line, even if this meant cheating employees out of their pay. Not surprisingly, the natural and predictable by-product of its incentification was the creation of a nationwide *de facto* policy whereby Retail Consultants were required to work "off-the-clock" (while either not clocked-in or after they were clocked-out) in order to meet Defendant's sales targets. Moreover, as part of their own job duties, Retail Consultants were also required to meet their individual sales quotas, which, too, were pre-determined by Sprint.

The net result of Defendant's policy was that Retail Consultants could not achieve Sprint's various pre-determined sales quotas/targets without working off-the-clock. As such, Retail Consultants were not paid all wages due them. As explained below, evidence produced to date demonstrates that this was a nationwide practice. Accordingly, Plaintiff more than satisfies the lenient standard for conditional FLSA certification. Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Conditional Certification and authorize notice to be sent to all similarly-situated current and former Retail Consultants employed by Sprint.

## II.    STATEMENT OF ISSUES

---

[1] "Headcount" refers to the number of employees Defendant allocates to each of its retail store locations. The headcount is based on a store's sales volume from the previous year and, depending on how busy the store is now, employees can me moved by Management Personnel from one store to the next. See Dixon Dep. at 43:13 - 44:14. Headcount is the means by which Sprint controls its labor costs.

The FLSA authorizes employees such as Plaintiff to sue for unpaid wages, including overtime, on behalf of herself and other similarly situated employees. 29 U.S.C. § 216(b). Each putative member of a collective action must affirmatively "opt-in" by filing a written consent. This process differs from a class action under Rule 23 of the Federal Rules of Civil Procedure in which individuals are automatically members of the class unless and until they affirmatively "opt-out" of the class. Further, and unlike an action brought pursuant to Rule 23,[2] under the FLSA, the statute of limitations continues to run on each individual's claim until such individual files his or her consent to opt-in with the Court. This difference, and the resulting effect on an individual's statute of limitations, weighs in favor of granting Plaintiff's motion.

In *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), the United States Supreme Court held that plaintiffs in FLSA collective actions are entitled to discover the identity of all "similarly situated" individuals with potential claims, and to send court-approved notice to those potential plaintiffs to inform them of the lawsuit and their right to opt in within a specified time. *Id*. at 172-74.[3] Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *Id*. at 172.

A motion for *Hoffman-La Roche* notice is typically granted at an early stage of the case as the motion requires only a minimal showing that other similarly situated individuals exist who may desire to join the present action.[4] *See, e.g., Ayers v. SGS Control Servs., Inc.*, No. 03-CV-

---

[2] In a Rule 23 class action, a putative class member's statute of limitations is tolled until there is a ruling on class certification. *See Am. Pipe & Constr. Co. v Utah*, 414 U.S. 538 (1974).

[3] Although *Hoffman-La Roche* involved a claim under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*, the ADEA expressly incorporates the enforcement provisions of the FLSA including the "opt-in" provisions of 29 U.S.C. 216(b). Consequently, courts in FLSA actions routinely look to *Hoffman-La Roche* for guidance. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 201-202 (S.D.N.Y. 2006) (Batts J.)

[4] The fact that Plaintiff has identified, by name, additional Retail Consultants who may consent to opt-in to this action shows that there are other similarly situated individuals who

9078, 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004) (Ellis MJ). (stating that initial determination at the notice stage of whether plaintiffs are similarly situated requires nothing more than substantial allegations that the putative class members were collectively the victims of a single decision, policy or plan). As demonstrated herein, is it undeniable that Plaintiff and Defendant's Retail Consultants were subject to Sprint's *de facto* nationwide policy which deprived them of all wages due.

Dissemination of *Hoffman-La Roche* notice effectively accomplishes the objectives of judicial efficiency as well as curtailing abusive practices because it efficiently notifies individuals of their rights under the FLSA, tolls the statute of limitations, and provides a period of time for an individual to decide whether to take part in the lawsuit, while ensuring that those who affirmatively opt-in have their claims heard by the same court in a single action. *Hoffman-La Roche* notice is eminently appropriate in the instant matter at this stage of the litigation because the pleadings and evidence gathered to date clearly demonstrate that Defendant's Retail Consultants are similarly situated.

Specifically, Defendant's Retail Consultants are similarly-situated because: (1) they are classified as non-exempt employees working in Defendant's retail stores; (2) are all compensated based on the number of work hours recorded; (3) are required to meet prescribed sales quotas; and (4) work under Management Personnel who are incentivized to lower labor costs. As asserted in the Complaint, and demonstrated by Plaintiff's deposition testimony and Defendant's own documents, Retail Consultants were, by necessity, required to work off the clock and/or were not paid for all overtime hours they worked for the benefit of Defendant and its Management Personnel. Defendant's documents indicate, *inter alia*, that Management Personnel

---

desire or may desire to join the present action upon receiving notice of their rights. *See* Declaration of Gerald D. Wells, III ("Wells Decl.") Exhibit B, Deposition of Melissa Eng-Hatcher ("Eng-Hatcher Dep.") at. 49:11-21; 86:16 - 87:14; 127:24 – 128:5.

were subject to discipline for permitting Retail Consultants to work more than forty hours in a work week without first obtaining authorization from senior managers.

