**THE SHAPIRO FIRM, LLP**
Robert J. Shapiro, Esq. (RS-3220)
Jonathan S. Shapiro, Esq. (JS-3068)
The Shapiro Firm, LLP
500 Fifth Avenue, 14th Floor
New York, NY 10110
(212)391-6464
Facsimile: (212)719-1616

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Joseph H. Meltzer, Esq.
Gerald D. Wells, III, Esq.
Robert J. Gray, Esq.
Nick S. Williams (NW-5946)
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087
(610)667-7706
Facsimile: (610)667-7056

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA ENG-HATCHER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION; SPRINT/UNITED MANAGEMENT COMPANY; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.07-CV-7350-BSJ-KNF<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br><br>JURY TRIAL REQUESTED |

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................1

II.  STATEMENT OF FACTS ..................................................................3

    A.  Defendant Is A Highly Centralized Organization ..................................3

    B.  Retail Consultants Are Paid Based On The Number Of Hours That Are
    *Recorded* As Worked, Not The Number Actually Worked ...............................5

    C.  Plaintiff And Other Retail Consultants Were Not Paid For All Hours They
    Worked .........................................................................7

    D.  Defendant Willfully Failed To Pay Retail Consultants For All Hours
    Worked .........................................................................9

III.  LEGAL FRAMEWORK ....................................................................10

ARGUMENT .................................................................................11

I.  CLASS CERTIFICATION IS APPROPRIATE ..................................................11

    A.  The Standard For Rule 23 Class Certification ....................................11

    B.  The Proposed Class Satisfies The Requirements Of Federal Rule Of Civil
    Procedure 23(a) ................................................................12

        1.  Numerosity ...............................................................13

        2.  Commonality ..............................................................14

        3.  Typicality ...............................................................15

        4.  Adequacy .................................................................16

            (i)  Adequacy of the Named Plaintiff .....................................17

            (ii)  Adequacy of Counsel ................................................18

    C.  Certification Of The Class Is Proper Under Rule 23(b)(3) .........................18

        1.  Common Questions Of Law And Fact Predominate .............................19

        2.  A Class Action Is Superior To Other Available Methods For The
        Fair And Efficient Adjudication Of This Matter .......................20

    D.  SBTK Should Be Appointed Class Counsel Under Fed. R. Civ. P. 23(g).........22

II.  CONCLUSION ..........................................................................23

Plaintiff Melissa Eng-Hatcher ("Plaintiff"), by counsel, respectfully submits this memorandum in support of her motion for class certification pursuant to FED. R. CIV. P. 23.

## I.    PRELIMINARY STATEMENT

This is a putative class action brought pursuant to FED. R. CIV. P. 23 on behalf of current and former "Retail Consultants" of Defendants Sprint Nextel Corporation and Sprint/United Management Company ("Sprint" or "Defendant") who worked in its retail stores in the state of New York at any time since August 17, 2001. "Retail Consultants" are defined as: "current and former non-exempt hourly paid employees of Defendant, who are, or were, employed in a retail store." By her motion, Plaintiff seeks to certify this action as a class action pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of herself and the following persons:

> All persons within the State of New York who: (i) are, or were, employed by Defendant to work in its retail stores as non-exempt hourly employees; (ii) are, or were not, paid for all the hours that they worked in any given workweek; and (iii) are, or were not paid premium overtime compensation at a rate not less than one and one-half times their regular rate for all hours worked beyond the forty (40) hour work week, within the six years prior to August 17, 2007.[1]

All Retail Consultants are (i) classified by Defendant as non-exempt employees, (ii) paid according to the number of recorded work hours, (iii) subject to similar working conditions and (iv) subject to Defendant's nationwide Company polices. Consequently, class certification is eminently appropriate.

The deposition testimony of named Plaintiff Eng-Hatcher clearly establishes that Plaintiff and the putative class of Retail Consultants are similarly situated. Moreover, documents

---

[1] The applicable six-year statutes of limitations are set forth in Labor Law art. 19 § 663 and art. 6 § 193.

produced to date by Defendant, along with the deposition testimony of certain of its corporate designees, confirm that Defendant's uniform labor management and bonus compensation policies created a nationwide *de facto* policy whereby management personnel were incentivized to ensure that Retail Consultants met established sales quotas while keeping labor costs to a minimum. Likewise, the quota system established by Sprint encouraged Retail Consultants to work "off the clock" to receive compensation and/or avoid corrective action.

Principally, at all times during the relevant period, Defendant exercised strict control and direction over its labor costs (including overtime expenses, which it considered one of the most significant costs of doing business). Indeed, part of Defendant's strategy was to have its Retail Consultants incur as close to zero overtime hours as possible. In fact, Defendant's corporate headquarters allocated the maximum number of employees each store could have on a weekly basis. Because the over-arching concern was to reduce labor costs, management personnel routinely reviewed and monitored whether allocated hours were being exceeded.

