**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MELISSA ENG-HATCHER, on behalf of herself
and all others similarly situated,

                     Plaintiff,

        v.

SPRINT NEXTEL CORPORATION;
SPRINT/UNITED MANAGEMENT
COMPANY; and DOES 1 through 10, inclusive,

                   Defendants.

Case No. 07-CV-7350 (BSJ) (KNF)

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL
DISCOVERY FROM DEFENDANTS**

Plaintiff Melissa Eng-Hatcher ("Plaintiff"), by her undersigned counsel, respectfully submits the following memorandum of law in support of her motion, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, to compel discovery from Defendants Sprint Nextel Corporation and Sprint/United Management Company (collectively, "Sprint" or "Defendants").

## I.     INTRODUCTION

Pursuant to Local Civil Rule 37.2, prior to filing this motion, Plaintiff first requested an informal conference with the Court on June 20, 2008, which application was denied by Magistrate Judge Fox on July 3, 2008. Plaintiff's counsel certifies that, pursuant to Fed. R. Civ. P. 37(a)(1), they have in good faith conferred with Defendant's counsel in an effort to obtain the disputed discovery without court action. In fact, the parties were able to amicably resolve many discovery disputes. However, a few discrete but important discovery disputes remain. Therefore, Plaintiff respectfully requests that this Court compel Defendants to (i) produce a witness qualified to testify regarding complaints received by Sprint on a national basis during the proposed FLSA collective class period pursuant to Fed. R. Civ. P. 30(b)(6); and (ii) produce

documents relating to (a) national complaints of Retail Sales Consultants for Sprint's failure to pay them overtime and/or failure to pay them for all hours worked, (b) "hold notices," and (c) national ethics hotline complaints.

## II.      RELEVANT BACKGROUND

Plaintiff filed this action on or about August 17, 2008 and filed an amended complaint on or about October 9, 2007.  In her complaint, Plaintiff contends that Defendants failed to pay her and other similarly situated individuals as part of a Nationwide Collective Class or New York State Class for all hours worked, including overtime compensation in violation of federal and state wage and hour laws.  Defendants answered on October 31, 2007.  The action was then stayed until February 8, 2008, pending mediation efforts in a similar action against Sprint. Thereafter, an initial pretrial telephone conference was held on February 20, 2008.  A Scheduling Order was entered requiring the completion of discovery on or before June 20, 2008 and setting a briefing schedule for Plaintiff's class and collective certification motions on May 20, 2008 (slightly extending a previously entered Scheduling Order).

Plaintiff served, *inter alia*, her first Request for Production of Documents (collectively, the "requests") on Defendants on or about April 3, 2008.  (*See* Exhibit A to the accompanying declaration of Gerald D. Wells, III, dated July 14, 2008 ("Wells Dec."))  Plaintiff thereafter served Defendants with second and third Requests for Production of Documents.  Defendants served their Objections and Responses to Plaintiff's first requests on May 6, 2008 and to Plaintiff's subsequent requests timely thereafter.  Plaintiff first sent Defendants a list of topics for which she intended to issue deposition notices pursuant to Fed. R. Civ. P. 30(b)(6) on May 19, 2008 (and thereafter formally noticed the depositions with identical topic descriptions on June 5, 2008).  Defense counsel responded with a letter on May 22, 2008 (Wells, Dec., Exhibit B),

designating witnesses for each topic subject to certain limited objections. The depositions were subsequently scheduled.

Since that time, Defendants produced some documents and certain 30(b)(6) designees. Plaintiff disputes the adequacy of Defendants' production in both arenas, as described below.

### III.    ARGUMENT

During the course of discovery, in particular the taking of certain 30(b)(6) depositions, it became apparent to Plaintiff that Defendants failed to produce all relevant documents and did not designate appropriate designees. The gravity of Defendants' deficiencies became apparent during four 30(b)(6) depositions conducted by Plaintiff's counsel on June 12th and 13th (with depositions being double tracked on June 12th and conducted in several different states).[1] Certain of the designees provided by Defendants were unable to provide testimony on the subject areas for which they were designated and/or did not address topic areas germane to Plaintiff's case at the instruction of defense counsel.

