PROSKAUER ROSE
Elise M. Bloom, Esq.
Gregory I. Rasin, Esq.
1585 Broadway
New York, New York  10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900
Email: ebloom@proskauer.com


ROGERS & HARDIN LLP
Hunter R. Hughes, Esq.
J. Timothy Mc Donald, Esq.
Ashley R. Hurst, Esq.
2700 International Tower
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA  30303
Tel.:  (404) 522-4700
Fax:  (404) 525-2224
Email: hrh@rh-law.com


Attorneys for Defendants
Sprint Nextel Corp. and
Sprint/United Management Co.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MELISSA ENG-HATCHER, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  07-CIV-7350 (BSJ) (KNF) |
| SPRINT NEXTEL CORP., SPRINT/UNITED MANAGEMENT CO., and DOES 1 through 10, inclusive, | ) ) ) ) | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY FROM DEFENDANTS** |
| Defendants. | ) ) | |

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

I.     <u>BACKGROUND</u> .................................................................................... 1

    A.    Eng-Hatcher's Initial Document Requests and the First
          Extension of the Discovery Deadline ....................................................... 2

    B.    Eng-Hatcher's Request for Depositions Under Rule 30(b)(6) ................... 4

    C.    The Negotiations Between the Parties ....................................................... 4

          1.    Over five weeks after Sprint served its discovery responses
               and just eight days before the close of discovery, Eng-Hatcher
               objects for the first time to Sprint's responses—but not to
               Sprint's response to Request No. 17 or to Sprint's 30(b)(6)
               timekeeping designee. ................................................................. 4

          2.    Eng-Hatcher objects to the appropriateness of Sprint's
               30(b)(6) timekeeping designee; Sprint offers to provide
               an additional designee; and Eng-Hatcher accepts Sprint's offer. ... 5

          3.    Eng-Hatcher reneges on her acceptance of Sprint's offer. ............. 6

          4.    Eng-Hatcher shifts her focus to the adequacy of Sprint's
               document production, and Sprint offers to expand its initial
               production. ................................................................................. 7

          5.    Eng-Hatcher rejects Sprint's offer, arguing that the
               inadequacy of Sprint's document production prevented her
               from taking the proposed 30(b)(6) deposition. ............................ 8

          6.    Sprint offers to expand the scope of the proposed 30(b)(6)
               deposition, but Eng-Hatcher again rejects Sprint's offer. ............. 8

          7.    Sprint produces to Eng-Hatcher almost 1,400 pages of calls
               to the Employee Helpline from all New York retail employees
               regarding the payment of wages for hours worked. ...................... 9

    D.    The "Hold Notices" .............................................................................. 10

    E.    Eng-Hatcher Seeks Relief from this Court ............................................ 10

II.   <u>ARGUMENT</u> ................................................................................. 10

    A.   Eng-Hatcher's Motion to Compel is Untimely. ...................................... 11

    B.   Eng-Hatcher's Motion to Compel is Premature. ................................... 13

    C.   Eng-Hatcher's Motion Should be Denied on the Merits. ....................... 14

        1.   Eng-Hatcher's proposed 30(b)(6) topic is unduly
             burdensome. ................................................................... 14

        2.   Eng-Hatcher's requests for Employee Helpline and Ethics
             Hotline calls are not reasonably calculated to lead to the
             discovery of admissible evidence and are unduly burdensome. ... 15

        3.   Eng-Hatcher did not request the "hold notices" until one day
             before discovery closed, and, in any event, they are protected
             from disclosure by the attorney-client privilege. ....................... 16

    <u>CONCLUSION</u> ....................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Audi AG v. D'Amato*,
    469 F.3d 534 (6th Cir. 2006) ....................................................................... 11, 12

*Cramer v. Fedco Auto. Components Co.*,
    No. 01-cv-0757E(SR), 2004 WL 1574691 (W.D.N.Y. May 26, 2004) ................................. 11

*Ellis v. City of New York*,
    243 F.R.D. 109 (S.D.N.Y. 2007) ................................................................... 11, 12

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003) ......................................................................... 11

*Rossetto v. Pabst Brewing Co.*,
    217 F.3d 539 (7th Cir. 2000) ..................................................................... 11, 12

*Searson v. Concord Mortgage Co.*,
    No. CV-07-3909, 2008 U.S. Dist. LEXIS 28667 (S.D.N.Y. Apr. 8, 2008) ........................... 13

*Treppel v. Biovail Corp.*,
    249 F.R.D. 111 (S.D.N.Y. 2008) ..................................................................... 16

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................. 17

## STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1) ......................................................................... 15, 16

Fed. R. Civ. P. 26(b)(2)(C)(iii) ................................................................. 14, 16

Fed. R. Civ. P. 37 .................................................................................. 17

Fed. R. Civ. P. 37(a)(1) ............................................................................ 17

Defendants Sprint Nextel Corp. and Sprint/United Management Co. (collectively "Sprint") submit this Opposition to Plaintiff's Motion to Compel Discovery from Defendants. For the reasons stated herein, Sprint respectfully requests that the Court deny Plaintiff's Motion.

