# EXHIBIT L

# ROGERS & HARDIN

### ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

J. Timothy McDonald
WRITER'S DIRECT DIAL NUMBER
(404) 420-4621
jtm@rh-law.com

2700 INTERNATIONAL TOWER, PEACHTREE CENTER
229 PEACHTREE STREET, N.E.
ATLANTA, GEORGIA 30303-1601
(404) 522-4700
FACSIMILE: (404) 525-2224

June 30, 2008

**VIA FACSIMILE**

The Honorable Kevin Nathaniel Fox
United States Magistrate Judge
United States Courthouse
500 Pearl Street, Room 540
Courtroom: 20A
New York, New York 10007-1312

> Re: <u>Melissa Eng-Hatcher, et al. v. Sprint Nextel Corporation, et al.</u>
> Case No. 07-CIV-7350

Dear Judge Fox:

This letter will address the Plaintiff's counsel's June 26, 2008 letter in the above-referenced matter. Defendants remain available to the Court should it have any questions with respect to this dispute or wish to schedule a conference.

## DEFENDANTS' COOPERATION DOES NOT JUSTIFY ANY EXTENSION

Plaintiff's counsel suggests that because Defendants have continued to cooperate beyond the close of discovery that Defendants only disagree about whether a "<u>de facto</u>" extension should be memorialized. That suggestion is false. Defendants have bent over backwards providing documents well beyond the reasonable scope in this case, agreed to one prior extension and have offered to provide two witnesses out-of-time – a circumstance only made necessary by Plaintiff's prolonged inaction in this case. (Notably, Plaintiff does not dispute the timeline that Defendants established in their letter of June 23, 2008 and the unexplained delay by Plaintiff at various points in this litigation.)

In offering to produce additional 30(b)(6) designees, Defendants did not tacitly concede that their earlier designees were insufficient. In fact, the undersigned sat through a deposition on June 26, 2008 in which the information that was learned was really no different than that learned by Plaintiff in the deposition of Rule 30(b)(6) witness Mark Galluccio two weeks

ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

The Honorable Kevin Nathaniel Fox
June 30, 2008
Page 2

ago – a deposition that Plaintiff has previously asserted was insufficient to
fulfill Defendants' obligations.[1] These depositions, which were not taken "in
accordance with Defendants' schedule" but were taken in accordance with the
schedules of both parties – more than satisfy any obligations that Defendants
had to respond to the belated flurry of discovery requests from Plaintiff in
this case. Defendants believe that the e-mail correspondence that extends to
50 pages attached to the June 26, 2008 letter fully supports Defendants'
position and the reasonableness of Defendants' efforts.

### PLAINTIFF'S 30(b)(6) REQUESTS ARE A MOVING TARGET

The current discovery dispute is a result of Plaintiff's reinvention of
her earlier discovery requests. No better example exists of the moving-target
nature of Plaintiff's discovery requests than the dispute regarding Plaintiff's
desire to have a 30(b)(6) witness to testify about "problems and complaints"
with timekeeping. The original request in the May 19, 2008 letter (attached
as Exhibit B to Defendants' June 23, 2008 letter) sought a designee
regarding:

> The time-keeping policies, practices and procedures
> for Sprint's sales representatives including: How
> and when work hours are reported, confirming and
> verifying time records, overtime, recording time for
> meal and rest breaks, audits of record times, etc.

(Id. at p. 2) Plaintiff appears to contend that the issue of "problems and
complaints" was covered by the "etc." Since Rule 30(b)(6) requires that the
topics be specified with "reasonable particularity" Defendants can hardly be
faulted for not understanding that "etc." meant "problems and complaints."

---

[1] Defendants have further indulged Plaintiff by allowing her to have
depositions taken by a lawyer who (a) has not made an appearance in this
case; (b) has not been admitted pro hac vice in this case; and (c) at least
according to the website maintained by Plaintiff's law firm, is not a member
of the Bar of either the United States District Court for the Southern District
of New York (the forum for this case and the forum in which one of the
depositions physically took place) or the United States District Courts for the
Districts of Kansas or Maine (the forums in which two of the depositions
physically took place).

ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

The Honorable Kevin Nathaniel Fox
June 30, 2008
Page 3

In response to Plaintiff's May 19 letter, Sprint indicated that it would
be providing two witnesses who would testify about "how hours were
reported, including how time records, overtime and meal and rest breaks
were handled during the relevant time period . . . [and] Sprint's self-audit
process of retail stores, which include time records during the relevant time
period." (June 23 letter at Exh. C, p. 2). Thus, Sprint's response clearly
indicated that no one would be testifying about "problems and complaints".
The obvious reason why is that Plaintiff's original topic gave Defendants no
indication that they were part of the issue at hand. **From May 22 through
June 12, Plaintiff never objected to this understanding.** Thus,
Defendants did not take an "indefensible" position on this issue on June 12.
Rather, Plaintiff invented this new discovery request during the deposition
on June 12.

Despite this, Defendants did offer to provide a witness who would
testify about Defendants' policies and procedures for investigating
complaints, and Plaintiff initially accepted this offer. (6/19/08 4:58 p.m.
Email from Mr. Wells to Ms. Bloom attached as Exh. A to Plaintiff's June 26,
2008 letter ("Plaintiff accepts Defendant's offer to make a 30(b)(6) designee
available who can competently speak to investigating off-the-clock work.").)
However, Plaintiff then expanded the topics again. (6/19/08 Letter from Mr.
Wells to Ms. Bloom (attached as Exh. C to Plaintiff's June 26, 2008 letter) at
2.) Plaintiff informed Defendants that she desired a designee or designees
regarding "(i) Defendants' procedures for investigating complaints of off-the-
clock work, (ii) how such complaints are processed, (iii) what corrective
action, if any, the Company has taken as a result of such complaints, and (iv)
information concerning actual complaints of off-the-clock work from across
the country." (Id.)

Defendants offered to provide a designee, Wendy Savlin, Employee
Experience Manager, to testify about items (i) and (ii). As to items (iii) and
(iv), Defendants informed Plaintiff's counsel that there is no one person who
could testify comprehensively regarding these issues without reviewing an
unduly burdensome number of files. Defendants offered to have Ms. Savlin,
who has spoken to a number of individuals within the Company nationally,
testify generally as to these two topics. (6/23/08, 3:49 p.m. email from Ms.
Bloom to Mr. Wells attached as Exhibit A to Plaintiff's June 26, 2008 letter.)

At 5:54 pm on June 24, Plaintiff then indicated that she would not take
Ms. Savlin's 30(b)(6) deposition without first receiving every single complaint

ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

The Honorable Kevin Nathaniel Fox
June 30, 2008
Page 4

(as opposed to the national policies) about timekeeping nationally for a multi-year period. (6/24/08, 5:54 p.m. email from Mr. Wells to Ms. Bloom attached as Exhibit A to Plaintiff's June 26, 2008 letter.) That is not the proper role for a 30(b)(6) witness. The 30(b)(6) witness was to testify about the Company's policies in handling such complaints, not the result of each one. In fact, Plaintiff has had the Company's nation-wide policies on how to report off the clock or overtime issues since May. Thus the scope of Ms. Savlin's testimony is in no way impacted by Plaintiff's latest demand for documents. In short, more than once Defendants offered a witness on this topic and each time Plaintiff attached more and more demands as conditions to taking the deposition. Plaintiff's rejection of Defendants' reasonable offer should foreclose further demands for a deposition on this topic by Plaintiff.

THE HELPLINE DOCUMENTS ARE IRRELEVANT TO THE
HUMAN RESOURCES 30(b)(6) DEPOSITION

Plaintiff's failure to understand what a Rule 30(b)(6) witness would testify about flows directly into the next issue: the allegedly belated production of documents from Defendants' national employee helpline.

As an initial matter, these documents were not belatedly produced as Plaintiff asserts. On May 6, 2008, Defendants timely responded to discovery objecting to the scope of the request regarding complaints, and provided such information with respect to the two stores in which Plaintiff worked. For 34 days, Plaintiff said nothing. On June 12, 2008, with only eight days left in the discovery period, for the first time, Plaintiff disputed that objection. As a compromise position, Defendants produced helpline calls regarding "off the clock" work to the extent that they could be searched for electronically and located for the State of New York – a geographic area co-extensive with the Rule 23 class that Plaintiff hopes to someday have certified. This is a more than reasonable compromise on the relevance and burdensomeness points if for no other reason than that New York has one of the highest concentrations of Sprint stores out of any state in the country. Thus, not only are these documents irrelevant to the remaining deposition that Plaintiff has declined to take, but the production of documents in response to that request was reasonable.