### III.    STATEMENT OF FACTS

#### A.    Defendant Is A Highly Centralized Organization

Sprint operates approximately 1,254 stores throughout the United States.[5]  Defendant is centrally organized and exercises strict control over store management and operations.[6]  *See* Wells Decl. Exhibit G, Deposition of Derek Bailey ("Bailey Dep.") at 28:13-24; Wells Decl. Exhibit F, Deposition of Mark Galluccio ("Galluccio Dep.") at 100:20–101:8.  All corporate policies concerning operations, management, compensation, sales targets, quotas, and record keeping for all Sprint stores are created, implemented, disseminated, controlled, and regularly and systematically monitored by personnel at Defendant's corporate headquarters in Overland Park, Kansas.  For example, corporate managers in Kansas determine the headcount budgets allocated to each store (nationwide).  *See* Bailey Dep. at 28:13-24; Wells Decl. Exhibit C, Deposition of Laurilyn Dowling ("Dowling Dep.") at 31:22-24.  Indeed, Sprint monitors compliance with labor costs/headcount budgets on a regular basis to ensure that overtime expense is as low as possible.  *See* Bailey Dep. at. 34:17 – 35:13; 37:20 – 38:4.  Moreover, Defendant requires that Retail Consultants must first receive authorization from management personnel (including district managers and regional directors) before working overtime.  *See*

---

[5] *See* Wells Decl. Exhibit E, Deposition of Kim Dixon ("Dixon Dep.") at 18:1-2; *see also,* Wells Decl. Exhibit D, Deposition of Rob Lynch ("Lynch Dep.") at 38: 13-20 (indicating that the Company owned approximately 1,240 stores).

[6] Defendant's stores are divided into three geographic regions. *See* Lynch Dep. at 40:5-7. Each is supervised by an area vice-president (*see* Galluccio Dep. at 30:16-19), and, in descending order, area retail directors, district managers and store managers. *See* Dixon Dep. at 22:3-9. A district manager is assigned to supervise the operations and management of approximately six to fifteen locations. *See* Galluccio Dep. at 89:18-23.

Dixon Dep. at 46:7-15; *See also,* Wells Decl. Exhibit H, (Bates SPRMEH 000256). It is Sprint's policy to formally discipline any employee who permits a Retail Consultant to work overtime when it has not been authorized in advance. *See* Galluccio Dep. at 78:5-10; *See* Wells Decl. Exhibit K, (Bates SPRMEH 002348). Moreover, Sprint's nationwide policy is to keep overtime costs to as close to zero as possible. Bailey Dep. at 35:11-13.

Sprint has a national policy of setting sales quotas for Retail Consultants. *See* Wells Decl. Exhibit N (SPRMEH-001971). Sprint's corporate headquarters, working in conjunction with management personnel, sets sales quotas for Retail Consultants. Indeed, Retail Consultants are instructed by management personnel to meet their sales quotas. Eng-Hatcher Dep. at 124:5-15. When Retail Consultants fail to meet their assigned sales quotas, they are counseled by Sprint. Bailey Dep. at 36:7-10. Repeated failure to meet a sales quota leads to termination. *Id*. at 36:16-17. Indicative of the paramount concern Defendant had for ensuring that its sales quotas were met, throughout the time period covered by the Complaint, Defendant offered multiple incentive programs to Management Personnel based on meeting sales-related targets. *See* Dowling Dep. at 24:15 – 26:2; *See also* Wells Decl. Exhibit J (SPRMEH 000714). Among other things, these programs offered monetary bonuses and other benefits. *Id*. This company-wide incentive policy is centrally determined by Defendant's corporate management. *Id*. For example, store managers are eligible for a bonus of up to $1,625.00 per month ($19,500.00 per year), enabling them to substantially increase their total annual compensation package. *See* Wells Decl. Exhibit J (SPRMEH 000714) at p. 18. Further, district managers are eligible to receive a bonus of up to $1,875.00 per month ($22,500.00 per year). *Id*. at p. 11. Also, retail directors are eligible for a bonus of up to $4,100.00 per month ($49,200.00 per year). *Id*. at p. 4. Because the incentives are sales-driven, Management Personnel are dependent upon Retail Consultants

meeting the Company's prescribed sales quotas.  *See* Wells Decl. Exhibit N (SPRMEH-001971)

The result is that Management Personnel are incentivized to meet the Company's pre-determined

sales-related targets, as well as comply with Sprint's pressure to eliminate overtime wages, at the

expense of Defendant's Retail Consultants.

> **B.    Retail Consultants Are Paid Based On The Number Of Hours That Are**
> ***Recorded* As Worked**

Retail Consultants are non-exempt, hourly employees.   Moreover, despite having

different job titles, these employees share common job duties.  *See* Lynch Dep. at 15:4-9; *See*

*also* Galluccio Dep. at 33:9– 4:2; 54:21– 55:8 (indicating that Retail Consultants sell

Defendant's products and services).   As such, Defendant views its Retail Consultants as

essentially the same. *Id*.  Furthermore, Retail Consultants are all required to clock-in and clock-

out using Defendant's point-of-sale computerized system – or "Retail Management System"

("RMS") – which records the total hours they have worked.  Bailey Dep. at 58:18 – 59:4; Lynch

Dep. at 46:21-23; 58:1-6; *See also* Wells Decl. Exhibit I (SPRMEH 000257).  The time punches

entered into the RMS system are transferred (for payroll purposes) to Defendant's Retail Time

and Attendance ("RTA") and PeopleSoft systems for processing.  Lynch Dep. at 47:16-19; 65:1-

10.   While Defendant's time-keeping systems have changed over time, historically the

requirement for Retail Consultants to record the hours they worked in order to be paid has

remained the same.  Eng-Hatcher Dep. at 75:10-22; 211:10-12; 212: 4-7; Bailey Dep. at  52:7-

12; 58:18 – 59:4; Galluccio Dep. at  61:10-19.