Moreover, Defendant utilized a "carrot and stick" approach to ensure that its management personnel met prescribed revenue targets while at the same time keeping overtime expense to a minimum. On the one hand, it rewarded them with lucrative bonus compensation for meeting (or exceeding) revenue targets. On the other, it disciplined them (including termination) if they exceeded the headcount budgets allocated to them and/or permitted unauthorized overtime hours. Combined, Defendant's nationwide labor management-bonus compensation policies incentivized management personnel to meet revenue targets while keeping labor budgets in line even it this meant cheating employees out of their pay. Not surprisingly, the natural and predictable by-product of these incentives was the creation of a nationwide *de facto* policy whereby Retail Consultants were required to work "off-the-clock" (while either not clocked-in or after they were

clocked-out) in order to meet Defendant's sales targets.  Moreover, as part of their own job duties, Retail Consultants were also required to meet their own sales quotas, which, too, were pre-determined by Sprint.

The net result of Defendant's policy was that Retail Consultants could not achieve the Company's various pre-determined sales quotas/targets without working off-the-clock. As such, Retail Consultants were not properly paid all wages due them.  As explained below, evidence produced to date demonstrates that this practice occurred throughout New York state. Accordingly, Plaintiff more than satisfies the generous standard for certification of a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## II.    STATEMENT OF FACTS

### A.    Defendant Is A Highly Centralized Organization

Sprint operates approximately 1,254 stores throughout the United States.[2]  Defendant is centrally organized and exercises strict control over store management and operations.[3]  *See* Declaration of Gerlad D. Wells, III ("Wells Decl.") Exhibit G, Deposition of Derek Bailey ("Bailey Dep.") at 28:13-24; Wells Decl. Exhibit F, Deposition of Mark Galluccio ("Galluccio Dep.") at 100:20–101:8.  All corporate policies concerning operations, management, compensation, sales targets, quotas, and record keeping for all Sprint stores are created,

---

[2] *See* Declaration of Gerald D. Wells, III in Support of Plaintiff's Motion For (1) Conditional Collective Certification; (2) Court Authorized Notice; (3) Production of Names and Addresses Pursuant to 29 U.S.C. §216(b); and Motion For Class Certification Pursuant to FED. R. CIV. P. 23 ("Wells Decl.") Deposition of Kim Dixon ("Dixon Dep.") at p. 18:1-2; *see also* Deposition of Rob Lynch ("Lynch Dep.") at 38: 13-20 (indicating that the Company owned approximately 1,240 stores).

[3] Defendant's stores are divided into three geographic regions. *See* Lynch Dep. at p. 40:5-7.  Each is supervised by an area vice-president (*see* Galluccio Dep. at 30:16-19), and, in descending order, area retail directors, district managers and store managers. *See* Dixon Dep. at p. 22:3-9. A district manager is assigned to supervise the operations and management of approximately six to fifteen locations.  Galluccio Dep. at 89:18-23.

implemented, disseminated, controlled, and regularly and systematically monitored by personnel at Defendant's corporate headquarters in Kansas. For example, corporate managers in Kansas determine the headcount budgets[4] allocated to each store (nationwide). *See* Bailey Dep. at 28:13-24; Deposition of Laurilyn Dowling ("Dowling Dep.") at 31:22-24. Indeed, Sprint monitors compliance with labor costs/headcount budgets on a regular basis, including to ensure that overtime expense is as low as possible. Bailey Dep. at 34:17 – 35:13; 37:20 – 38:4. Moreover, Defendant mandates that Retail Consultants must first receive authorization from Management Personnel (including district managers and regional directors) before working overtime. *See* Wells Decl. Exhibit E, Declaration of Kim Dixon ("Dixon Dep.") at 46:7-15; *See also* Wells Decl. Exhibit H. It is Sprint's policy to formally discipline any employee who permits a Retail Consultant to work overtime when it has not been authorized in advance. *See* Wells Decl. Exhibit F, Deposition of Mark Galluccio ("Galluccio Dep.") at 78:5-10; *See* Wells Decl. Exhibit K (Bates SPRMEH 002348). Moreover, Sprint's nationwide policy is to keep overtime costs to as close to zero as possible. Bailey Dep. at 35:11-13.

Furthermore, Sprint has a nationwide policy requiring Retail Consultants to meet pre-determined sales quotas. Indeed, Retail Consultants are instructed by Management Personnel to meet their sales quotas. *See* Wells Decl. Exhibit B, Melissa Eng-Hatcher Dep. at 124:5-15. When Retail Consultants fail to meet their assigned sales quotas, they are counseled by Sprint. Bailey Dep. at 36:7-10. Repeated failure to meet a sales quota leads to termination. *Id.* at 36:16-17. Indicative of the paramount concern Defendant had for ensuring that its sales quotas were met, throughout the time period covered by the Complaint, Defendant offered multiple incentive