### A.    30(b)(6) Witnesses

In accordance with Defendants' original schedule, Plaintiff took depositions of Defendants' 30(b)(6) designees in Kansas, Maine and New York between June 12 and June 19, 2008—sometimes on a double-track basis. Plaintiff had no reason to suspect that the scope of those depositions would be unilaterally limited by defense counsel – to a far greater extent than that set forth in counsel's May 22, 2008 letter setting forth designees for each 30(b)(6) topic. Thereafter, Plaintiff's counsel took issue with these attempted limitations as soon as they were set forth – on the deposition record and through direct communication. *See* correspondence

---

[1] Although Plaintiff requested that Defendants produce their 30(b)(6) designees in a single location, so as to expedite the process, Defendants were unwilling to accommodate Plaintiff's request. As a result, to date, depositions have occurred in Kansas City, Kansas, New York, New York and Portland, Maine.

between parties (annexed as Wells Dec., Exhibit C). The parties were able to reach agreement with respect to the production of an additional Rule 30(b)(6) designee regarding, *inter alia*, the duties of certain types of Defendants' employees on a national basis.

Unfortunately, Defendants remained intransigent with respect to one critical deposition and related document production issue that go to the very crux of this matter. In the context of this nationwide "off-the-clock" case, Defendants attempted to argue that Plaintiff's request for a designee who can speak to "time-keeping policies, practices and procedures" nationwide, does not encompass the production of a witness who can testify as to *problems* and *complaints* arising from such policies, practices and procedures. Defendants first revealed this indefensible strategy to Plaintiff only during the course of a 30(b)(6) deposition in Kansas on June 12. After extensive meet-and-confer between the parties, Defendants agreed to produce an additional witness to address (i) Defendants' procedures for investigating complaints of off-the-clock work, (ii) how such complaints are processed, (iii) what corrective action, if any, the Company has taken as a result of such complaints, and (iv) information concerning actual complaints of off-the-clock work from across the country (the "complaints designee").[2] Defendants made this offer on the morning of June 23, but insisted nonetheless that the deposition, in Kansas City, take place no later than June 27.

Then, on the morning of June 24, Defendants erected yet another roadblock to obstruct Plaintiff's discovery of "off-the-clock" complaints. Prior to deposing the complaints designee, Plaintiff insisted that Defendants produce long overdue documents regarding complaints received regarding "off-the-clock" work via Defendants' national employee hotlines. Plaintiff initially requested these records in document requests served on or about April 3, 2008, but had

---

[2]    It should be noted that Defendants imposed certain limitations on the complaints designee's testimony with respect to topic areas (iii) and (iv).

been stonewalled by Defendants since that time.  These records are obviously integral to Plaintiff's ability to conduct a proper examination of Defendants' "complaints" designee.  On June 24, Defendants finally produced (two days before the scheduled deposition, in electronic form but in an unsearchable format) 1,400 pages of records regarding complaints received via one of the hotlines, but only for stores in New York, and only since April 2005.

Thus, on the one hand, as Defendants themselves have represented, and as Plaintiff is entitled, their proposed complaints designee was prepared to speak to nationwide complaints -- not just complaints from New York from April 2005 to the present.  Yet, on the other hand, Defendants limited their relevant document production to complaints via the helpline occurring only in New York and only from April 2005 to present.  When pressed with respect to these improper geographic and temporal limitations, Defendants forwarded the following explanation:

> The scope of [the complaint designee's] testimony is in no way impacted by the [New York-only] document production.  She remains able to testify as previously represented.  Let us know by 6 p.m. tonight whether you intend to go forward on Thursday at 9:30 am. with her deposition . . . As to the documents, we believe that our production is more than sufficient. First and foremost, Ms. Eng-Hatcher has never claimed that she made a complaint.  Thus, the entire area of inquiry is not relevant.  As we told you in our letter of June 23, 2008 there were two centralized sources for actual complaints. We checked both for New York. There was nothing in the ethics hotline. We gave you the relevant complaints from the Helpline. In terms of the time frame, that is the time frame for data that can be searched. We believe that data prior to April of 2005 is not in a searchable format.

Elise Bloom email, 6/24/2008, 5:08 p.m., annexed as Wells Dec., Exhibit D.

Nothing in Ms. Bloom's email—or in any other communication from Defendants— supports their refusal to provide Plaintiff with documents to which she was plainly entitled in advance of taking the deposition of Defendants' complaints designee.  Indeed, the documents

and testimony at issue are central to the nationwide allegations of "off-the-clock" work in this case.  Because the central issue in this action is whether employees were paid for all hours worked, any complaints regarding Defendants' time-keeping practices and policies are plainly relevant.  Nonetheless, Defendants persist in arguing without foundation that, even if Plaintiff is entitled to a complaints designee of national scope, Plaintiff is not entitled to related documents of a corresponding national scope.

As a result, Plaintiff was forced to postpone this deposition while she sought intervention by the Court.  Plaintiff believes that she is entitled to a complete production of documents in advance of deposing Defendants' complaints designee.  Now that the Court has denied Plaintiff's application for an informal hearing, Plaintiff formally requests that the Court compel Defendants to produce the appropriate witness (and documents, described more fully below).