## INTRODUCTION

Plaintiff's motion to compel says very little about the actual course of discovery in this case or the actual nature of this dispute—it does not say, for example, why the Court should reconsider its decision not to reopen the closed discovery period; it does not say why Plaintiff is entitled to out-of-time document and deposition discovery; it does not describe at all the negotiations in which the parties have engaged to date; and, substantively, it does not say why the Federal Rules of Civil Procedure entitle the Plaintiff to the discovery she seeks. Rather than fill these gaps with reasoning, Plaintiff has filled them with conclusory statements and hyperbole—that Sprint has used "indefensible strateg[ies]"; that Sprint's document production was "long overdue"; that Sprint has "stonewalled" the Plaintiff; that Plaintiff was "plainly entitled" to certain documents—but the gaps remain. And for good reason: Plaintiff cannot explain why she is entitled to relief because she is not entitled to relief. The Court should therefore deny Plaintiff's motion to compel.

## I.    BACKGROUND

This is a purported collective action under the Fair Labor Standards Act ("FLSA") and class action under New York's labor laws. Plaintiff Melissa Eng-Hatcher is a former employee of Defendant Sprint/United Management Co. who worked in two of Sprint's retail stores: Store 160 in Harlem, and Store 1185 in the Bronx. (*See* Pl.'s Mem. of Law in Support of Pl.'s Motion for (1) Conditional Collective Certification; (2) Court Authorized Notice; and (3) Production of Names and Addresses Pursuant to 29 U.S.C. § 216(b), Ex. C, Eng-Hatcher Dep. at 36-37.) Eng-Hatcher accuses Sprint of violating the FLSA and New York law by requiring certain of its retail

employees to work "off the clock," by not paying these same employees for all of their overtime hours, and by applying certain charge-backs to the employees' commissions. (*See* Amended Class/Collective Action Complaint ¶ 1 (Docket Entry 8).) No other current or former Sprint employee has joined this action, and Plaintiff has not presented any statements from other employees to support her claims. Indeed, Plaintiff has no personal knowledge of any alleged violation outside of the two stores in which she worked.

Eng-Hatcher filed her motions for class- and collective-action certification on July 11, 2008, and Sprint's opposition to those motions is due on July 25, 2008. She filed the instant motion to compel on July 14, 2008.

### A. Eng-Hatcher's Initial Document Requests and the First Extension of the Discovery Deadline

Eng-Hatcher originally filed this lawsuit in August of 2007. On February 29, 2008, the Court entered an order that effectively bifurcated discovery, with all discovery regarding class- and collective-action certification to close by May 21, 2008. *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-Civ-7350 (Feb. 29, 2008 order) (Docket Entry 26). Given this short, three-month period for class discovery, the parties agreed that initial discovery requests would be served by March 7, 2008. (Hurst Dec. Ex. A at 2 (Letter from Mc Donald to the Honorable Kevin N. Fox (June 23, 2008).) Sprint served its first written requests before this date, on February 28 and March 3, 2008. (*See id.*) Eng-Hatcher did not.

In fact, Eng-Hatcher did not serve any discovery requests on Sprint until April 3, 2008— almost a month after the March 7th exchange date and more than a month into the three-month class discovery period—when she served on Sprint her first sets of document requests and interrogatories. (*See id.*) In Request No. 17 of her document requests, Eng-Hatcher asked for

> copies of all documents relating to any oral or written inquiries, grievances or complaints made by Plaintiff and/or any Sales Representative, relating to Defendants' methods and practices of recording and/or calculating the hours worked by Sales Representatives during the last six years, including any and all documents relating to Defendants' grievance and/or complaint policies, handbooks or manuals.

(Pl.'s First Request for Prod. of Docs., Request No. 17 (Apr. 3, 2008) (attached as Ex. A to Pl.'s Motion to Compel).)

Sprint timely responded to Eng-Hatcher's document requests on May 6, 2008. Sprint objected to Request No. 17 on a number of grounds, including relevancy, overbreadth, and undue burden. (Hurst Dec. Ex. B at 16 (Def.'s Objections and Responses to Pl.'s First Request for Prod. of Docs. (May 6, 2008)).) Sprint nevertheless agreed to produce documents responsive to Request No. 17, but only those documents relevant to stores 160 and 1185, the two stores in which Eng-Hatcher worked. Sprint stated this limitation explicitly:

> [T]o date, Plaintiff's allegations . . . in this case relate solely to the two stores at which she worked, Stores 160 and 1185. Subject to and without waiving its general and specific objections, Sprint will produce documents responsive to this Request **with respect to Stores 160 and 1185**, to the extent any exist.