Yet, despite having all of this information, Plaintiff apparently wants a Rule 30(b)(6) witness to testify about the facts of any complaint ever made to a helpline regarding timekeeping over a multi-year period during which Defendant Sprint/United Management Company employed thousands and

ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

The Honorable Kevin Nathaniel Fox
June 30, 2008
Page 5

thousands of retail employees. Defendants are unaware of any authority that supports that logic. Plaintiff has cited none.[2]

Thus, Plaintiff's unwillingness to take the 30(b)(6) deposition she claims to want and for which Defendants have made available is not a credible reason for extending the discovery deadline in this matter.

THE HOLD DOCUMENTS

Plaintiff's most recent new request is for "hold" documents sent by counsel to various company employees to comply with records retention with respect to this case. Nowhere does Plaintiff assert that any records have been destroyed. Instead, Plaintiff asserts that she is entitled to these documents because they relate to a complaint. Even were that so, and Defendants think that stretches the request beyond recognition, the hold documents are privileged attorney-client communications and will be added to Defendants' privilege log to the extent they are not already on the log.

BOARD MINUTES CONCERNING "OVERTIME ISSUES OR
"OFF-THE-CLOCK" WORK

At the risk of again having further cooperation turned against them, Defendants reviewed the Board minutes for the relevant time period and have found no references to "overtime issues" or "off-the-clock" work.

DEFENDANTS' SUPPLEMENTATION OF PRIOR RESPONSES

As it is required to do under the Federal Rules of Civil Procedure, Defendants continue to timely supplement their responses when they become aware of additional responsive information. Plaintiff tries to also turn this compliance with the federal rules on its head and instead want Defendants to certify that their production is complete. The two have nothing to do with each other. Defendants (as does the Plaintiff) will always – up to the time of trial – have the duty to supplement. The fact that Defendants comply with these obligations is not the basis for any argument that Defendants need to undertake some representation to Plaintiff not otherwise required by the federal rules.

---

[2] Plaintiffs also complain about the format in which the helpline calls were produced. This complaint is specious as Defendants produced the New York helpline calls in the format agreed to by the parties.

ROGERS & HARDIN
A LIMITED LIABILITY PARTNERSHIP

The Honorable Kevin Nathaniel Fox
June 30, 2008
Page 6

## PREJUDICE TO DEFENDANTS

Ignoring the history of this case, Plaintiff asserts that "Defendants would plainly suffer no prejudice if the Court were to grant a modest extension to allow time for these issues to be addressed appropriately." Yes Defendants would. Defendants have timely responded to each and every request and new request from Plaintiff in this case. They have agreed to one extension and continued to cooperate after the close of discovery. As Plaintiff's June 26, 2008 letter shows, no good deed goes unpunished. As the complaints/time-keeping issue above shows, Plaintiff's requests will continue to evolve and re-interpret themselves in Plaintiff's eyes. Having run the clock out after months of inaction, Plaintiff now wants to play overtime in the hope that re-inventing the requests can somehow save their case. The cost and expense of complying with additional inquiries under these set of facts is prejudicial to Defendants.

## CONCLUSION

For the foregoing reasons and the reasons outlined in their prior letter to the Court, Defendants respectfully request that the Court deny Plaintiff's untimely attempt to reopen discovery and obtain a second extension. While Defendants are prepared to meet the current briefing schedule set forth in the Court's May 20 Order, they reiterate their offer to consent to a one week extension to the briefing schedule.

Respectfully submitted,

J. Timothy Mc Donald

JTM/sm

c:    Gerald D. Wells, III, Esq. (via fax)
      Robert W. Biela, Esq. (via fax)
      Nick Williams, Esq. (via fax)
      Robert J. Shapiro, Esq. (via fax)
      Elise Bloom, Esq. (via fax)
      Ashley R. Hurst, Esq. (internal distribution)
      Kerri A. Gildow, Esq. (internal distribution)
      Hunter R. Hughes, Esq. (internal distribution)