All of Defendant's Retail Consultants are paid according to the number of hours that

corporate has recorded them as working.   That is, Retail Consultants are only paid for the

recorded, adjusted hours they worked. Lynch Dep. at 41:19 – 42-1; 65:14-20.  At present, Retail

Consultants cannot enter the RMS system to edit/amend their time-records or to determine

whether Management Personnel have adjusted their hours. Lynch Dep. 45:18-21; 49:9-25; 65:16-25. Defendant's RTA system enables it to maintain and monitor time and attendance. Lynch Dep. at p. 47:16-19. In addition, store management can access the time-keeping system to adjust the time records of Retail Consultants. Lynch Dep. at 49:9-25; 50:12-19. It is particularly noteworthy that Plaintiff testified at her deposition that a number of time verification sheets bore a signature, purported to be her own, which Plaintiff indicated was in fact not hers. *See* Eng-Hatcher Dep. at 215:19-24.

Until the fall of 2006, employees were able to make sales without being clocked in to Defendant's time-keeping system. Lynch Dep. at 51:4-10. As such, Defendant's Retail Consultants made sales while off-the-clock. Defendant, in the fall of 2006, modified its computer program to prevent this situation from occurring. Lynch Dep. at 52:7-10.

### C. Plaintiff and Other Retail Consultants Were Not Paid For All Hours They Worked

Plaintiff was employed by Defendant as a Retail Consultant, in particular, a Retail Communications Consultant, at two of the Company's New York stores. *See* Eng-Hatcher Dep. 35:2-15; 36:21-25; 37:15-18. During the course of Plaintiff's employment, Defendant failed to compensate her for all hours she worked. *Id*. 68:3-4; 74:16-19; 83:22-25. On several occasions she indicated that her time-records did not agree with her paycheck. *Id*. 76:2-3. On some occasions, Plaintiff was informed by Sprint that discrepancies in her pay were the result of her inputting her hours incorrectly. *Id*. 78:16-21. However, when she pressed the issue with her direct managers, she was informed that, unless she had a copy of her timesheet, Sprint would not pay her overtime. *Id*. 77:10-17; 79:12-19.

Notably, Plaintiff avers that she spent time working in Defendant's retail stores after she had clocked out at the end of the day for which she was not paid. *Id*. 85:4 – 86:4. She was

9

routinely required to clock-out of Defendant's time-keeping system yet had to remain in the store while receipts were counted. *Id*. 45:10 – 49:5; 88:6-13. Plaintiff's colleagues were also required to remain in the store while receipts were counted after having clocked out of Defendant's time-keeping system. *Id*. 49:11-21; 86:16 – 87:14. Plaintiff regularly continued to work after her scheduled shift had ended, but was not paid for those hours. *Id*. at 187:7 – 189:5. Additionally, Plaintiff was not paid for handing out company fliers and performing sales outside Defendant's retail stores. *Id*. at 105:18-21; 105:25 – 107:15; 113:18-19; Lynch Dep. at 26:15-25 (confirming that Retail Consultants work outside of the retail stores).

In addition, Defendant's Retail Consultants could not meet Defendant's prescribed sales quotas without working off-the-clock. Eng-Hatcher Dep. at 189:24–190:8. Moreover, Management Personnel emphasized that Retail Consultants were to work outside Defendant's retail stores, including during lunch hours, in order to generate sales and meet prescribed quotas. *Id*. at 24:5-21; 127:12-23. Indeed, Plaintiff and her colleagues, including Robert Torres, Germain Gardner, Helen Rosario and Johnny Santana, all regularly worked outside of Defendant's retail store after their shifts had ended. *Id*. at 127:24–128:5. When Plaintiff informed her supervisors that her time-sheet did not reflect all the hours that she had worked, she was informed that she was unable to access the her time-records to include all the hours she worked. *Id*. at 100:25 – 101:8. Although Plaintiff's managers indicated they would correct her time-records for her, Plaintiff's bi-weekly compensation frequently did not accurately reflect all the hours she worked. *Id*. at 102:6-20.

Significantly, Plaintiff testified that other Retail Consultants complained about their paychecks not accurately reflecting all the hours they worked. *Id*. at 112:16 – 113:4; 120:9-14; 232:11 – 233:6. These do not appear to be isolated incidents confined solely to the store

10

locations where Plaintiff worked.  Indeed, as demonstrated by the documents produced by Defendant to date, this problem is pervasive. *See* Wells Decl. Exhibit L (SPRMEH-002946).

In short, Defendant's failure to pay its Retail Consultants for all hours worked, including premium compensation for all hours worked in excess of forty, is widespread throughout the country. *Id*.