---

[4] "Headcount" refers to the number of employees Defendant allocates to its retail store locations. This headcount is based on a store's sales volume from the previous year, and, depending upon how busy the store is in a given period, employees can be moved by Management Personnel from one store to the next. *See* Dixon Dep. at 43:13-44:14.

programs to Management Personnel based on meeting sales-related targets. *See* Wells Decl. Exhibit C, Deposition of Laurilyn Dowling ("Dowling Dep.") at 24:15 – 26:2; *See also* Wells Decl. Exhibit J (SPRMEH 000714). Among other things, these programs offered monetary bonuses and other benefits. *Id*. This company-wide incentive policy is centrally determined by Defendant's corporate management. *Id*. For example, store managers are eligible for a bonus of up to $1,625.00 per month ($19,500.00 per year), enabling them to substantially increase their total annual compensation package. *See* Wells Decl. Exhibit J (SPRMEH 000714) at p. 18. Further, district managers are eligible to receive a bonus of up to $1,875.00 per month ($22,500.00 per year). *Id*. at p. 11. Also, retail directors are eligible for a bonus of up to $4,100.00 per month ($49,200.00 per year). *Id*. at p. 4. As the incentives are sales-driven, Management Personnel only receive their bonuses if Retail Consultants meet their own individual sales quotas. *See* Wells Decl., Exhibit N. The result is that Management Personnel are incentivized to meet the Company's pre-determined sales-related targets by having Retail Consultants generate as many sales as possible (requiring long hours) as well as comply with Sprint's pressure to eliminate overtime wages at the expense of Defendant's Retail Consultants, requiring a deduction in hours.

**B.    Retail Consultants Are Paid Based On The Number Of Hours That Are *Recorded* As Worked, Not the Number Actually Worked**

It is undisputed that Retail Consultants are non-exempt, hourly employees. Moreover, despite having varying job titles, these employees share common job duties. *See* Wells Decl. Exhibit D, Deposition of Rob Lynch ("Lynch Dep.") at 15:4-9; *See also* Galluccio Dep. at 33:9– 4:2; 54:21– 55:8 (noting that Retail Consultants sell Defendant's products and services). As such, Defendant views its Retail Consultants as essentially the same for the purpose of overtime compensation. *Id*. Furthermore, Retail Consultants are all required to clock-in and clock-out

using Defendant's point-of-sale computerized system – or "Retail Management System" ("RMS") – which records the total hours they have worked.  Bailey Dep. at 58:18 – 59:4; Lynch Dep. at 46:21-23; 58:1-6; *See also* Wells Decl. Exhibit I (SPRMEH 000257).  The time punches entered into the RMS system are transferred (for payroll purposes) to Defendant's Retail Time and Attendance ("RTA") and PeopleSoft systems for processing.  Lynch Dep. at 47:16-19; 65:1-10.

While Defendant's time-keeping system has changed over time, the requirement for Retail Consultants to record the hours they worked has remained the same.  Eng-Hatcher Dep. at 75:10-22; 211:10-12; 212: 4-7; Bailey Dep. at 52:7-12; 58:18 – 59:4; Galluccio Dep. at 61:10-19.

Defendant's RTA system enables it to maintain and monitor time and attendance.  Lynch Dep. at 47:16-19.  In addition, store management can access the time-keeping system to adjust the time records of Retail Consultants. Lynch Dep. at 49:9-25; 50:12-19.  The time-keeping system records any changes made to employee time records. *Id*.

All of Defendant's Retail Consultants are paid according to the number of hours that corporate has recorded them as working.  That is, Retail Consultants are only paid for the recorded, adjusted hours they worked. Lynch Dep. at 41:19 – 42-1; 65:14-20.  At present, Retail Consultants cannot enter the RMS system to edit/amend their time-records or to determine whether management personnel have adjusted their hours. Lynch Dep. at 45:18-21; 49:9-25; 65:16-25.

Until the fall of 2006, employees were able to make sales without being clocked in to Defendant's time-keeping system. Lynch Dep. at 51:4-10. As such, Defendant's Retail Consultants could inarguably make sales while off-the-clock.  In the fall of 2006, Defendant

finally modified its computer program to prevent this situation from occurring. Lynch Dep. at 52:7-10.

### C. Plaintiff and Other Retail Consultants Were Not Paid For All Hours They Worked

Plaintiff was employed by Defendant as a Retail Consultant, in particular, a Retail Communications Consultant, at two of the Company's New York City stores. *See* Eng-Hatcher Dep. at 35:2-15; 36:21-25; 37:15-18. During the course of Plaintiff's employment, Defendant failed to compensate her for all hours she worked. *Id*. at 68:3-4; 74:16-19; 83:22-25. On several occasions she indicated that her time-records did not agree with her paycheck. *Id*. at 76:2-3. On certain of these occasions, Plaintiff was informed by Sprint that discrepancies in her pay were, allegedly, the result of her inputting her hours incorrectly. *Id*. at 78:16-21. However, when she pressed the issue with her direct managers, she was informed that, unless she had a copy of her timesheet, Sprint would not pay her overtime. *Id*. at 77:10-17; 79:12-19.