**B.    Documents**

Defendants' production of documents was non-responsive and/or evasive in certain crucial areas as well as improperly limited in scope.  Defendants also refused to provide documents regarding Plaintiff's claims of various violations of the Fair Labor Standards Action ("FLSA") on a nationwide basis.  Instead, Defendants limited their production to only the State of New York.[3]

As alluded to above, Plaintiff requires documents relating to timekeeping-related complaints on a national basis.  Plaintiff has alleged an FLSA class of national scope.  (*See, e.g.,* Wells Dec., Exhibit A, at Request No. 17 ("Provide copies of all documents relating to any oral or written inquiries, *grievances or complaints* made by Plaintiff and/or any Sales Representative, relating to Defendants; *methods and practices of recording and/or calculating the hours worked*

---

[3] Originally, Defendants limited their production to only store locations where the Named Plaintiff worked, despite the Complaint alleging violations of both state and federal law.

by Sales Representatives . . . .") (emphasis added).  These documents are inarguably reasonably calculated to lead to the discovery of admissible evidence.  To the extent Plaintiff must demonstrate that the other collective class members are similarly situated to her, these documents will certainly add to Plaintiff's allegations.  Plaintiff believes that, in addition to the helpline summaries described above, there are relevant documents relating to Sprint's "ethics hotline" that would be discoverable and probative.

In addition to the documents identified above, Plaintiff also seeks the production of certain "hold notices" identified in the deposition of Bob Bair in Kansas on June 12.  Defendants asserted that these documents are privileged for the first time in a letter from J. Timothy McDonald to the Court on June 30, 2008.  Defendants have not yet added these documents to the privilege log, but as Mr. Bair's testimony demonstrates, it is unlikely that these documents are in fact privileged.  Plaintiff also seeks documents relating to the other means by which Sprint employees could complain of not receiving all compensation due and owing – as Sprint's own corporate designee testified that the hotlines were only one of many ways in which an employee could complain to Sprint of not being paid for all hours worked.

To the extent Defendants may argue that the documents Plaintiff seeks were not encompassed within their first, second or third Request for Production of Documents (which Plaintiff does not concede), it is of no moment.  The information was clearly encompassed in Plaintiff's document requests.  Moreover, even if Defendant asserts that they were not precisely requested, that is simply not the issue as Plaintiff has unequivocally requested the documents for some time.  *See Armamburu v. Healthcare Financial Services, Inc.*, No. CV 2002-6535(ARR)(MDG), 2007 WL 2020181, *3 (E.D.N.Y. July 6, 2007) ("[D]efendant has not cited, nor is this Court aware of any decisions by a court in the Eastern or Southern Districts of New

York denying a motion to compel on the basis that the moving party did not make a formal request for production of documents. In fact, it is not uncommon among attorneys in these two districts of New York to utilize less formal methods for making discovery requests.")

Further, Defendants' actions to date have caused needless expenditure of time and resources and have left Plaintiff with incomplete information necessary to effectively prosecute her claims (to which she is entitled). This case should be decided its merits, rather than the conduct of counsel. *See Lynch v. Waitman and Sinkoff Waitman, M.D., P.C.*, No. 94-CV-0265, 1995 U.S. Dist. LEXIS 107, at *4 (S.D.N.Y. Jan.10, 1995) (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976) (per curiam); *Sieck v. Russo*, 869 F.2d 131, 133 (2d Cir. 1989) (additional internal citations omitted).

In short, Defendants' discovery transgressions should not be countenanced. Accordingly, Plaintiff respectfully requests this Court compel the production of the heretofore withheld documents and Rule 30(b)(6) designee.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court compel

Defendants to produce the requested documents and witness.

DATED:        Radnor, Pennsylvania
              July 14, 2008

                                              Respectfully submitted,


                                              _/s/Gerald D. Wells, III_____
                                              Gerald D. Wells, III, Esq. (*pro hac vice*)
                                              Robert J. Gray, Esq. (*pro hac vice*)
                                              Nick S. Williams, Esq. (NW-5946)
                                              Robert W. Biela, Esq. (*pro hac vice*)
                                              Schiffrin Barroway Topaz & Kessler, LLP
                                              280 King of Prussia Road
                                              Radnor, PA  19087
                                              610-667-7706

                                              -and-

                                              Robert J. Shapiro, Esq. (RS-3220)
                                              Jonathan S. Shapiro, Esq. (JS-3068)
                                              The Shapiro Firm, LLP
                                              500 Fifth Avenue, 14th Floor
                                              New York, NY  10110
                                              212-391-6464

                                              *Counsel for Plaintiff*