(*Id.* (emphasis added).) Accordingly, on May 14, 2008, Sprint produced the only responsive documents it had: all records of phone calls to its Employee Helpline that were from an employee in store 160 or 1185 and that concerned complaints regarding wage compensation for hours worked.[1] (Hurst Dec. Ex. C at 3 (Letter from Bloom to Wells (June 19, 2008)).)

About two weeks later, on May 19, 2008, Eng-Hatcher asked the Court for a thirty-day extension of the discovery period, from May 21 to June 20, 2008. (Hurst Dec. Ex. A at 2.) Despite Eng-Hatcher's failure to serve any discovery requests for more than a month of the three-month discovery period, Sprint did not oppose Eng-Hatcher's request, which the Court

---

[1] This refutes Eng-Hatcher's statement in her brief that Sprint's production of documents in response to Request No. 17 was "long overdue." Pl's Mem. of Law in Support of Motion to Compel at 4.

granted on May 20, 2008.  (*See id.*; *Eng-Hatcher*, No. 07-Civ-7350 (May 20, 2008 order)

(Docket Entry 32).)

**B.      Eng-Hatcher's Request for Depositions Under Rule 30(b)(6)**

Also on May 19, 2008, Eng-Hatcher's counsel sent Sprint a letter requesting that Sprint

designate a witness under Federal Rule of Civil Procedure 30(b)(6) to testify about, among other

things, Sprint's timekeeping policies and practices:  the "time-keeping policies, practices and

procedures for Sprint's Sales Representatives including:  how and when work hours are reported,

confirming and verifying time records, overtime, recording time for meal and rest breaks, audits

of time records, etc."  (Hurst Dec. Ex. D at 2 (Letter from Biela to Bloom (May 19, 2008)).)

Three days later, on May 22, 2008, Sprint designated Rob Lynch to testify on this topic.  (Hurst

Dec. Ex. E at 2 (Letter from Hurst to Biela (May 22, 2008)).)  Sprint explained to Eng-Hatcher

that it understood her 30(b)(6) timekeeping topic to cover information "regarding how hours

were reported, including how time records, overtime, and meal and rest breaks were handled

during the relevant time period."  (*Id.*)  Eng-Hatcher did not respond to Sprint's May 22nd letter,

so Sprint sent a follow-up letter on May 27, 2008.  (Hurst Dec. Ex. A at 3.)  Without any

objection to Sprint's understanding of the scope of the 30(b)(6) timekeeping topic, the

depositions of Rob Lynch and Sprint's other witnesses proceeded on June 12, 13, and 19, 2008.

(*Id.*)

**C.      The Negotiations Between the Parties**

**1.      Over five weeks after Sprint served its discovery responses and just
            eight days before the close of discovery, Eng-Hatcher objects for the
            first time to Sprint's responses—but not to Sprint's response to
            Request No. 17 or to Sprint's 30(b)(6) timekeeping designee.**

By the time the 30(b)(6) depositions began on June 12th, over five weeks had passed

since Sprint served its objections and responses to Eng-Hatcher's first set of documents requests

on May 6th.  Discovery was scheduled to close in just eight days, and yet Eng-Hatcher had not

raised any issues at all with Sprint's response to Request No. 17, with Sprint's understanding of

the 30(b)(6) timekeeping topic, or with Sprint's response to any of her other requests.  (*See id.*)

Then, on June 12th, in the middle of one of the 30(b)(6) depositions, Eng-Hatcher's

counsel for the first time sent a detailed response to certain of Sprint's objections and responses

to her interrogatories and document requests.  (Hurst Dec. Ex. F (Letter from Wells to Hurst

(June 12, 2008) (responding to Sprint's objections and responses to interrogatories 2, 4, 6-9, 13-

18, & 20; and document requests 1, 3, 5, 6, 8, 10-13, 16, & 18-26)).)  Noticeably absent from

Eng-Hatcher's June 12th letter was any objection to (or even mention of) (1) Sprint's objection

to Document Request No. 17, including Sprint's statement that it would only produce responsive

documents regarding stores 160 and 1185; or (2) Sprint's statement of its understanding of the

timekeeping topic about which Rob Lynch had been designated to testify.  (*See id.*)

### 2. Eng-Hatcher objects to the appropriateness of Sprint's 30(b)(6) timekeeping designee; Sprint offers to provide an additional designee; and Eng-Hatcher accepts Sprint's offer.

Eng-Hatcher did not raise any objections about the scope of Sprint's 30(b)(6)

timekeeping designee until June 16th, just four days before discovery was to close.  On that date,

Eng-Hatcher's counsel complained that Sprint had "failed . . . to produce a Rule 30(b)(6) witness

who can testify competently about complaints received nationally with respect to off-the-clock

work and/or improper alteration of time records."  (Hurst Dec. Ex. G at 1 (Letter from Wells to

Hughes et al. (June 16, 2008)).)  Eng-Hatcher's 30(b)(6) notice, however, had not requested

testimony on such a topic, and because she had never objected to Sprint's May 22nd statement of

what it understood her 30(b)(6) timekeeping topic to include, Sprint had no reason to think that

she would expect the witness to testify regarding timekeeping complaints.  (*See* Hurst Dec. Ex.