**D.    Defendant Is Aware Of Its Failure To Pay For All Hours Worked by Retail Consultants**

Defendant's strict labor management and bonus compensation policies created a *de facto* nationwide policy whereby Management Personnel were incentivized to ensure that Retail Consultants met established sales quotas without recording all the hours they worked, including hours in excess of forty in a work week.  If they achieved this goal, they would be rewarded; if they did not, they would be counseled.  Bailey Dep. at 36:7-10; Galluccio Dep. at 74:24 – 75:8; 93:16-22.  The practical manifestation of this policy was that Retail Consultants across the country were regularly required to work off-the-clock and were not fully compensated for all the hours they worked.

Documents produced by Defendant indicate that it was acutely aware that Retail Consultants nationwide were routinely being denied wages owed to them.  For example, during the relevant time period, Defendant maintained Hotlines to respond to complaints regarding, *inter alia*, Sprint's failure to pay Retail Consultants for all the hours they worked. Lynch Dep. at 72:20 – 73:6; 80:24 – 81:15.

Indeed, Defendant not only acknowledged that overtime (nationwide) is to be kept as close to zero as possible, but that Retail Consultants were disciplined for failing to meet the Company's pre-determined sales quotas. Bailey Dep. at 36:7-10. Despite this, the Company has done little to curb the harsh and illegal effects of this *de facto* policy   To date, the Company still

bases bonuses paid to store managers, district managers and retail directors on whether pre-determined sales quotas are met. *See* Wells Decl. Exhibit J (SPRMEH-000714).

IV.    **ARGUMENT**

    A.    **The Issuance of the *Hoffman-La Roche* Notice is Appropriate**

        1.    **The Statutory Purpose Of The FLSA Will Be Furthered**
                **Through Expedited Notice To The Collective Class**

The FLSA enables an aggrieved employee to bring suit in the form of a collective action on behalf of "similarly situated" employees.   29 U.S.C. § 216(b).   As detailed herein, Defendant's Retail Consultants are unquestionably similarly situated to Plaintiff.   Furthermore, the United States Supreme Court has authorized district courts to join multiple parties through collective certification.   *Hoffman-La Roche*, 493 U.S. 165 (1989).   Indeed, the Second Circuit has long held that the interests of both the parties and the courts are best served if plaintiffs' FLSA claims are heard in one lawsuit.   *Braunstein v. Eastern Photographic Labs*., *Inc.,* 600 F.2d 335, 336 (2d Cir. 1978) (per curiam), *cert. denied*, 441 U.S. 944 (1979).   The law, therefore, favors collective actions because they allow for the "efficient resolution in one proceeding of common issues of law and fact," in addition to giving plaintiffs the ability to "lower individual costs to vindicate rights by the pooling of resources."   *Hoffman-La Roche*, 493 U.S. 165, 170 (1989); *see also, Jackson v. N.Y. Tel. Co*., 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (Koeltl J). "These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action so that they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170.   Thus, "court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id*. at 172.

12

Here, potential collective action members, undoubtedly, have statute of limitations concerns as their ability to seek timely relief is continuing to run. Court ordered notice will serve the dual purposes of the FLSA by (i) promoting judicial economy and avoiding multiple lawsuits and (ii) furthering the remedial nature of the law. *Hoffman-La Roche*, 493 U.S. at 173 ("The broad remedial goal of the statute should be enforced to the fullest extent of its terms"). Therefore, judicial notice in this case is appropriate to prevent the loss of potential claims caused by the FLSA's statute of limitations. *Hoffmann v. Sbarro, Inc*., 982 F.Supp. 249, 260 (S.D.N.Y. 1997) (Sotomayor, J) (ordering notice be sent to putative collective class members and noting that "[i]t is in part for this reason – the running statute of limitations – that plaintiffs urge the Court to authorize the sending of notice and "opt-in" consent forms to potential plaintiffs whose claims continue to 'die daily.'") (internal quotation marks and citation omitted). Absent receiving notice of this action, many putative class members may be unaware of their rights under the FLSA, and more importantly unaware that their ability to enforce those rights may be expiring, while current Retail Consultants continue to incur damages resulting from Defendant's nationwide policies.

## 2. Conditional Collective Certification is Governed by An Extremely Lenient Standard

Certification at the notice stage of an FLSA collective action requires the Plaintiff to make only a "modest factual showing" that he and the potential putative class members were together the victims of a common policy or plan that violated the law. *Hoffmann*, 982 F.Supp. at 261; *Jackson*, 163 F.R.D. at 431 (at the preliminary notice stage, "plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common … scheme.); *Krueger v. N.Y. Tel. Co*., No. 93-CV-0178, 1993 WL 276058 (S.D.N.Y. July 21, 1993) (McKenna J) (when the litigation is in its early stages, plaintiffs need only provide

13

"some factual basis from which the court can determine if similarly situated plaintiffs exist."). *See also, Dumitrescu v. Mr. Chow Enter., Ltd.,* No. 07-CV-3601, 2008 WL 2600667 (S.D.N.Y. June 30, 2008) (Leisure J); *Laroque v. Domino's Pizza, LLC*, No. 06-CV-6387, 2008 WL 2303493, *5 (E.D.N.Y. May 30, 2008) (Irizarry J); *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, *1 (S.D.N.Y. Feb. 19, 2008) (Duffy J); *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 321 (S.D.N.Y. 2007) (Batts J); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181, (S.D.N.Y. 2007) (Pauley, III J); *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 368 (S.D.N.Y. 2007); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. May 22, 2006) (Batts J); and *Gjurovich*, 282 F.Supp.2d at 96.