In particular, Plaintiff alleges that she was not paid for the time she spent in Defendant's retail stores after she had clocked out at the end of the day. *Id*. at 85:4 – 86:4. She was routinely required to clock-out of Defendant's time-keeping system yet had to remain in the store while receipts were counted. *Id*. at 45:10–49:5; 88:6-13. Plaintiff's colleagues were also required to remain in the store while receipts were counted after having clocked out of Defendant's time-keeping system. *Id*. pp. 49:11-21; 86:16 – 87:14. Plaintiff regularly continued to work after her scheduled shift had ended, but was not paid for those hours. *Id*. at 187:7 – 189:5. Additionally, Plaintiff was not paid for handing out company fliers and performing sales outside Defendant's retail stores. Eng-Hatcher Dep. at 193:2.

Plaintiff also worked during her lunch breaks and on her days off, without being clocked into Defendant's time-keeping system, to perform, *inter alia*, sales-related activities outside

Defendant's retail stores. *Id*. at 105:18-21; 105:25 – 107:15; 113:18-19; Lynch Dep. at 26:15-25 (confirming that Retail Consultants work outside of the retail stores). In addition, Defendant's Retail Consultants could not meet Defendant's prescribed sales quotas without working off-the-clock. Eng-Hatcher Dep. at 189:24 – 190:8. Moreover, management personnel emphasized that Retail Consultants were to work outside Defendant's retail stores, including during lunch hours, in order to generate sales and meet prescribed quotas. *Id*. at 124:5-21; 127:12-23. Indeed, Plaintiff and her colleagues, including Robert Torres, Germain Gardner, Helen Rosario and Johnny Santana, all regularly worked outside of Defendant's retail store after their shifts had ended. *Id*. at 127:24 – 128:5. When Plaintiff informed her supervisors that her time-sheet did not reflect all the hours that she had worked, she was informed that she was unable to access the her time-records and include all the hours she worked. *Id*. at 100:25 – 101:8. Although Plaintiff's managers indicated they would correct her time-records for her, Plaintiff's bi-weekly compensation frequently did not accurately reflect all the hours she worked. *Id*. at 102:6-20.

Significantly, Plaintiff testified that other Retail Consultants complained about their paychecks not accurately reflecting all the hours they worked. *Id*. at 112:16 – 113:4; 120:9-14; 232:11–233:6. This does not appear to be a problem confined solely to the store locations where Plaintiff worked. Indeed, as demonstrated by the documents produced by Defendant to date, this problem is pervasive. *See* Wells Decl. Exhibit L (SPRMEH 002946). In addition, the Company's failure to pay all Retail Consultants for all hours worked, including premium compensation for all hours worked, appears to be a pervasive problem throughout New York state and the country. *See* Wells Decl. Exhibit L (listing complaints of off the clock work and lawsuits relating to Sprint's failure to pay Retail Consultants for all hours worked). In short,

Plaintiff and the putative class members were not compensated for all hours worked in violation of New York law.

### D. Defendant Willfully Failed To Pay Retail Consultants For All Hours Worked

Defendant's strict labor management and bonus compensation policies created a *de facto* nationwide (and statewide) policy whereby management personnel were incentivized to ensure that Retail Consultants met established sales quotas without recording all the hours they worked, including hours in excess of forty in a work week. If they achieved this goal, they would be rewarded; if they did not, they would be counseled. Bailey Dep. at 36:7-10; Galluccio Dep. at 74:24 – 75:8; 93:16-22. The practical manifestation of this policy was that Retail Consultants across the country (including New York) were regularly and unlawfully required to work off-the-clock and were not fully compensated for all the hours they worked.

Documents produced by Defendant indicate that it was acutely aware that Retail Consultants nationwide were routinely being denied wages owed to them. For example, during the relevant time period, Defendant maintained certain hotlines to respond to complaints regarding, *inter alia*, Sprint's failure to pay Retail Consultants for all the hours they worked. Lynch Dep. at 72:20 – 73:6; 80:24 – 81:15.

Indeed, Defendant not only acknowledged that overtime (nationwide) is to be kept as close to zero as possible, but that Retail Consultants were disciplined for failing to meet the Company's pre-determined sales quotas. Bailey Dep. at 36:7-10. Despite this, the Company has done little to curb the harsh and illegal effects of this *de facto* policy. To date, the Company still bases bonuses paid to store managers, district managers and retail directors on whether pre-determined sales quotas are met. *See* Wells Decl. Exhibit J (SPRMEH 000714).

### III.    LEGAL FRAMEWORK

Plaintiff alleges that Defendants violated several provisions of New York Labor laws, by, *inter alia* (i) failing to compensate adequately the members of the NY Class for overtime hours worked as required by New York Labor Law Article 19 §§ 650 *et seq*. and N.Y.C.R.R. § 142-2.2; (ii) failing to compensate adequately the members of the NY Class for all hours worked as required by Article 19 § 652; and (iii) improperly deducting amounts from their wages in violation of Article 6 § 193.