D.)  So two days later, Sprint responded accordingly:  It was not required to produce a witness who could testify about off-the-clock complaints nationally because Eng-Hatcher had never asked it to.  (Hurst Dec. Ex. H at 1 (Letter from Bloom to Wells (June 18, 2008)).)  In any event, Sprint pointed out, her June 16th objection was effectively moot because three of Sprint's witnesses did, when asked, testify about Sprint's complaint process.  (*Id.*)

Nevertheless, in a good-faith attempt to move discovery forward, Sprint offered to designate what amounted to a fourth witness to testify after the discovery period closed "regarding Sprint's procedures for investigating a complaint regarding off-the-clock work." (Hurst Dec. Ex. C at 2.)[2]  Eng-Hatcher's counsel quickly "accept[ed Sprint's] offer" and suggested that, this time, her understanding of the 30(b)(6) topic was identical to Sprint's:  The "30(b)(6) designee [would] competently speak to investigating off-the-clock work."  (Hurst Dec. Ex. I (E-mail from Wells to Bloom (June 19, 2008, 4:58 p.m.)).)  At least for a moment, therefore, the parties were in agreement that Sprint's additional 30(b)(6) witness would testify generally about Sprint's procedures for investigating complaints of off-the-clock work.  This shared understanding did not last long.

### 3.    Eng-Hatcher reneges on her acceptance of Sprint's offer.

Six hours after accepting Sprint's offer, Eng-Hatcher's counsel wrote to Sprint again and, ignoring the earlier agreement, modified the topic on which she wanted the new 30(b)(6) designee to testify.  Now, Eng-Hatcher sought testimony about not only Sprint's general investigatory procedures, but also about particular complaints of off-the-clock work nationwide:

> (i) Defendants' procedures for investigating complaints of off-the-clock work, (ii) how such complaints are processed, (iii) what corrective action, if any, the Company has taken as a result of such complaints, and (iv) information concerning actual complaints of off-the-clock work from across the country.

---

[2]    Sprint made clear that its "willingness to provide this out-of-time witness" was not intended to prejudice its right to oppose a second extension of the discovery period.  *Id.*

(Hurst Dec. Ex. J at 2 (Letter from Wells to Bloom (June 19, 2008)).)  Sprint responded the next

day, reiterating that it would abide by the original agreement to produce a witness who would

"provide further testimony on the complaint procedure issue," but not agreeing to produce a

witness who could testify on Eng-Hatcher's newly proposed national topics.  (Hurst Dec. Ex. K

(E-mail from Bloom to Wells (June 20, 2008, 5:21 p.m.)).)

> ### 4.    Eng-Hatcher shifts her focus to the adequacy of Sprint's document production, and Sprint offers to expand its initial production.

Back on June 16th, when Eng-Hatcher first complained about the adequacy of Sprint's

30(b)(6) witness on the topic of complaints regarding off-the-clock work, she did not raise any

objection to Sprint's May 6, 2008 response to Document Request No. 17.[3]   Rather, Eng-

Hatcher first objected to Sprint's response to Request No. 17 at a June 18, 2008 meet-and-confer

between the parties—which was over seven weeks after Sprint served its response and just two

days before discovery was to close on June 20th.  (*See* Hurst Dec. Ex. C at 2-3.)

At that meeting, Eng-Hatcher claimed to be entitled to "information regarding any

complaint of off-the-clock work nationally since 2001."  (*Id.* at 2 (emphasis added).)  Given the

size of Sprint's organization—the company has tens of thousands of hourly employees around

the country—this was a staggering request, and Sprint responded accordingly the next day.  (*See*

*id.* at 2-3 (stating that her request was "grossly overbroad and unduly burdensome").)  Moreover,

---

[3]     Recall that Request No. 17 sought the following documents:

> copies of all documents relating to any oral or written inquiries, grievances or complaints made by Plaintiff and/or any Sales Representative, relating to Defendants' methods and practices of recording and/or calculating the hours worked by Sales Representatives during the last six years, including any and all documents relating to Defendants' grievance and/or complaint policies, handbooks or manuals.

Pl.'s First Request for Prod. of Docs., Request No. 17 (Apr. 3, 2008) (Ex. A to Pl.'s Motion to Compel).  In its May 6, 2008 response to this request, Sprint objected and advised Eng-Hatcher that it would only produce responsive documents from stores 160 and 1185.  *See supra* Part I.A.