Moreover, courts in this district have also found plaintiffs and putative class members to be similarly situated based simply on the plaintiff's "substantial allegations" that they and the putative class members were together common victims of an FLSA violation. *See, e.g., Ayers*, 2004 WL 2978296, at *5. In either case, the standard is lenient and conditional collective action certification is usually granted. *See Gjurovich*, 282 F.Supp.2d at 95-96 ("A plaintiff's burden [at this stage] is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one."); *Damassia v. Duane Reed, Inc.*, No. 04-CV-8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) (Lynch J), (citing *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1-*2 (E.D.N.Y. Aug. 22, 2006); *Brzychnalski v. Unesco, Inc.*, 35 F.Supp.2d 351, 353 (S.D.N.Y. 1999) (Chin J); *Realite v. Ark Rests. Corp.*, 7 F.Supp.2d 303, 307-308 (S.D.N.Y. 1998) (Sotomayor J); *Palmer v. Reader's Digest Ass'n, Inc.*, No. 84-CV-8397, 1986 WL 324 (S.D.N.Y. Feb. 11, 1986) (Haight J); *Frank v. Capital Cities Commc'ns, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981) (Haight J). *See also, Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 55 (S.D.N.Y.2005) (Gorenstein MJ) (describing plaintiffs' burden as "very limited").

Courts have routinely found plaintiffs to be similarly situated where they were non-exempt hourly employees and were not paid for all the hours they worked. *See, e.g., Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) (approving a class of plaintiffs alleging off-the-clock claims) (citing *Young*, 229 F.R.D. at 55; *Patton v. Thomson Corp.*, 364 F.Supp.2d 263, 267 (E.D.N.Y. 2005); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234, 238-239 (N.D.N.Y. 2002). *See also, Fasanelli*, 516 F.Supp. 2d at 322; *Adams v. Inter-Con Sec. Systs., Inc.*, 242 F.R.D. 530, 536-573 (N.D. Cal. 2007) (granting conditional certification where the plaintiff and putative class members were not compensated for all hours worked off-the-clock, noting, *inter alia*, that "actions with off-the-clock allegations are suitable for collective action certification"); *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-CV-0802, 1999 WL 1081357, at *3-4 (D. Or. Dec. 1, 1999) (granting conditional certification and ordering notice issued to employees statewide in an off-the-clock case).

Here, the issue is simply whether Retail Consultants are similarly situated with respect to their FLSA claims; that is, do they share the common claim that they were denied compensation owing to them. *See Hallissey*, 2008 WL 465112 at *1 (certifying collective action where plaintiffs' claims that they were denied minimum and overtime wages were common to all putative class members); *Iglesias-Mendoza*, 239 F.R.D. at 368 (finding plaintiffs were subjected to certain wage and hour practices and that "their experiences were shared by members of the proposed class."). As evidenced by Plaintiff's deposition and Defendant's own records, it is eminently clear that there is a common claim among Defendant's Retail Consultants. Moreover, they were all subject to Defendant's nationwide policy regarding sales quotas and incentive bonuses. Moreover, "[p]laintiff is not required to indicate specifically how many potential opt-in plaintiffs may join the suit , nor must an FLSA plaintiff join with other potential plaintiffs at the

time the suit is filed in order for a representative action to be pre-certified." *Dumitrescu*, 2008 WL 2600667 at *6 (internal citations omitted). Here, Defendant employed a substantial number of employees who were subjected to the same policies as Plaintiff. Therefore she has adequately demonstrated that there is a class of people potentially interested in joining the collective action. *See id.*

In determining whether employees are similarly situated, courts have typically proceeded on an *ad hoc* (case-by-case) basis utilizing a two-stage inquiry. *Fasanelli*, 516 F.Supp.2d at 320-321 ("Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery"); *Cuzco v. Orion Builders, Inc.,* 477 F.Supp.2d 628, 632 (S.D.N.Y. Mar. 8, 2007) (Robinson J) (noting that "[c]ourts typically undertake a two-stage review in determining whether a suit may proceed as a collective action under the FLSA."). Under the *ad hoc* approach, the district court makes two determinations. The first determination is at the "notice stage" where the court determines whether plaintiffs are "similarly situated" which in turn determines whether a collective action should be certified for the purpose of sending notice of the action to potential class members. *Cuzco*, 477 F.Supp.2d at 632.

Because a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage.[7] *Gjurovich*, 282 F.Supp.2d at 95 ("A plaintiff's burden is minimal, especially since the "determination that potential plaintiffs are similarly situated" is merely a "preliminary" one.") (citing *Hoffman*, 982 F.Supp. at 261). *See*

---

[7] While the parties have engaged in discovery regarding certification, Plaintiff contends that certain discovery responses remain outstanding, and will be filing a motion to compel the production of the outstanding discovery.

*also, Lee*, 236 F.R.D. at 197; *Realite*, 7 F.Supp.2d at 306.  A court may deem plaintiffs and members of a collective class "similarly situated" after considering nothing more than the Plaintiff's "own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallisey*, 2008 WL 465112 at *1; *Anglada v. Linens 'N Things, Inc.*, No. 06-CV-12901, 2007 WL 1552511 at *4 (S.D.N.Y. May 26, 2007) (Smith MJ).