New York Labor Law Article 19 § 652 states that an employer shall pay to each employee a minimum wage for each hour worked, unless the employee falls under an enumerated exemption.  As stated above, Plaintiff and members of the Class did not fall with any recognized exceptions, yet were required to perform work on behalf of Defendants while off-the-clock.  Thus, Defendants failed to compensate Plaintiff and the Class Members at a rate at least equal to the New York minimum wage for all hours worked.

Plaintiff further alleges that she and the members of the NY Class worked hours in excess of forty per week for which they did not receive premium compensation. Pursuant to 12 N.Y.C.R.R. Section 142-2.2 and New York Labor Law Article 19 § 650 *et seq*. employees must be paid overtime, equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty per week unless the employee falls under one of the enumerated exemptions.  Accordingly, pursuant to New York Labor Law Article 19 § 663, Plaintiff and members of the NY Class are entitled to recover their overtime wages, plus interest, attorney's fees, and costs, in amounts to be proven at trial.

Further, New York Labor Law Article 6 § 193, as well as applicable case law, state that an employer may not deduct from or reduce an employee's wages for the purpose of shifting the employer's ordinary cost of doing business to that employee. Specifically, Section 193 states

that, "No employer shall make any charge against wages…unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section." Defendants' Chargeback policy – charging Retail Consultants for closed accounts – is not a permissible deduction pursuant to NY Labor Law. Defendants have subjected members of the NY Class to illegal deductions from wages, which deductions were not for the benefit of the NY Class, nor authorized by the NY Labor Laws. Accordingly, Plaintiff and the members of the Class are entitled to recovery of such amounts, plus interest, attorney's fees, and costs, in amounts to be proven at trial.

## ARGUMENT

## I    CLASS CERTIFICATION IS APPROPRIATE

### A.    The Standard For Rule 23 Class Certification

The Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice. *Gulf Oil v. Bernard*, 452 U.S. 89, 99 (1981). Indeed, class actions "vindicat[e] the rights of individuals who otherwise ought not consider it worth the candle to embark on litigation in which optimum results might be more than consumed by the cost." *Id.* at 99 n.11, quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980).

Even in a "doubtful case … any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) *cert. denied sub nom. Wasserstrom v. Eisenberg*, 474 U.S. 946 (1985) (citation omitted). Consistent with this principle, the "Second Circuit has directed district courts to apply a liberal, rather than restrictive, interpretation to Rule 23." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006), quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03-CV-8698, 2006 WL 106895, at *1 (S.D.N.Y. Jan 19, 2005).

Accordingly, courts must focus on whether the requirements of Rule 23 are met, rather than the merits of the action. *In re Initial Pub. Offering Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). In determining whether a party has met each of Rule 23's requirements, the court must "resolve[] factual disputes relevant to each Rule 23 requirement" even if there is an "overlap between a Rule 23 requirement and a merits issue." *Id.* However, courts must not "assess any aspect of the merits unrelated to a Rule 23 requirement." *Id.* In assessing a motion for class certification, the court must accept as true the factual allegations set forth in the complaint. *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 386 (W.D.N.Y. 2005), citing *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 405 (1977) (citations omitted).

Federal courts in New York routinely certify similar Rule 23 class actions asserting claims under the New York Labor Law for wage violations. *See*, *e.g.*, *Damassia v. Duane Reade, Inc.*, --F.R.D.--, 2008 WL 2201469, at *13 (S.D.N.Y. May 27, 2008); *Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04-CV-0022, 2008 WL 941643, at *9 (E.D.N.Y. Mar. 31, 2008); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y. 2007); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2006 WL 2819730, at *17 (S.D.N.Y. Sept. 29, 2006); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001). Hence, Plaintiff has plainly met the liberal standard for Rule 23 certification.

### B.    The Proposed Class Satisfies the Requirements of Federal Rule of Civil Procedure 23(a)

Plaintiffs seeking certification must satisfy four requirements under Rule 23(a) and at least one subsection of FED. R. CIV. P. 23(b). *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interest of the class.

These requirements are often summarized as numerosity, commonality, typicality, and adequacy. As explained below, Plaintiff easily meets each of these requirements.

### 1.    Numerosity

The numerosity component of Rule 23(a) is satisfied when the proposed class "is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "[I]mpracticability for purposes of Rule 23 class certification does not mean impossibility." *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 370 (S.D.N.Y. 2007), citing *Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d Cir. 1993). Furthermore, plaintiffs need not identify the exact number or identity of class members. *Robidoux*, 987 F.2d at 935, citing *Barlow v. Marion County Hosp. Dist.*, 88 F.R.D. 619, 625 (M.D. Fla. 1980); 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.05, at 139 (2d ed. 1985). In the Second Circuit numerosity is presumed when a class includes 40 or more members. *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819, 2008 WL 2201469, at *3 (S.D.N.Y. May 27, 2008), citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

A simple google search reveals over 40 Sprint stores in New York. Obviously, each store employed a number of Retail Sales Consultants during the class period. Plaintiff has clearly satisfied the numerosity requirement of Rule 23(a)(1).