Sprint had already "produced . . . all Employee Helpline calls from" stores 160 and 1185 and had searched its Ethics Hotline for similar calls but found none. (*Id.*) Nevertheless, Sprint offered to expand its initial response to Request No. 17 by producing all Employee Helpline and Ethics Hotline calls "from employees in the State of New York with respect to the payment of wages for hours worked, for a reasonable time period." (*Id.* at 3.) This was a reasonable compromise, considering that (1) Eng-Hatcher's proposed Rule 23 class action is limited to New York, and (2) New York would provide a representative—and large—sample for Eng-Hatcher to review, as New York has one of the highest concentrations of Sprint stores in the country. (*See* Hurst Dec. Ex. L at 4 (Letter from Mc Donald to the Honorable Kevin N. Fox (June 30, 2008)).)

> **5.** **Eng-Hatcher rejects Sprint's offer, arguing that the inadequacy of Sprint's document production prevented her from taking the proposed 30(b)(6) deposition.**

Eng-Hatcher immediately rejected Sprint's offer to produce state-wide New York calls, claiming that it was inconsistent for Sprint to offer only state-wide documents in response to Request No. 17 while at the same time offering a 30(b)(6) designee who could testify generally on off-the-clock complaint procedures. (*See* Hurst Dec. Ex. J at 3.) The following Monday, June 23rd, Eng-Hatcher made the same assertion, this time threatening to decline to depose Sprint's proposed 30(b)(6) witness unless Sprint produced "all documents related to complaints . . . ." (Hurst Dec. Ex. M at 1-2 (E-mail from Wells to Bloom (June 23, 2008, 12:27 p.m.)).)

> **6.** **Sprint offers to expand the scope of the proposed 30(b)(6) deposition, but Eng-Hatcher again rejects Sprint's offer.**

In light of Eng-Hatcher's threat, Sprint offered to expand the scope of the proposed 30(b)(6) designee to include the first two of Eng-Hatcher's requested topics—"(i) Defendants' procedures for investigating complaints of off-the-clock work, [and] (ii) how such complaints are processed"; and to include "generally" information about the last two topics—"(iii) what

8

corrective action, if any, the Company has taken as a result of such complaints, and (iv)

information concerning actual complaints of off-the-clock work from across the country."

(Hurst Dec. Ex. N at 1 (E-mail from Bloom to Wells (June 23, 2008, 3:49 p.m.)).)  As Sprint

explained, no 30(b)(6) designee could testify other than "generally" about items (iii) and (iv)

because "these issues . . . are, in large part, anecdotal.  To unearth the anecdotal information . . .

would require [Sprint] to review an unduly burdensome number of files" from all of Sprint's

stores around the country.  (*Id.*)  Sprint's witness, therefore, was prepared to speak nationally

only in general terms, not with regard to particular instances of discipline or particular

complaints.[4]  Eng-Hatcher rejected Sprint's offer completely on June 24, 2008.  (Hurst Dec. Ex.

O (E-mail from Wells to Bloom (June 24, 2008, 5:54 p.m.)).)

> **7.    Sprint produces to Eng-Hatcher almost 1,400 pages of calls to the Employee Helpline from all New York retail employees regarding the payment of wages for hours worked.**

In the midst of these negotiations, Sprint produced to Eng-Hatcher a 1,384-page

document containing records of all calls by New York retail employees to Sprint's Employee

Helpline from April 2005 on that related to the payment of wages for hours worked.  (Hurst Dec.

Ex. P (Letter from Mc Donald to Wells et al. (June 23, 2008)).)[5]  Sprint also searched its records

for responsive calls from New York employees to the Ethics Hotline, but did not find any that

related to off-the-clock work.  (*Id.*)

---

[4]    Eng-Hatcher states in her brief that Sprint "agreed to produce an additional witness to address" all four of Eng-Hatcher's proposed topics. Pl's Mem. of Law in Support of Motion to Compel at 4.  That is simply false—as explained, Sprint agreed to produce a witness to testify regarding items (i) and (ii), but only "generally" regarding items (iii) and (iv).

[5]    Sprint could not produce calls from before April 2005 on such short notice because calls from before then are not stored in a searchable format.  *See* E-mail from Bloom to Wells (June 24, 2008, 5:08 p.m.) (attached hereto as Ex. Q).

### D.    The "Hold Notices"

On June 19, 2008—one day before discovery was set to close—Eng-Hatcher for the first time asked Sprint to produce any "'hold notices' regarding complaints from Sales Representatives arising from a failure to compensate for all hours worked." (Hurst Dec. Ex. J at 4.) Sprint believes that the "hold notices" Eng-Hatcher seeks are attorney-client communications sent by Sprint's counsel to various company employees regarding records retention with respect to this case. (Hurst Dec. Ex. L at 5.)