The second step of a collective action inquiry occurs after notice has been sent, potential putative class members have opted-in and discovery is complete.  *Hallisey*, 2008 WL 465112, at *1 ("Although several depositions have been taken and numerous documents produced, it is not necessary to engage in the second tier of analysis with the more stringent standard here as such scrutiny is applied "only to '*post discovery*' determinations, 'usually precipitated by a defendant's motion for decertification of the class,' and by a § 216(b) motion.") (quoting *Chowdhury v. Duane Reade, Inc*., No. 06-CV-2295, 2007 WL 2873929, at *3 (S.D.N.Y. Oct. 2, 2007) (Lynch J); *see also, Torres v. Gristede's Operating Corp*., No. 04-CV-3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006)) (Crotty J) (noting that the second stage is precipitated by a defendant's motion for decertification of the class); *Mentor*, 246 F.R.D. at 178 ("Defendants may move to de-certify an FLSA class if, after pre-trial discovery, it becomes apparent that the plaintiffs are not similarly situated.") (citing *Masson v. Ecolab, Inc.,* No. 04-CV-4488,  2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005)).   In making this determination, the court does not reach the merits of the plaintiff's claims.  *Gjurovich*, 282 F.Supp.2d at 96 ("The ultimate determination regarding the merits of the case … is made later in the litigation process.); *Realite*, 7 F.Supp.2d at 306 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in [the] case.").

Therefore, at the "notice stage," it is not plaintiff's burden to prove her entire case. *Damassia*, 2006 WL 2853971, at * 3 ("A court need not evaluate the underlying merits of a plaintiff's claims to determine whether the plaintiff has made the minimal showing necessary for court-authorized notice.") (citing *Scholtisek v. Eldre Corp.,,* 229 F.R.D. 381, 391 (W.D.N.Y. 2005); *Gjurovich,* 282 F.Supp.2d at 105; *Hoffmann,* 982 F.Supp. at 262.). As evidenced by Plaintiff's deposition testimony and Defendant's own records, it is without question that Plaintiff and Defendant's Retail Consultants are/were (i) all classified as non-exempt employees, (ii) all work(ed) in Defendant's retail stores; (iii) all compensated pursuant to a Company-wide policy; and (iv) all worked under Management Personnel who were incentivized to meet sales quotas and reduce labor costs. The net result of Defendant's compensation policy for Management Personnel was that Retail Consultants were not paid for all hours worked.

Importantly, courts have granted conditional certification even where plaintiffs' work experiences differed. *Hallisey*, 2008 WL 465112, at *2 (granting conditional certification where the defendant pointed out differences in plaintiffs' work experiences, finding that "the fact that employees worked a variety of different jobs in a number of different departments at different locations [did not] preclude class treatment."); *see also, Realite*, 7 F. Supp. 2d 303 (finding that plaintiffs were similarly situated despite working at 15 different restaurants and holding a variety of different positions). As Plaintiff and Defendant's Retail Consultants shared similar experiences and were uniformly subject to Defendant's policy, this Court should likewise grant Plaintiff's Motion for Conditional Certification.

### 3.    Plaintiff And Members Of The Putative Collective Class Meet The "Similarly Situated" Standard

For collective action certification, Plaintiff need only show that her position is similar, not identical, to that of putative class members. *Hallisey*, 2008 WL 465112, at *2. Here, Plaintiff

was clearly similarly situated to the other Retail Consultants - as Sprint viewed all Retail Consultants as relatively the same, despite some differences in job duties.

Furthermore, there is no requirement that Plaintiff must provide equal amounts of evidence for every facility. *Scwhed v. Gen. Elec. Co.,* 159 F.R.D. 373, 377 (N.D.N.Y. 1995) (noting that even if all the named plaintiffs were employed by the same department, as long as they allege the same policy effected other employees elsewhere, notice to employees in the corporation's other units and operations is warranted); *see also, Allen v. McWane, Inc.,* No. 06-CV-0158, 2006 WL 3246531, at *3 (E.D. Tex. Nov. 7, 2006) ("[a]lthough the affidavits and declarations do not encompass all of Defendant's facilities, the Court finds that the Plaintiffs have come forward with competent evidence").  Rather, conditional certification is appropriate as long as Plaintiff alleges a factual nexus between the employees and the alleged policy. *Realite*, 7 F.Supp. 2d at 308.

In the case at bar, Plaintiff has identified (by name) other Retail Consultants who were also subject to Defendant's company-wide practices.  *Laroque*, 2008 WL 2303493, *6 (certifying a collective action where the plaintiff had, *inter alia*, alleged a specific pattern of FLSA violations and identified a number of other potential class members by name); *Gjurovich*, 282 F.Supp.2d at 96 (certifying a collective action where "[t]he Plaintiff has identified by name a number of current or former … employees who held the same or similar positions as the Plaintiff [and] who, like the Plaintiff … may not have received overtime compensation.").

Here, the issue is simply whether Retail Consultants are similarly situated with respect to their common claim that they were denied compensation by Defendant.  Plaintiff unquestionably meets her notice stage burden.  Indeed, she has provided substantial allegations, along with a

declaration and exhibits, to support her contention that he and the putative collective action members are similarly situated and were uniformly subject to Defendant's policies.