### 2.    Commonality

Under FED. R. CIV. P. 23(a)(2), Plaintiff must show only that there is at least one question of law or fact common to the class.  "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2007 WL 1580080, at * 3 (E.D.N.Y. May 29, 2007), quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).   Rule 23(a)(2) does not mandate that the named plaintiff and putative class members' issues be identical, but rather that "plaintiffs identify some unifying thread among the members' claims that warrant class treatment."  *Dziennik*, 2007 WL 1580080, at *3, citing *Kamean v. Local 363, Int'l Bhd. Of Teamsters*, *Chauffeurs, Warehousmen and Helpers of Am.,* 109 F.R.D. 391, 394 (S.D.N.Y. 1986), *appeal dismissed*, 833 F.2d 1002 (2d Cir. 1986), *cert. denied*, 481 U.S. 1024 (1987).

Indeed, this unifying thread can simply be one shared common question of law or fact.  *Dziennik*, 2007 WL 1580080, at *3.  Thus, the commonality requirement is met when the named plaintiff and the putative class members "injuries derive from a unitary course of conduct."  *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004) (citations omitted).  As the *Noble* court aptly observed:

> [a]lthough there are some differences among employees – *i.e.* responsibilities, hours worked and salaries – these differences are relatively minor and relate primarily to the level of damages, if any, owing to each individual.  All potential class members are alleged to have been harmed by a common practice—defendant's failure to adequately compensate employees for overtime hours.

*Noble*, 224 F.R.D. at 343.

To be sure, the Plaintiff and the putative class members share numerous questions of law and fact which arise from a common nucleus of operative facts.  Indeed, the named plaintiff and putative class members share numerous common questions of law and fact, including:

14

Whether Defendant failed to pay Plaintiff and members of the Class all wages due and owing to them, including overtime compensation for each hour worked in excess of forty for a work week;

Whether Plaintiff and members of the Class were expected to and/or forced to regularly work off-the-clock;

Whether Plaintiff and members of the Class were credited for all actual hours worked;

Whether Defendant failed to pay Plaintiff and members of the Class for all hours worked;

Whether, as a result of the actions taken by its supervisory employees and officers, Defendant violated applicable New York wage and hour statutes; and

Whether Plaintiff and members of the Class have sustained damages and, if so, what the proper measure of damages is.

As Plaintiff need only establish one common question of law or fact in order to meet the exceedingly low threshold set by Rule 23(a)(2), Plaintiff has demonstrated that she indeed meets this requirement.

### 3.     Typicality

The "claims … of the representative parties [must be] typical of the claims … of the class." FED. R. CIV. P. 23(a)(3).  In sum, the "typicality inquiry focuses on whether the claims of the putative class representatives are typical of the class sharing common questions." *Damassia v. Duane Reade, Inc.*,  No. 04-CV-8819, 2008 WL 2201469, at *5 (S.D.N.Y. May 27, 2008), citing *In re Frontier Ins. Group, Inc. Secs. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997). Typicality exists when the class claims are founded on the same conduct or events and are based on the same legal theory.  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  Indeed, courts in this circuit have recognized that typicality is met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented. . . irrespective of minor variations in the fact patterns underlying the individual claims."  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

In assessing typicality, the court should focus on the defendant's actions rather than any "particularized defenses" it may have against certain putative class members. *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-CV-4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007), quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). Where "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members o the proposed class," typicality is met. *Trinidad*, 2007 WL 103073, at *6, citing *In re WorldCom, Inc. Secs. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003)(citations omitted).

As demonstrated above, Plaintiff's claims are undoubtedly typical of the putative class members that she seeks to represent. Here the central disputed issue of law and fact is whether Defendant, through its corporate-wide policy of imposing unrealistic sales quotas on its hourly employees to maintain their jobs or risk discipline or discharge, while at the same time attempting to severely restrict overtime pay, Defendant unlawfully deprived Plaintiff and the putative class members of overtime compensation.

Here, Plaintiff's claims are clearly typical of the members of the Class.

### 4. Adequacy

FED. R. CIV. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The purpose of the adequacy requirement is "to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 184 (S.D.N.Y. Sept. 27, 2007), quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) (internal quotations omitted). Adequacy is met where the named plaintiff establishes that she has retained qualified class counsel capable of

handling the litigation and that no conflicts exist between the named plaintiff and putative class members. *Ansoumana*, 201 F.R.D. at 87, citing *Marisol A.*, 126 F.3d at 378. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Ansoumana*, 201 F.R.D. at 87.

### (i) Adequacy of the Named Plaintiff

Here, the named plaintiff has no conflict with any members of the proposed class and is adequate to serve as a class representative.