### E.    Eng-Hatcher Seeks Relief from this Court

On June 20 and June 26, 2008, Eng-Hatcher wrote to the Court seeking essentially the same relief that she seeks now. *See Eng-Hatcher*, No. 07-Civ-7350 (Docket Entries 34 & 35). The Court denied Eng-Hatcher's requests in full on June 30 and July 3, 2008. (*Id.*)

## II.    <u>ARGUMENT</u>

The facts here speak for themselves.[6] Eng-Hatcher is not entitled to an order compelling Sprint to produce any documents or witnesses because:

(A)    her motion is untimely: the class-discovery period has already closed, any delay in bringing this motion is Eng-Hatcher's fault, and, in any event, Eng-Hatcher has not provided any explanation as to why her motion is late;

(B)    her motion is premature: the parties are in the middle of briefing whether this case should be certified as a collective action, and the nationwide discovery she seeks should be granted only if nationwide certification is granted; and

(C)    her proposed discovery is objectionable under Rule 26, as it would be unduly burdensome, is not reasonably calculated to lead to the discovery of admissible evidence, and the "hold notices" are subject to the attorney-client privilege.

For all of these reasons, the Court should deny Eng-Hatcher's motion in full.

---

[6]    Which may be why Eng-Hatcher's brief leaves out all of the relevant facts. *See* Pl.'s Mem. of Law in Support of Motion to Compel at 2-3.

A.    **Eng-Hatcher's Motion to Compel is Untimely.**

Eng-Hatcher's motion to compel should be denied as untimely because she filed it outside of the Court-ordered discovery period. This Court has wide discretion with regard to discovery matters. *See, e.g.*, *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (Motions to compel are "entrusted to the sound discretion of the district court.") (internal quotation marks omitted). That discretion includes the power to require compliance with the Court's orders, including its orders setting the schedule of discovery. *See Ellis v. City of New York*, 243 F.R.D. 109, 112 (S.D.N.Y. 2007) (denying defendant's motion to compel because it did not "demonstrate good cause for its failure to comply with the [discovery-period provisions of the] scheduling order").

Indeed, courts in this circuit and others have denied motions to compel on the ground that they were filed outside of the discovery period. *See id.*; *Cramer v. Fedco Auto. Components Co.*, No. 01-cv-0757E(SR), 2004 WL 1574691, at *3 (W.D.N.Y. May 26, 2004) (unpublished opinion) (denying plaintiff's motion to compel, which was filed on the day that discovery closed, because the discovery sought "would serve as a vehicle to circumvent the court-imposed discovery deadline without any reasonable justification to do so"); *see also Audi AG v. D'Amato*, 469 F.3d 534, 541-42 (6th Cir. 2006) (affirming the denial of a motion to compel as untimely where the party seeking discovery knew of the issue on which he wanted discovery two-and-a-half months before the discovery deadline, but did not act until the day discovery closed); *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000) (affirming denial of motion to compel as untimely where motion was filed two months after the discovery deadline and plaintiff gave no excuse for the tardiness). Courts are particularly quick to deny a motion to compel as

untimely when the movant has offered no explanation for why the motion is late. *See, e.g.*, *Rossetto*, 217 F.3d at 542; *Ellis*, 243 F.R.D. at 112.

Here, Eng-Hatcher's motion to compel is untimely and should be denied. Per the Court's May 20, 2008 order, the class-related discovery period was extended to and closed on June 20, 2008. *See Eng-Hatcher*, No. 07-Civ-7350 (May 20, 2008 order) (Docket Entry 32). Eng-Hatcher could have begun serving her discovery requests as early as the end of February, but she chose to wait until over a month of the three-month discovery period had lapsed before serving any requests. Despite this delay, Sprint did not oppose an initial extension of the discovery period—which effectively gave Eng-Hatcher back the first month of the discovery period that she wasted—and Sprint has timely responded to all of Eng-Hatcher's discovery requests. Moreover, Sprint's timely responses put Eng-Hatcher on notice as of <u>May 6, 2008</u>, of Sprint's position regarding the discoverability of Employee Helpline calls from retail stores other than stores 160 and 1185. Yet Eng-Hatcher did not object to Sprint's position until just two days before the already-extended discovery period closed. These facts alone are enough for the Court to deny Eng-Hatcher's motion as untimely. *See Audi AG*, 469 F.3d at 541-42.

But these facts do not stand alone: Neither Eng-Hatcher's motion nor her brief bother to mention the fact that they were filed outside of the discovery period. She has provided no explanation for the delay, and she does not even <u>ask</u> the Court to extend the discovery period to allow her additional discovery. (*See generally* Pl.'s Mem of Law in Support of Motion to Compel.) Given that Eng-Hatcher has provided no excuse, her motion to compel should be denied. *See, e.g.*, *Rossetto*, 217 F.3d at 542; *Ellis*, 243 F.R.D. at 112.