Further, Defendant's policies were uniform. These company-wide policies inarguably favor collective certification and issuance of notice to putative class members, particularly where, as here, Defendant was unquestionably on notice that its polices resulted in its Retail Consultants not receiving compensation for all hours worked. *See Falcon v. Starbucks Corp.*, No. 05-CV-0792, 2008 WL 155313, at \*6 (S.D. Tex. Jan. 15, 2008) (denying de-certification of nationwide conditional collective action certification where there was significant evidence that plaintiff's either worked off-the-clock or had time shaved off of their hours by store managers); *Wilks v. Pep Boys*, No. 02-CV-0837, 2006 WL 2821700, at \*6 (M.D. Tenn. Sept. 26, 2006) (denying de-certification where the defendant's time-keeping and compensation policies were set at the national level and resulted in an "unofficial" policy whereby plaintiff's worked off-the-clock and/or have their time records adjusted); *Chabrier v. Wilmington Fin., Inc.*, No. 06-CV-4176, 2008 WL 938872, at \*3 (E.D. Pa. Apr. 4, 2004) (denying de-certification on the basis that plaintiff's jobs, compensation, employer policies and work environment showed that they were all similarly situated).

Plaintiff's Complaint alleges, *inter alia*, that she and other similarly situated class members were not paid for all the hours they worked.[8] Plaintiff alleges that Retail Consultants were required to record their hours worked through a computer system at their retail location, including logging into the system each time they begin a workday, begin and return from a rest or lunch break, and when they end their day. The data entered by the Retail Consultants is

---

[8] *See* Plaintiff's Compl. at ¶10.

processed by Defendant to calculate the Retail Consultants' pay.[9]  Further, Plaintiff alleges that all Retail Consultants were required to work off the clock for the benefit of Defendant.[10] Moreover, Retail Consultants were required to promote and solicit Defendant's products outside its retail stores (again, not being properly credited and compensated for such work).[11]

The allegations, for example, contained in Plaintiff's Complaint are substantiated by the evidence gathered to date.  Plaintiff testified at her deposition that she was not paid for the time she spent in Defendant's retail stores after she had clocked out at the end of the day.  Eng-Hatcher Dep. at p. 85:4 – 86:4.  She was routinely required to clock-out of Defendant's time-keeping system yet had to remain in the store while receipts were counted.  *Id*. 45:10 – 49:5; 88:6-13.  Furthermore, Plaintiff regularly continued to work after her scheduled shift had ended, yet was only paid for such hours on holidays and inventory days.  *Id*. 87:7 – 189:5.  Plaintiff also worked during her lunch breaks and on her days off, without being clocked into Defendant's time-keeping system, to perform, *inter alia*, sales-related activities outside Defendant's retail stores.  *Id*. at pp. 105:18-21; 105:25 – 107:15.

Furthermore, during her deposition Plaintiff identified, by name, other putative class members who are similarly affected by Defendant's *de facto* policy of not paying all wages due and owing to its Retail Consultants, including the following individuals who worked in Plaintiff's stores: Robert Torres, Germaine Gardner, Helen Rosario, Johnny Santana and Cecil Desousa.[12]  This is consistent with Defendant's own records which reveal that other Retail

---

[9] *Id.* at ¶14.

[10] *Id.* at ¶16.

[11] *Id.* at ¶17.

[12] Moreover, Plaintiff also identifies individuals with the name Tarik and Raquel who, Plaintiff believes, will be identified as a result of conditional certification of her collective action.

Consultants have contacted Defendant alleging that they, too, were not paid for all hours worked. *See* Wells Decl. Exhibit L (SPRMEH-002946).

In addition to Plaintiff, Retail Consultants (nationwide) have alleged that they, too, were similarly impacted by Defendant's *de facto* policy.  Indeed, several lawsuits bought by Retail Consultants across the nation, in addition to the present, have alleged substantially similar off-the-clock allegations as Plaintiff, including failure to pay overtime compensation.  *See, e.g., Webster v. Sprint PCS Inc.,* No. 06-cv-04623 (C.D. Cal. filed July 25, 2006); *Gardner v. Sprint/United Mgmt. Co.,* No. 07-cv-06352 (C.D. Cal. filed Sept. 28, 2007); *White v. Sprint Corp.*, No. 04-cv-1156 (M.D. Tenn. filed Dec. 30, 2004)); *Sprint Wage and Hour Cases*, JCCP No. 4357 (Cal. Super. Ct. Alameda County); *Banniester-Smith v. Sprint/United Mgmt. Co.*,  No. RG03-093 168, Alameda County; and *Avila v. Sprint Corp.*, No. BC302588, Los Angeles County, *Montlouis*, No. RCV077441, San Bernardino County).  Indeed as recently as June 4, 2008 a complaint was filed against Defendant alleging substantially the same claims as Plaintiff. *See Osorio v. Sprint Nextel Corporation*, Case No. 08-cv-3228 (N.D. IL).

As a result, Plaintiff has clearly shown that she and the putative class of Retail Consultants are similarly situated and subject to Defendant's *de facto* nationwide policy.  The mere fact that all Retail Consultants "were together the victims of a single decision, policy or plan" supports a finding of "similarly situated, the granting of conditional certification as a FLSA collective action and court-approved notice to all putative class members."  *See Wilks*, 2006 WL 2821700, at *6 (de-certification denied where defendant's "unofficial" policy effected exempt employees nationwide).  As such, any slight variation in how Retail Consultants performed off-the-clock work or how their time-records were adjusted is irrelevant. *See Chowdhury*, 2007 WL 2873929 at *5 (holding that despite the wide variance in the abilities,

durations of employment, and specific tasks of the named plaintiffs and opt in plaintiffs they were nonetheless similarly situated; *see also, Falcon*, 2008 WL 155313, at *6 (despite plaintiff's performing different duties while off-the-clock, decertification of conditional collective action certification was denied where evidence showed that the defendant's policies created an environment that led to off-the-clock work and shaving of time-records).