Indeed, Plaintiff has repeatedly demonstrated that she is ready, willing, and able to fulfill the duties required of class representatives. In this case, Plaintiff has subjected herself to an extended deposition, and has produced numerous documents. In short, at every instance, Plaintiff has demonstrated her ability and desire to protect the best interests of the class.

Moreover, Plaintiff here was an employee of Defendant during the Class Period. During the Class Period, Plaintiff suffered an injury in fact due to Defendant's violations of, *inter alia*, applicable New York wage and hour laws. Hence, like other members of the class, Plaintiff has an interest in demonstrating Defendant's violations. Consequently, Plaintiff's interests are squarely aligned with the interests of the absent class members, and there is no potential danger of a conflict.

Importantly, there is no evidence of collusion and absolutely nothing to suggest that Plaintiff has any interest antagonistic to those of absent class members. To the contrary, the interests of Plaintiff are coextensive with those of the putative class members. Plaintiff and the putative class members were all employed by Defendant and share a common interest in challenging Defendant's *de facto* policy of denying them compensation for all hours worked. Plaintiff's interests are, therefore, completely unified with those of the class because she must

prove the same wrongdoing by Defendant as the absent class members in order to establish Defendant's liability. As such, no conflict at all exists here, let alone one that goes to the subject matter of the case.

**(ii)    Adequacy of Counsel**

Plaintiff has retained qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, especially in the context of wage and hour litigation. The law firm of Schiffrin Barroway Topaz & Kessler, LLP ("SBTK") has, and will continue to vigorously prosecute this action on behalf of the Class. Evincing the adequacy of SBTK, the firm investigated the violations alleged by Plaintiff and filed a comprehensive complaint. Further, SBTK has propounded discovery requests and taken deposition testimony of several corporate designees[5]. More generally, the firm is at the forefront of wage and hour litigation and is actively litigated some 30 analogous wage and hour actions across the country, all at various stages of their proceedings. *See* Wells Decl. Exhibit "A". Indicative of the experience and expertise SBTK brings to this action, courts across the country have not hesitated to appoint SBTK in a leadership role when numerous consolidated actions alleging substantially the same facts are before the court.

Given the qualifications of Plaintiff's counsel and the absence of any conflict between Plaintiff and the class, Plaintiff clearly satisfies the requirements of Rule 23(a)(4).

**C.    Certification Of The Class Is Proper Under Rule 23(b)(3)**

In addition to class certification prerequisites set forth in Rule 23(a), a proposed class must satisfy one of the three alternative requirements of Rule 23(b). FED R. CIV. P. 23(b). It is

---

[5] Plaintiff currently intends to move to compel Defendant to provide complete and accurate responses to her interrogatories, requests for production, and requests for Rule 30(b)(6) designations. However, Defendant's failure to timely provide such information does not defeat Plaintiff's ability to establish that class certification is indeed warranted in this case.

often observed that the Rule 23(b) requirements overlap considerably with those of Rule 23(a), and with each other. Herbert B. Newberg and Alba Conte, Newberg On Class Actions § 4.01 (3d ed. 1992). Plaintiff seeks certification pursuant to Rule 23 (b)(3).

FED. R. CIV. P. 23(b)(3) authorizes class treatment when:

> The court finds that the questions of law or fact common to the members of the class predominate over any questions or law affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As set forth below, Plaintiff inarguably satisfies these conditions.

## 1.   Common Questions Of Law And Fact Predominate

The predominance requirement of Rule 23(b)(3) "tests whether proposed class are sufficiently cohesive to warrant adjudication by representation." *Damassia*, 2008 WL 2201469 at *6, quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). To meet Rule 23(b)(3)'s requirements, a plaintiff must demonstrate "that the issues are subject to generalized proof, and thus applicable to the class as a whole, [and] predominate over those issues that are subject only to individualized proof." *Niemiec v. Ann Bendick Realty*, No. 04-CV-0897, 2007 WL 5157027, at *12 (E.D.N.Y. Apr. 23, 2008), quoting *Visa Check*, 280 F.3d at 136 (internal citation and quotation mark omitted). Furthermore, courts in this Circuit have recognized that when plaintiffs allege harm based upon on a single alleged unlawful policy, it presents a paradigmatic situation for class treatment because multiple "nearly identical litigations can be adjudicated in unison." *Lewis v. Nat'l Fin. Sys., Inc.*, No. 06-CV-1308, 2007 WL 2455130, at *6 (E.D.N.Y. Aug. 23, 2007), citing *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006).