**B.      Eng-Hatcher's Motion to Compel is Premature.**

Even if the untimeliness of Eng-Hatcher's motion was excusable, the Court should

nevertheless deny her motion because, at least with regard to the discovery of information related

to national complaints of off-the-clock work, the discovery she seeks is premature.  In her

motion, Eng-Hatcher seeks primarily two types of discovery, both of which have a <u>nationwide</u>

focus:  (1) a 30(b)(6) witness who can "testify regarding national complaints by" certain Sprint

retail employees; and (2) records of certain calls by all retail employees nationwide to Sprint's

Employee Helpline or Ethics Hotline.  (Pl.'s Notice of Motion to Compel at 1.)  But this puts the

cart before the horse:  The Court has not yet ruled on Eng-Hatcher's certification motion, so this

case is not—and may never be—a nationwide collective action.  Eng-Hatcher is still the lone

plaintiff.

The significance of this point lies in the FLSA's two-step certification process, which

generally puts off discovery of the identity of potential opt-in plaintiffs on a nationwide basis

until <u>after</u> the plaintiff has satisfied her conditional-certification burden.  *See, e.g.*, *Searson v.*

*Concord Mortgage Co.*, No. CV-07-3909, 2008 U.S. Dist. LEXIS 28667, at *3 (S.D.N.Y. Apr. 8,

2008).  Eng-Hatcher's proposed nationwide discovery, therefore, is inappropriate, given that the

Court has not yet decided her motion to conditionally certify this case.  *See id.* (denying motion

to compel "documents relating to putative class members" of an FLSA case "because the class

has not been conditionally certified" and, therefore, "discovery is premature").  Indeed, if the

Court denies Eng-Hatcher's conditional-certification motion, nationwide discovery will never be

appropriate in this case.  Her motion to compel should therefore also be denied as premature.

**C.**    **Eng-Hatcher's Motion Should be Denied on the Merits.**

Finally, the Court should deny Eng-Hatcher's motion on the merits because the discovery she seeks is objectionable under Rule 26:  It would be unduly burdensome, it is not likely to lead to the discovery of admissible evidence, and the "hold notices" are subject to the attorney-client privilege.

**1.**    **Eng-Hatcher's proposed 30(b)(6) topic is unduly burdensome.**

Eng-Hatcher's request for a 30(b)(6) designee that can testify nationally regarding particular complaints of off-the-clock work and particular instances of discipline taken against Sprint employees is unduly burdensome.  For a Sprint witness to be able to testify other than generally about these topics, the witness would have to review and—somehow—become familiar with all of Sprint's files from around the country regarding not only any complaints about wage compensation that may have been made, but also regarding how Sprint addressed and resolved each of these complaints.  No person could adequately prepare for such a deposition.[7]

Given this burden, the only proper scope for a 30(b)(6) designee on this topic would be the scope that Sprint has already offered:  (1) detailed testimony on "(i) Defendants' procedures for investigating complaints of off-the-clock work, [and] (ii) how such complaints are processed"; and (2) "general[]" testimony about "(iii) what corrective action, if any, the Company has taken as a result of such complaints, and (iv) . . . actual complaints of off-the-clock work from across the country."  (Ex. N at 1.)  Anything more would be unduly burdensome.  Eng-Hatcher's request, therefore, should be denied.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

---

[7]    To put Eng-Hatcher's 30(b)(6) request in perspective, she would expect Sprint to produce a witness who could testify about all of the calls reflected in the 1,384-page document of Employee Helpline Calls that Sprint produced, as well as whatever other records there are from the rest of the country. *See* Hurst Dec. Ex. M at 1-2.

> **2.     Eng-Hatcher's requests for Employee Helpline and Ethics Hotline
> calls are not reasonably calculated to lead to the discovery of
> admissible evidence and are unduly burdensome.**

Eng-Hatcher's requests for "national complaints by Retail Sales Consultants for Sprint's

failure to pay them overtime and/or failure to pay them for all hours worked," and "national

ethics hotline complaints"[8] should be denied because (1) they are not reasonably calculated to

lead to the discovery of admissible evidence, and (2) they are unduly burdensome, given the little

benefit that would inure to Eng-Hatcher from this discovery.

As an initial matter, Sprint has already produced to Eng-Hatcher all calls to its Employee

Helpline since April 2005 from New York employees that relate to wage compensation for hours

worked.  (*See* Hurst Dec. Ex. P.)  There were no such calls to the Ethics Hotline (*id.*), but had

there been, Sprint would have produced them too.   New York is the state in which Eng-Hatcher

worked for Sprint, it is the state in which she seeks to certify a Rule 23 class, and it has one of

the highest concentrations of Sprint retail stores in the country.  (*See* Hurst Dec. Ex. K at 4.)

This production, therefore, gave Eng-Hatcher an adequate sampling of the kinds of wage-related

calls that Sprint's Employee Helpline receives from around the country.