Courts routinely conditionally certify FLSA collective actions where employees share the same non-exempt status, are paid by the hour, have similar work experiences and are all subject to the same policy of uncompensated work. *See, e.g., Bowens*, 2008 WL 1827439, at *24; *Young*, 229 F.R.D. 50, 55; *Patton*, 364 F.Supp.2d 263, 267; *Roebuck*, 239 F.Supp.2d 234, 238-239; *Fasanelli*, 516 F.Supp. 2d at 322; *Adams*, 242 F.R.D. 530, 536-573; and *Thiebes*, 1999 WL 1081357, at *3-4.    Furthermore, conditional certification is warranted where, as here, Defendant's management benefited by receiving bonus compensation for meeting sales and incentive quotas, on the one hand, and avoided paying overtime compensation on the other. Indeed, as one court aptly observed:

> "[Defendant's] general policy of requiring [exempt employees] to perform job duties that could not easily be completed within 40 hours while, at the same time, strongly discouraging overtime … created an environment that at least strongly motivated managers to commit the alleged FLSA violations … [While] Defendant correctly notes that it is not unlawful for an employer to have a policy of discouraging overtime[] [w]here such a policy, however, in combination with other factors, leads to a consistent pattern of FLSA violations, it can support a finding that Plaintiffs are similarly situated for purposes of section 216."

*Falcon,* 2008 WL 155313, at *6.

In fact, the court in *Wilks* reached the same conclusion  ("[g]iven the plaintiffs' proffer of significant evidence supporting their contention that the defendant, despite its written policies, subjected them to impermissible time-keeping and overtime practices, the court finds that the plaintiffs have demonstrated their subjection to a common, impermissible practice in a manner

that suffices to meet their burden at this decertification stage of the proceedings."). *Wilks*, 2006 WL 2821700, at *5

Here, Plaintiff amply satisfies the standards for conditional certification, and Defendant cannot credibly argue that its Retail Consultants are not similarly situated as its own documents and testimony belie any such contention. *See, e.g.,* Wells Decl. Exhibits B-F and L. Collective treatment promotes both judicial efficiency and the FLSA's broad remedial policies.

### B.    Court Authorized Notice Is Appropriate And Should Be Granted

The broad remedial purpose envisioned by Congress in the passage of the FLSA will be accomplished by the issuance of *Hoffman-La Roche* notice to the putative collective action members in this matter.[13] Plaintiff's proposed notice (submitted herewith) is fair and adequate and will further the statutory purpose of the FLSA, as well as the goal of judicial economy through the efficient resolution in one proceeding of the common issues of law and fact pertaining to Sprint's Retail Consultants across the nation. The proposed notice will serve to alert putative collective class members about this litigation and permit those individuals to make informed decisions about whether or not to opt-in to this action. Included in the proposed notice is a description of the lawsuit; an explanation of who is eligible to receive the notice; the right of putative class members to participate; the effect of opting-in or not (including that Defendant is prohibited by federal law from retaliating against employees who choose to participate in this litigation); and instructions that describe how to opt-in if the putative class member so chooses. In addition, the notice provides the name, address and contact information of the attorneys representing the Plaintiff and the collective class and a form for class members to consent to opt in, if they so desire.

---

[13] A copy of the proposed Notice and proposed Consent To Sue form are attached to the Notice of Motion filed contemporaneously herewith.

24

In addition, posting the notice at class members' work locations will help ensure that it is effective in reaching prospective Plaintiffs and informing them of their rights. Indeed, courts regularly order such posting of notice. *See, e.g., Sherrill v. Sutherland Global Servs., Inc.*, 487 F.Supp.2d 344, 351 (W.D.N.Y. 2007) (ordering that notice be posted at the defendant's place of business and mailed to all class members). Consequently, dissemination of notice will conserve judicial resources while vindicating the rights of potentially aggrieved employees and former employees of Defendant.

## V.     CONCLUSION

For all of the reasons enumerated above, Plaintiff respectfully requests that this Court: (i) grant her Motion for Conditional Certification; (ii) order Defendant to provide Plaintiff's counsel with a list of all putative class members; and (iii) direct issuance of *Hoffman-La Roche* notice to putative collective action members.

Dated:  July 11, 2008                          Respectfully submitted,


                                               **SCHIFFRIN BARROWAY TOPAZ &
                                               KESSLER, LLP**


                                      By:   _/s/ Gerald D. Wells, III_____
                                               Joseph H. Meltzer
                                               Gerald D. Wells, III
                                               Robert J Gray
                                               280 King of Prussia Road
                                               Radnor, PA 19087
                                               Telephone: (610) 667-7706
                                               Facsimile: (610) 667-7056

                                               - and -

                                               Robert J Shapiro, Esq. (RS-3220)
                                               Jonathan S. Shapiro, Esq. (JS-3068)
                                               500 Fifth Avenue, 14th Floor
                                               New York, NY  10110
                                               Telephone: (212) 391-6464

25

Facsimile: (212) 719-1616

*Attorneys for Plaintiff*