In assessing predominance, courts consider whether the issue of liability is common to the class as a whole, and if so, Rule 23(b)(3) is satisfied. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007), citing *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002). Variations in the availability and effect of certain defenses against individual class members does not necessarily dictate a finding that individual issues predominate over common issues. *Iglesias-Mendoza*, 239 F.R.D. at 373 (citations omitted). Indeed, as the *Noble* court noted:

> [T]he class action is based on defendants' alleged policy of requiring employees to work overtime hours without adequate compensation. Thus, to prevail on the merits of this claim, plaintiffs must produce evidence that defendants implemented an illegal policy with respect to overtime pay. Indeed, the gravamen of the claim is that defendants engaged in a course of conduct that deprived employees of their right overtime pay. Although determinations as to damages, exempt status, and alleged labor agreements will require individualized findings, common liability issues otherwise predominate. As such, these individualized damages do not bar certification.

224 F.R.D. at 345-46.

Plaintiff alleges that as a result of Sprint's corporate policy of combining unreasonable sales quotas with zero allowance for overtime, necessarily created unlawful results, *i.e.*, violation of New York's labor laws. *See* Bailey Dep. (recognizing the impossibility of running a Sprint retail store without incurring any overtime expenses. Clearly, Defendant's own actions demonstrate that the predominance requirement is met here.

## 2.    A Class Action is Superior To Other Available Methods for the Fair and Efficient Adjudication of this Matter

The analysis for assessing Rule 23(b)(3)'s superiority requirement is "closely related" to that used by the court for determining numerosity under Rule 23(a)(1), namely that given the

large number of potential class members, judicial economy favors the resolutions of such claims in a single proceeding. *Trinidad*, 2007 WL 103073, at *8. Moreover, courts in the Second Circuit have routinely ruled that the simultaneous prosecution of FLSA collective actions and Rule 23(b)(3) class actions pursuant to New York Labor Laws is a superior method for resolving such claims. *Id.* at *9 (collecting cases). This case is no different. The class action device is a superior method for resolving Plaintiff's claims in this action. It provides a single forum to protect the interests of the proposed New York class members who lack the ability to pursue cases individually, yet remains manageable due to the predominance of the central issue: whether Defendant's policies with respect to sales quotas and incentives created a state-wide *de facto* policy whereby Retail Consultants were effectively denied compensation for all the hours they worked. The alternative is potentially hundreds of duplicative individual actions. Such a result would be inefficient and could lead to inconsistent or conflicting findings.

In evaluating Rule 23(b)(3)'s superiority requirement, courts focus on the interests of individual class members in controlling the prosecution or defense of separate lawsuits and the anticipated difficulties in managing the litigation as a class action. *Iglesias-Mendoza*, 239 F.R.D. at 373. In general, class actions have been found superior where individual claims are relatively small, there is a large volume of individual claims, individuals lack a compelling interest in controlling their own litigation, and in the case of current employees a potential fear of reprisal or retaliation would discourage individuals from pursuing claims on their own. *Iglesias-Mendoza*, 239 F.R.D. at 373; *Noble*, 224 F.R.D. at 346; *Trinidad*, 2007 WL 103073, at *9; *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008). Thus, employees may avoid individual actions due to an understandable fear of retaliation. "The risks entailed in suing one's employer are such that the few hardy souls who come forward

should be permitted to speak for others when the vocal ones are otherwise fully qualified." *Ste. Marie v. Eastern R.R. Assoc.*, 72 F.R.D. 443, 449 (S.D.N.Y. 1976), *overruled on other grounds*, 650 F.2d 395 (2d Cir. 1981). This case is no different, especially given the Company's pervasive problems with paying legal and appropriate wages.

Hence, the above factors all indicate that a class action would be the superior method for adjudicating the claims asserted in this action.

**D.     SBTK Should Be Appointed Class Counsel Under Fed. R. Civ. P. 23(g)**

Fed. R. Civ. P. 23(g) complements the requirement of Rule 23(a)(4) that class representatives adequately represent the interests of class members by focusing on the qualifications of class counsel. Counsel for Plaintiff respectfully submit that in addition to satisfying the requirements of Rule 23(a)(4), SBTK also satisfies the requirements of Rule 23(g) which requires a court to examine: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.

For all the reasons set forth in Section IV(B)(4)(ii), Plaintiff's counsel respectfully submits that they satisfy the requirements of Rule 23(g).

## II.    <u>CONCLUSION</u>

For all of the reasons enumerated above, Plaintiff respectfully requests that this Court grant her Motion for Class Certification and certify this action as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) and appoint SBTK as class counsel under FED. R. CIV. P. 23(g).

Dated:  July 11, 2008                              Respectfully submitted,


**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**


By:   _/s/ Gerald D. Wells, III_____
        Joseph H. Meltzer
        Gerald D. Wells, III
        Nick S. Williams (NW-5946)
        Robert W. Biela, Esq.
        280 King of Prussia Road
        Radnor, PA 19087
        Telephone: 610-667-7706
        Facsimile: 610-667-7056

        - and -

        Robert J Shapiro, Esq. (RS-3220)
        Jonathan S. Shapiro, Esq. (JS-3068)
        500 Fifth Avenue, 14th Floor
        New York, NY  10110
        Telephone: (212) 391-6464
        Facsimile: (212) 719-1616

        *Attorneys for Plaintiff*