Notably, despite the strength of this sampling, Eng-Hatcher found virtually nothing in the

1,384 pages of New York Employee Helpline calls to support her motion for conditional

certification.  (*See* Pl.'s Mem. of Law in Support of Pl.'s Motion for (1) Conditional Collective

Certification; (2) Court Authorized Notice; and (3) Production of Names and Addresses Pursuant

to 29 U.S.C. § 216(b) at 11 (citing to Sprint's Employee Helpline calls, but not describing any

particular call that shows Sprint's failure to pay its employees appropriately)).)  If Eng-Hatcher

---

[8]     Eng-Hatcher appears to seek <u>all</u> "national ethics hotline complaints," not just those that pertain to the issues
in this case.  To the extent that her motion can be construed as seeking calls to the Ethics Hotline that are not about
Sprint's off-the-clock and related wage pay practices, her request does not seek relevant evidence.  *See* Fed. R. Civ.
P. 26(b)(1) (limiting discovery to "relevant" information only).

found virtually nothing helpful in the Employee Helpline calls from New York, it is unlikely that she would find anything helpful in a nationwide production. Moreover, Eng-Hatcher has made no attempt to explain why the New York-only production was inadequate; she just states in her brief that she "believes" that other relevant documents exist, but does not offer any justification or support for that belief. (*See* Pl.'s Mem. of Law in Support of Motion to Compel at 7.)

The document discovery Eng-Hatcher seeks, therefore, is not reasonably calculated to lead to the discovery of admissible evidence, and the burden and expense of producing it outweigh any likely benefit to Eng-Hatcher. *See* Fed. R. Civ. P. 26(b)(1) & (b)(2)(C)(iii); *see also Treppel v. Biovail Corp.*, 249 F.R.D. 111, 117 (S.D.N.Y. 2008) (denying motion to compel because the likelihood of finding additional relevant documents was "exceedingly remote," "the plaintiff has failed to identify any reason to believe that the [additional discovery] would contain any documents relevant to the litigation not already" discovered, and, therefore, the "burden [that the additional discovery] would impose on the defendants . . . outweighs its likely benefit"). The Court should therefore deny Eng-Hatcher's motion.

**3.    Eng-Hatcher did not request the "hold notices" until one day before discovery closed, and, in any event, they are protected from disclosure by the attorney-client privilege.**

Finally, Eng-Hatcher seeks discovery of Sprint's "hold notices." Her counsel first requested these informally on June 19, 2008—one day before discovery closed. (*See* Hurst Dec. Ex. J at 4.) Sprint believes that the "hold notices" she seeks are documents sent by Sprint's counsel to various company employees regarding records retention with respect to this case. (*See* Hurst Dec. Ex. L at 5.) Given that Eng-Hatcher did not request these documents until one day before the discovery deadline, Sprint should not be compelled to disclose them now. Moreover, these documents are confidential communications between Sprint's attorneys and

16

Sprint employees made for the purpose of giving legal advice.  As such, the hold notices are privileged from production, and the Court should deny Eng-Hatcher's motion to compel them.[9] *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981).[10]

---

[9]     Sprint would only be obligated to add the hold notices to their privilege log to the extent that a notice is responsive to one of Eng-Hatcher's document requests.  Eng-Hatcher has not identified any document request that would cover the hold notices, and Sprint has not either.  *See* Pl.'s Mem. of Law in Support of Motion to Compel at 7. Nevertheless, to the extent that any hold notice is responsive to one of Sprint's document requests, it would already be on Sprint's privilege log.

[10]     Eng-Hatcher states in her brief that she "also seeks documents relating to the other means by which Sprint employees could complain of not receiving all compensation due and owing . . . ."  Pl.'s Mem. of Law in Support of Motion to Compel at 7.  Sprint is not aware of Eng-Hatcher ever having made this request before including it in her motion to compel.  The request should therefore be denied because (1) including it here for the first time is inappropriate under Rule 37 of the Federal Rules, *see* Fed. R. Civ. P. 37(a)(1) (requiring that the movant confer in good faith with the other party before moving to compel discovery), and (2) the request is untimely, *see supra* Part II.A.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel.

DATED:  July 21, 2008

PROSKAUER ROSE LLP

By:     /s/ Elise M. Bloom
        ELISE M. BLOOM
        ebloom@proskauer.com
        GREGORY I. RASIN
        grasin@proskauer.com
        1585 Broadway
        New York, New York  10036
        Tel.:  (212) 969-3000
        Fax:  (212) 969-2900

        HUNTER R. HUGHES
        hrh@rh-law.com
        J. TIMOTHY Mc DONALD
        jtm@rh-law.com
        ASHLEY R. HURST
        arh@rh-law.com
        ROGERS & HARDIN LLP
        2700 International Tower, Peachtree Center
        229 Peachtree Street, N.E.
        Atlanta, GA  30303
        Tel.:  (404) 522-4700
        Fax:  (404) 525-2224

        Attorneys for Defendants
        Sprint Nextel Corporation and
        Sprint/United Management Company