**c.    Plaintiff must also show that others are interested in joining this case.**

Courts increasingly require plaintiffs to show that others are actually interested in joining

their suit in order to conditionally certify a collective action. Simmons v. T-Mobile USA, Inc.,

2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (concluding that "a showing is necessary that

at least a few similarly situated individuals seek to join the lawsuit"); Rodgers v. CVS Pharm.,

Inc., 2006 U.S. Dist. LEXIS 23272, at *14-15 (M.D. Fla. Mar. 22, 2006) (denying motion to

conditionally certify a class and facilitate notice because "[p]laintiff has failed to provide

sufficient evidence that there are other employees who desire to opt in to this action, other than

the two who have filed consents"). Requiring plaintiffs to show that others are interested in

joining the litigation provides relevant information on "whether or not to put a defendant

employer to the expense and effort of notice to a conditionally certified class of claimants in a

collective action." Simmons, 2007 WL 210008, at *9.

**2.    Plaintiff has Failed to Establish That She is Similarly Situated to Her Putative Class Because She has not Shown That They Were Subjected to a Common Illegal Policy.**

Plaintiff has failed to make the minimum showing necessary for conditional certification

because she has not shown—and, indeed, cannot show—that she is "similarly situated" to

thousands of Sprint's current and former hourly retail store employees in over 1,250 stores

nationwide. It is not sufficient that Plaintiff merely allege that she and her putative class

members were required to work off-the-clock and not paid for overtime work. (Pl. FLSA Br. at

15.) Rather, she must show that she and potential plaintiffs were victims of a common policy or

plan that violated the law. Sperling v. Hoffmann-LaRoche, Inc., 118 F.R.D. 392, 407 (D.N.J.

1988) (emphasis added); see also Mendoza v. Casa De Cambio Delgado, Inc., 2008 U.S. Dist.

LEXIS 27519, at *6-7 (S.D.N.Y. Apr. 7, 2008) (denying conditional certification of off-the-

clock claims because "not one Plaintiff affidavit purports a factual nexus with other putative

employees of the . . . network" and there was a "lack of factual allegations in the affidavits or

complaint to show that the Plaintiffs are similarly situated with the other employees"); Seever v.

Carrols Corp., 528 F. Supp. 2d 159, 173-74 (W.D.N.Y. 2007) (denying plaintiffs' motion for

conditional certification of off-the-clock claims even though plaintiffs submitted affidavits from

employees stating they were not paid overtime, noting that they did not suggest that any of the

violations were part of a company-wide policy, and the evidence was insufficient in light of the

size of the proposed class); Castle v. Wells Fargo Fin., Inc., 2008 WL 495705, at *2-5 (N.D. Cal.

2008) (denying conditional certification where the circumstances in which plaintiffs allegedly

worked off-the-clock varied and no evidence existed of a common policy or plan).  Plaintiff,

however, has not presented evidence of an illegal common policy or plan to which she and the

other putative class members were subjected.  Her only evidence is that Sprint has two legal

policies, and from that evidence she has theorized that a de facto illegal policy exists.  This

argument is meritless.

### a.     Plaintiff's alleged nationwide de facto policy is meritless.

Plaintiff tacitly admits that Sprint does not have any actual policies to deny hourly retail

store employees overtime pay or otherwise violate the FLSA.  (Pl. FLSA Br. at 5.)  Without an

actual illegal policy to rely on, Plaintiff resorts to concocting an illegal "nationwide de facto

policy" out of whole cloth to support her claims.

Specifically, Plaintiff alleges that two of Sprint's entirely legal policies combined

together to create an illegal "nationwide de facto policy" whereby local store managers forced

hourly retail store employees to work off-the-clock and denied them overtime.  (Pl. FLSA Br. at

2.)  The first lawful policy is Sprint's incentive-compensation plan for local and district

managers. As explained, this plan allows local SMs and DMs to earn incentive compensation as a reward for their stores' sales. Given that Sprint is in the retail-sales business, it is not remarkable that it uses an incentive-compensation plan to motivate its employees who are involved in sales. The second lawful policy is likewise unremarkable: From time-to-time, SMs and DMs are asked to control expenses in their stores, including overtime.

Taking these two <u>legal</u> policies, Plaintiff then surmises, without any evidence, that local SMs and DMs felt "pressure" to increase sales in their stores without incurring overtime expenses. Based on this surmise, she then speculates that this led to an unwritten, unarticulated "nationwide <u>de</u> <u>facto</u> policy" of coincidental behavior by all SMs and DMs in which they "required [hourly retail store employees] to work off the clock and/or were not paid for all overtime hours they worked." (Pl. FLSA Br. at 5.) In other words, Plaintiff's basic theory is that two rights somehow make a wrong. But Plaintiff's theory is missing the vital component she needs to show that she is similarly situated to other employees—factual evidence of <u>a common illegal policy or plan to which all hourly retail store employees were subjected</u>.

**b.     The evidence shows that Sprint has neither an actual nor a <u>de</u> <u>facto</u> policy of not paying overtime.**

Even a cursory review shows that the theory upon which Plaintiff rests her entire case fails. All of the record evidence shows that Sprint's actual policy is and always has been to pay its retail employees appropriately for all hours that they work, including overtime hours. <u>See, e.g.</u>, <u>supra</u> Section III(C) (detailing Sprint's policies regarding overtime and off-the-clock work). Sprint's commitment to these policies is reflected in the significant amounts of overtime it pays. In New York, for example, retail store consultants earned over $2.6 million in overtime from 2004 to 2007. (Hurst Dec. Ex. 41 (Ratliff Dec.) at ¶ 5.) In fact, over the last four years, the

29

average number of overtime hours paid on a per-RSC basis both nationally and in New York steadily <u>increased</u>. Nationally, the average went from 46 in 2004 to 70 in 2007. In New York, the average went from 40 in 2004 to 55 in 2007. <u>See supra</u> Section III(E); <u>see also Williams v. Accredited Home Lenders, Inc.</u>, 2006 U.S. Dist. LEXIS 50653, at *14 (N.D. Ga. July 25, 2006) (holding that, in light of evidence that company policy required paying overtime and company had in fact paid $1.4 million in overtime to members of the proposed class, plaintiff's evidence at "best" showed that class members were denied overtime on an "individualized" basis, not pursuant to a "common policy"). Thus, as the numbers prove, Sprint does not have a nationwide <u>de facto</u> policy of not paying overtime.

### 3.    Plaintiff's Theory That Sprint has a "<u>de facto</u>" Illegal Policy Does not Make Sense.

Plaintiff's nationwide <u>de facto</u> policy theory does not make sense. First, it is inconsistent with the new class definition that she has proposed in her FLSA motion. Second, the two policies on which her theory is based are legal, and Plaintiff has not presented any evidence that the pressure she theorizes these policies create either actually exists or has resulted in retail store employees being denied payment for all hours worked. Moreover, in her effort to make these two legal policies seem illegal, Plaintiff has mischaracterized the nature of both policies.[31]

#### a.    Plaintiff's FLSA class definition is inconsistent with her "<u>de facto</u>" policy theory.

Plaintiff's redefined class definition is inconsistent with her theory of a <u>de facto</u> policy that pressures store management to force retail store employees to work off the clock. In her

---

[31] Plaintiff casually contends that other litigation filed against Sprint indicates that it had a <u>de facto</u> policy of denying retail store employees overtime pay. (Pl. FLSA Br. at 22.) However, Plaintiff fails to explain how the facts and circumstances of those cases relate to her claims and her pressure theory. As such, they are irrelevant to the issues before the Court.

FLSA motion, Plaintiff redefines her putative class to include "all non-exempt hourly paid employees" in Sprint's retail stores. (Pl. FLSA Br. at 1.)[32] Read literally, this would encompass almost all of the positions in Sprint's retail stores except for the SM, including ASMs, SRSCs, RSCs, TSRs, and Hosts. Only the RSC position that she held, however, fits with her "pressure" theory, so Plaintiff cannot, as an initial matter, be similarly situated to these other hourly retail employees.

Plaintiff is not similarly situated to either TSRs or Hosts because neither of those positions would feel any of the "pressure" that Plaintiff theorizes exists or would be forced to work off-the-clock to increase their stores' sales. TSRs fix the phones and wireless products brought into the store for repair. They are not eligible to participate in Sprint's Incentive Compensation plans, so they do not have a sales quota – the third prong of Plaintiff's unified class argument.[33] (Pl. FLSA Br. at 5.) The same applies to Store Hosts, who act as greeters in some stores to facilitate customer traffic. Like TSRs, Store Hosts have traditionally not had a sales quota. In mid-2007, Store Hosts became commission-eligible based on store performance

---

[32] This definition is different from the class defined in her Amended Complaint and her deposition testimony. In her Amended Complaint, Plaintiff sought to represent "Sales Representatives," which she defined as employees who sold or marketed "Wireless Products." (Amend. Compl. (Docket No. 8) ¶ 2.) In her deposition, Plaintiff testified that she was seeking to represent ASMs and RSCs. (Hurst Dec. Ex. 3 (Eng-Hatcher Dep.) at 226.) Courts have refused to conditionally certify collective actions when a plaintiff has failed to articulate consistently and clearly whom she seeks to represent. Prizmic v. Armour, Inc., 2006 U.S. Dist. LEXIS 42627, at *9 (E.D.N.Y. June 12, 2006) (finding that when plaintiff changed her class definition from her complaint to her motion, "it is not possible for the Court to conclude that a collective action certification is warranted.") (citing Flores v. Oska Health Spa, Inc., 2006 U.S. Dist. LEXIS 11378, at *3 (S.D.N.Y. Mar. 16, 2006)).

[33] While TSRs are not currently eligible for incentive compensation, they were up through 2004. That compensation, however, was based on overall store performance rather than any individual sales goal. (See Hurst Dec. Ex. 1 (Bailey Dec.) at ¶ 20; Hurst Dec. Ex. 8 (2004 Master Incentive Compensation Guide) at 15.)

and sales.  (See Wells Dec. Ex. J at 89.)  Like TSRs, therefore, they do not have a "sales quota."

Plaintiff has thus offered no evidence of either (1) why TSRs and Hosts would feel the pressure

to work off-the-clock because they are not making sales and thus cannot increase their store's

sales volume, or (2) why SMs and DMs would have any incentive to pressure TSRs and Hosts to

work off-the-clock.

      Under Plaintiff's "pressure" theory, she also cannot be similarly situated to ASMs.

Sprint's incentive compensation plans for ASMs are similar to the plans for SMs, in that an

ASM's commission is based in part on store performance.  (Hurst Dec. Ex. 49 (2006 Sales

Incentive Plan) at 59-60, 67-68, 75-76, 83-84; Hurst Dec. Ex. 7 (2005 Sales Incentive Plan) at

22-23.)  As store performance is the reason that Plaintiff alleges SMs feel "pressure" to force

hourly retail employees to work off-the-clock without overtime pay, under her theory, ASMs,

along with SMs, would be the ones forcing others to work without pay.  In fact, Plaintiff testified

that the ASM in the 1185 Store, Sonia Lugo, was the person denying her overtime pay.  (Hurst

Dec. Ex. 3 (Eng-Hatcher Dep.) at 136-37, 162, 170-71, 214, 228.)  Thus, Plaintiff cannot

rationally or legally represent the ASMs she claims were violating the FLSA.[34]

      **b.**     **Sprint's incentive-compensation plan is a legal policy that is common to many retail-sales environments.**

      As noted above, Plaintiff's theory rests, in part, on the unremarkable fact that SMs and

DMs can earn commissions based on their stores' performance.  Incentive compensation plans

are a widely used, effective, and legal way to reward and incentivize employees who are

---

[34] Plaintiff also testified that the SRSCs in her stores did not credit her for all time that she worked.  (Hurst Dec. Ex. 3 (Eng-Hatcher Dep.) at 77-79, 85-86, 111-12, 214.)  Again, it is hard to fathom how she could be similarly situated to persons she alleges were violating the FLSA by denying her overtime pay.

productive and successful in their sales roles.  (Hurst Dec. Ex. 1 (Bailey Dec.) at ¶ 18.)  Plaintiff

has offered no evidence otherwise.

Moreover, as noted in the Mischaracterizations section (see supra Section III(G)), Sprint

has designed its monthly incentive compensation goals to fit the retail environment of each

particular store, including each store's past sales and expected future performance.  As such,

Sprint does not set sales goals at the national level, but instead sets goals at the local and regional

level.  (See Hurst Dec. Ex. 10 (Wyatt Dec.) at ¶ 13; Hurst Dec. Ex. 5 (Galluccio Dep.) at 54.)

Sprint has three different "tiers" for its retail stores, and each tier is given a commission formula

adjusted according to the volume of customers it experiences.  (See Hurst Dec. Ex. 40 (Dowling

Dep.) at 58-59; Hurst Dec. Ex. 49 (2006 Sales Incentive Plan).)  Although this formula is set

annually, individual and store sales goals vary monthly at the retail store level and are given to

SMs based on the goals for the DM, and each DM assigns goals for his stores differently.  (Hurst

Dec. Ex. 5 (Galluccio Dep.) at 55; Hurst Dec. Ex. 1 (Bailey Dec.) at ¶ 26; Hurst Dec. Ex. 10

(Wyatt Dec.) at ¶ 13.)  Furthermore, incentive compensation is not always based solely on sales

volume—SMs, ASMs and Retail Store Consultants have, at times, also earned part of their

monthly commission payment based on customer satisfaction scores.  (Hurst Dec. Ex. 1 (Bailey

Dec.) at ¶ 19; Hurst Dec. Ex. 7 (2005 Sales Incentive Plan); Hurst Dec. Ex. 49 (2006 Sales

Incentive Plan).)

### c.  Sprint does not have a nationwide policy of prohibiting overtime, and controlling overtime expenses is both legal and good business.

The second part of Plaintiff's theory is that Sprint had a nationwide policy to eliminate or

disallow overtime.  There is no evidence of any such policy, as Sprint has never had one.  As

noted above, Plaintiff distorts the testimony of Sprint's 30(b)(6) witnesses on this topic, who all

repeatedly testified that there is no national policy to prohibit overtime costs. (Hurst Dec. Ex. 4 (Dixon Dep.) at 46-47; Hurst Dec. Ex. 36 (Bailey Dep.) at 28, 34-35, 51; Hurst Dec. Ex. 5 (Galluccio Dep.) at 93-94.) The only true "policy" Sprint has with regard to expenses is a policy that is common to all businesses—Sprint seeks to monitor and manage its expenses, and overtime is one such expense.[35] Managing overtime to control costs "is part of [Sprint's] efficiency" (Hurst Dec. Ex. 36 (Bailey Dep.) at 33-34), and "at times" Sprint focuses more on trying to reduce overtime costs if it is necessary, but Sprint "realize[s] there is always going to be need[] for overtime in our business." (Hurst Dec. Ex. 36 (Bailey Dep.) at 35; Hurst Dec. Ex. 5 (Galluccio Dep.) at 93-94 ("It's very clear that we can't limit overtime, so you have to put in place controls that allow for overtime, but control overtime.").) Thus, the evidence here is that overtime costs were like any other expense for retail stores and unless expenses got out of control—like paying for the proverbial $100 hammer—overtime is merely a cost of doing business.

　　　　Plaintiff's "pressure" theory is also irrational given Sprint's budgeting methods. While Sprint does make efforts to manage costs related to labor expenses, it does not budget at the store level for labor hours; rather, it budgets based on "head count." (Hurst Dec. Ex. 5 (Galluccio Dep.) at 72-73.) This means that Sprint budgets based on the number of employees assigned to a given store, not the number of hours worked by employees. Sprint does not even have a set

---

[35] Plaintiff harps on the fact that Sprint's policy requires employees to get overtime pre-approved (Pl. FLSA Br. at 6, 7.) This is true but the same policy expressly states that all overtime must be paid even if unapproved. (Hurst Dec. Ex. 13 (2004 Pay Practices Guidelines) at 5); see also supra at 10 n.8.) Moreover, having a policy that requires preapproval of overtime is lawful. See Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 307, 312 (D. Colo. 1998) (finding employer's overtime policy that mandated no employee was to work overtime without prior approval was lawful); Ray v. Motel 6 Operating Ltd. P'ship, 1996 U.S. Dist. LEXIS 22565, at *5-6 (D. Minn. Mar. 18, 1996) (finding that a national policy requiring prior approval of overtime did not signify any illegal overtime plan carried out through central management).

method or procedure for DMs to review overtime hours in their stores. (Hurst Dec. Ex. 5
(Galluccio Dep.) at 93.)

Labor expenses, in fact, are not communicated to SMs at all, so they are not made aware
of the overtime expenses attributable to their stores. Instead, SMs are only given the headcount
budget for their particular store. (Hurst Dec. Ex. 36 (Bailey Dep.) at 40, 57.) Likewise, the
high-level officers and directors who are informed of Sprint's labor expenses do not have any
exposure to the time records of individual retail employees. (Hurst Dec. Ex. 36 (Bailey Dep.) at
52-53, 58.) Only SMs and ASMs are responsible for reviewing employee time records for
accuracy. (Id.) These facts further discredit Plaintiff's theory that SMs experienced pressure to
increase sales and eliminate overtime, thereby forcing their employees to work off-the-clock.
Thus, the Court should reject Plaintiff's pressure theory as insufficient to satisfy the similarly
situated standard.

### d.     Plaintiff's pressure theory has been rejected by other courts.

Not surprisingly, other courts have rejected Plaintiff's "pressure" theory as creating an
illegal de facto policy to satisfy the FLSA's similarly situated requirement. For example, in
Simmons v. T-Mobile USA, Inc., 2007 WL 210008 (S.D. Tex. Jan. 24, 2007), the district court
confronted almost identical allegations by a senior retail store consultant who worked in a T-
Mobile retail store in Texas. In Simmons, a lone plaintiff—like Eng-Hatcher—sought
conditional certification of a state-wide class of senior retail store consultants in T-Mobile's 113
Texas stores. According to the plaintiff, he consistently worked off the clock and was not paid
overtime because his managers would not approve the overtime. Id. at *2. As in this case, the
plaintiff in Simmons theorized that T-Mobile's "fundamentally inconsistent policies-
maximizing sales and minimizing overtime-conflict to [senior retail store consultants'] detriment

and cause [them] to believe that if they cannot meet their quotas without working overtime, they are required to work uncompensated." Id. at *5. Based on this theory, the plaintiff claimed he was similarly situated to the other Texas senior retail store consultants.

The district court rejected plaintiff's pressure theory as proof that he was similarly situated to the other Texas retail store consultants. Even under the "lenient standard," the district court held that plaintiff had failed to present evidence that plaintiff was similarly situated to other senior retail store consultants and that others were interested in joining his lawsuit. [36] The district court found that because the sales quotas varied by store and store managers had discretion over how overtime was handled, the plaintiff had failed to show how these policies combined to create uniform pressure to work off the clock across T-Mobile's 113 Texas stores.

Specifically, the district court held that the plaintiff:

> ha[d] not persuaded the Court that the potential conflict between the sales quotas and policy discouraging overtime affects [senior retail store consultants] in different stores equally, or even a meaningful number of [senior retail store consultants]. It is therefore not apparent that there are similarly situated [senior retail store consultants] that would justify notice to a potential class. **At its most general level this is a case involving claims of "off the clock" unpaid overtime, where allegedly dozens (if not hundreds) of different low-level supervisors with wide management discretion in practice violate Defendant's clear, lawful written policies at some or many of Defendant's more than one hundred different retail locations.**

Id. at *6 (emphasis added); see also id. at *9 (holding that plaintiff's "reliance on merely his own allegations that the putative class members exist and together were victims of a single decision, policy, or plan is insufficient to meet his burden of this third criterion for conditional certification and notice [i.e., others were interested in joining plaintiff's suit].")

_____

[36] Unlike here, the Simmons plaintiff presented over 20 affidavits in support of his motion that retail employees felt pressure to work off the clock. Simmons, 2007 WL 21008, at *7. Even this was held insufficient. Id.

Other courts have likewise rejected arguments similar to Plaintiff's.  See Basco v. Wal-

Mart Stores, Inc., 2004 U.S. Dist. LEXIS 12441, at *22 (E.D. La. July 1, 2004) (holding that a

policy "to keep employee wage costs low" did not justify certification of an off-the-clock class

when "[t]he effects of the policy as alleged are anecdotal, that is to say particularized"); see also

Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 363 (M.D. Ala. 1999) (refusing to issue notice to

company-wide class where plaintiffs failed to present any evidence that "uniform corporate

practice discouraging overtime" existed or that "widespread wrongdoing" occurred); Alix v.

Wal-Mart Stores, Inc., 838 N.Y.S. 2d 885 (Super. Ct. 2007).[37]

---

[37] The second stage cases Plaintiff relies upon for her "pressure" theory are easily
distinguishable from the facts here and do not supply Plaintiff with the missing piece, i.e. an
illegal common policy, that she needs for a finding that she is similarly situated. (Pl. FLSA Br.
at 20.)  In Falcon v. Starbucks Corp., 2008 WL 155313 (S.D. Tex. Jan. 15, 2008), the plaintiff
ASMs alleged they were required to work off the clock in order to control overtime costs. Id. at
*3.  Unlike this case, there were 355 opt-ins who worked at defendant's stores in 30 states. Id. at
*1.  The court found the plaintiffs similarly situated, largely because it believed defendant's
policy of requiring ASMs to perform job duties that could not be easily completed within 40
hours while, at the same time, strongly discouraging overtime, failing to increase its labor
budget, and basing bonuses in part on labor hours motivated managers to commit the alleged
FLSA violations. Id. at *6.

In Wilks v. Pep Boys, 2006 WL 2821700 (M.D. Tenn. Sept. 26, 2006), Plaintiffs submitted
multiple declarations stating they were required to work off the clock.  The court found the
plaintiffs' evidence established a "recurring theme" that managers where given labor hours
budgets and requested that employees work off the clock in order to meet them, and that
managers required their employees to meet "stringent productivity requirements" and suggested
they work off the clock in order to do so. Id. at *5.  The evidence indicated—unlike this case—
that managers "struggled to run the store with [an] insufficient number of labor hours." Id. The
court also found it important that the defendant allotted labor hours for each store at the national
level. Id. at *6.

Here, none of the determining factors in Falcon and Wilks are present.  There is no evidence
that Sprint's sales incentives were not achievable by RSCs without committing off-the-clock
violations or that they were particularly "stringent."  Plaintiff's lone citation on that point
drastically misrepresents Plaintiff's deposition testimony, which merely stated that she worked
off-the-clock to meet her own sales targets. (Pl. FLSA Br. at 10 (citing Eng-Hatcher Dep. at
189-90).)  Sprint does not budget based on labor hours, nor does it financially encourage its store
managers to reduce labor hours.  Furthermore, in Falcon, the ASMs themselves experienced the
pressure to work off the clock and keep labor hours low.  In this case, plaintiff is a step or more

**4.    Plaintiff's Claims Are Unsuitable For Collective Action Treatment.**

    **a.    Plaintiff has not demonstrated that others have a sufficient interest in this action.**

To date, although she seeks to represent a nationwide class of thousands of Sprint employees, Plaintiff is the <u>only</u> plaintiff in this case, and she has produced no evidence that any employee wishes to opt-in or even experienced the same violations of the law.  Courts have increasingly held that the plaintiff bears the burden of establishing not only that other similarly situated employees exist, but that there also exist other employees who actually desire to opt in to the litigation.  See <u>Davis v. Charoen Pokphand (USA), Inc.</u>, 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004) (citing <u>Dybach v. Fla. Dep't of Corrs.</u>, 942 F.2d 1562, 1567-68 (11th Cir. 1991); <u>Robinson v. Dolgencorp, Inc.</u>, 2006 U.S. Dist. LEXIS 85471, at *19-21 (M.D. Fla. Nov. 13, 2006) (finding that three affidavits filed in support of conditional certification of a class of thousands was "insufficient to demonstrate to the Court's satisfaction that there are other similarly situated employees who desire to opt-in to this action"); <u>Wombles v. Title Max of Ala., Inc.</u>, 2005 U.S. Dist. LEXIS 34733, at *9 (M.D. Ala. Dec. 7, 2005) (denying plaintiff's motion to facilitate class notice where "plaintiffs' unsubstantiated belief about other employees' willingness to join this action and their inability to identify more than two other employees willing to join shows that the plaintiffs have not met their burden").

Conditional certification is properly denied when there is a complete lack of evidence, beyond the plaintiff's own alleged experience, that other potential plaintiffs experienced the same violations of the law.  <u>Diaz</u>, 2005 U.S. Dist. LEXIS 30382, at *17; <u>Levinson v. Primedia</u>

---

removed—she theorizes that her SMs and DMs were motivated by this pressure, which indirectly impacted her, but she has no evidence confirming her theory.  Thus, the factors contributing to the "pressure" in <u>Falcon</u> and <u>Wilks</u> are not present here.

Inc., 2003 U.S. Dist. LEXIS 20010, at *1-2 (S.D.N.Y. Nov. 6, 2003) (holding employees

claiming they were misclassified as independent contractors did not show that putative plaintiffs

at other sites were similarly situated because "they failed to support [their] legal conclusion with

a factual showing that extends beyond their own circumstances"); Prizmic v. Armour, Inc., 2006

U.S. Dist. LEXIS 42627, at *8 (E.D.N.Y. June 12, 2006) (denying conditional certification

where plaintiff submitted no evidence to show he and other potential plaintiffs were victims of a

common policy or plan, made only "general allegations" in his complaint that he and others were

denied overtime, and provided no information on how plaintiff or other employees were paid,

their job duties or the hours they worked, and no other potential plaintiffs had been identified);

Morales v. Plantworks, Inc., 2006 U.S. Dist. LEXIS 4267, at *4 (S.D.N.Y. Feb. 1, 2006)

(denying conditional certification because the submission of eight payroll stubs for three

plaintiffs was insufficient to support a finding that "they and potential plaintiffs together were

victims of a common policy or plan that violated the law," where plaintiffs offered no evidence

on other potential class members); Flores v. Osaka Health Spa, Inc., 2006 U.S. Dist. LEXIS

11378, at *8-9 (S.D.N.Y. Mar. 16, 2006).[38]

As courts have recognized, "[t]he risk of allowing conditional certification on such

minimal evidence is that it can facilitate class action abuse. . . . [C]lass actions serve important

goals but also present opportunities for abuse. Requiring a Plaintiff to make a modest factual

---

[38] Plaintiff claims that simply naming co-workers that she asserts were not paid overtime is enough to conclude there are other similarly situated individuals who may want to opt-in. (Pl. FLSA Br. at 4, n.4.) Plaintiff's bare statement that others may want to join, however, is insufficient. (See, e.g., Davis v. Charon Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004) (noting that plaintiffs can show others desire to join litigation through affidavits from other employees, consents to join the lawsuit and expert evidence but not through their own statements).)

showing that others have suffered the same injury works to prevent class action fishing expeditions." Armstrong v. Weichert Realtors, 2006 U.S. Dist. LEXIS 31351, at *4 (D.N.J. May 19, 2006). "To make a meaningful decision about whether certain people are similarly situated, this Court must have, as a factual foundation, information about who is in the potential class and the basis for inferring that the potential members are similarly situated." Id. at *3-4; see also Smith v. Sovereign Bancorp, Inc., 2003 U.S. Dist. LEXIS 21010, at *8 (E.D. Pa. Nov. 13, 2003) ("[T]the opt-in requirement was intended to reduce 'excessive litigation spawned by plaintiffs lacking a personal interest in the outcome.' If district courts do not take basic steps to ensure that opt-in notices are sent only to potential plaintiffs who 'have a personal interest' in the employer's challenged policy, the congressionally-mandated line between representative actions under FLSA and class actions under Rule 23 will be substantially blurred." (citation omitted)).[39]

Here, Plaintiff has failed to proffer any evidence that even a single current or former RSC of Sprint has any interest in joining this litigation. This lawsuit was filed almost 12 months ago. Plaintiff and Defendants have completed "similarly situated" discovery, including a 30-day extension of the discovery period sought by Plaintiff. Yet, despite having more than adequate time to do so, Plaintiff has not submitted any declaration in support of her motion (other than that of her attorney). No other individuals have opted-in to this action or even indicated that they intend to opt in. This is insufficient to justify nationwide class notice.

---

[39] Indeed, the Second Circuit has recently emphasized the need for district courts to review in detail the evidence in Rule 23 classes before granting class certification. In re Public Offerings Securities. Litigation, 471 F.3d 24 (2d Cir. 2006).

**b.**    **Adjudicating putative plaintiffs' off-the-clock claims would require plaintiff-by-plaintiff, store-by-store, fact-specific inquiries.**

Notice and collective certification are properly denied when adjudication of the putative plaintiffs' claims would require individualized inquiries. Diaz v. Elec. Boutique of Am., 2005 U.S. Dist. LEXIS 30382, at *16-17 (W.D.N.Y. Oct. 17, 2005). The pertinent issues in "off-the-clock" cases are highly individualized, and courts frequently deny certification of these FLSA collective actions. See id.; Williams v. Accredited Home Lenders, Inc., 2006 U.S. Dist. LEXIS 50653, at *15 (N.D. Ga. July 25, 2006); Seever v. Carrols Corp., 528 F. Supp. 2d 159, 173 (W.D.N.Y. 2007); England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005); Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 864-65 (S.D. Ohio 2005); Lawrence v. Philadelphia, 2004 U.S. Dist. LEXIS 8445, at *2 (E.D. Pa. April 29, 2004); Marsh v. Butler County Sch. Sys., 242 F. Supp. 2d 1086, 1094 (M.D. Ala. 2003); Basco, U.S. Dist. LEXIS 12441, at *2-3; Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Ore. 2002); Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 437 (E.D. Va. 2002); Dudley v. Tex. Waste Sys., 2005 U.S. Dist. LEXIS 9168, at *2-3 (W.D. Tex. May 16, 2005).

In order to establish an off-the-clock claim, "plaintiffs must demonstrate that they completed work for which [their employer] did not properly compensate them." Seever, 528 F. Supp. 2d at 169 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946)). Unlike a misclassification case, where plaintiffs are challenging their classification as exempt, which made them ineligible for overtime, or a case where the plaintiffs allege that they

performed the same job activity each day for which they were not compensated, off-the-clock cases are generally not prone to class-wide proof.[40]

For example, in <u>Diaz v. Elec. Boutique of Am.</u>, the court held that the plaintiff's allegations that he worked off-the-clock and that his timesheets were improperly altered "are too individualized to warrant collective action treatment." 2005 U.S. Dist. LEXIS 30382, at *16. The court explained that the off-the-clock claims would require an examination of "when [the plaintiff] was scheduled to work, when he actually worked, whether he was paid for such and whether [his supervisor] altered his timesheets," and then the same inquiry would need to be done for each class member. <u>Id.</u> at *17. For example, "altering [plaintiff's] timesheets may have been the [plaintiff's] store's method of dealing with overtime issues, but such may not have been the case at other stores." <u>Id.</u> Thus, the court found plaintiff was not similarly situated to the proposed class members and denied the motion for conditional certification.

In <u>Williams</u>, the district court explained that in off-the-clock cases "[l]iability cannot be determined by considering the employee's job duties. Rather, every employee must testify about his awareness of the overtime policy, and his violation of that policy - and whether it was compelled by his branch manager." <u>Williams</u>, 2006 U.S. Dist. LEXIS 50653, at *13-14. Similarly, in <u>Lawrence v. City of Philadelphia</u>, 2004 U.S. Dist. LEXIS 8445, at *7 (E.D. Pa. Apr.

---

[40] Most of the cases cited by Plaintiff are misclassification cases, or in which the defendant admitted that the policy alleged to be violative was common throughout its stores. See <u>Hallissey v. Am. Online, Inc.</u>, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) (misclassification case); <u>Lee v. ABC</u>, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (misclassification case); <u>Gjurorich v. Enimanuel's Marketplace, Inc.</u>, 282 F. Supp. 2d 91 (S.D.N.Y. 2003) (misclassification case); <u>Damassia v. Duane Reade, Inc.</u>, 2006 WL 2853971 (Oct. 5, 2006) (misclassification case and defendant admitted to common allegedly violative policy); <u>Roebuck v. Hudson Valley Farms, Inc.</u>, 239 F. Supp. 2d 234 (N.D.N.Y. 2002) (misclassification case); <u>Adams v. Inter-Con Sec. Sys., Inc.</u>, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (allegedly unlawful policies were printed in company handbook); <u>Young v. Cooper Cameron Corp.</u>, 229 F.R.D. 50 (S.D.N.Y. 2005) (misclassification case); <u>Patton v. Thomson Corp.</u>, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (misclassification case).

28, 2004), the court held that the plaintiffs were not similarly situated to the potential class

members:

> [E]ach of the current Plaintiffs and potential opt-in plaintiffs is classified
> as a "Fire Service Paramedic" and has the same general job description.
> However, Plaintiffs work in different unit types, different platoons,
> different locations, and have different supervisors. . . . **[T]he "off-the-
> clock" claim does not involve regularly scheduled time that is worked
> by all members of the class. Rather, each of the Plaintiffs may
> potentially claim that on any given day he or she arrived early or
> departed outside of their regularly scheduled hours and were not
> compensated for such.** The circumstances of those individual claims
> potentially vary too widely to conclude that in regard to their "off-the-
> clock claim, the Plaintiffs are similarly situated.

Id. at *7 (emphasis added); see also Dudley v. Tex. Waste Sys., 2005 U.S. Dist. LEXIS 9168, at

*2-3 (W.D. Tex. May 16, 2005) (noting that analysis of off-the-clock claims would require

"individualized testimony" regarding whether drivers worked through lunch but were not paid

for that time).

Sprint does not have any uniform policy or practice of requiring or permitting "off-the-

clock" work; therefore at trial, each individual Plaintiff will bear the burden of proving he or she

worked off-the-clock in violation of Sprint policies. See Anderson, 328 U.S. at 687.

Individualized issues must be analyzed such as whether the particular employee worked off-the-

clock, whether the employee's manager was aware of the off-the-clock work, and whether the

employee was paid for all hours worked including overtime.

Sprint also would be entitled to challenge whether any off-the-clock work actually

occurred, to demonstrate that particular managers were unaware that employees were working

off-the-clock, and to show particular managers acted in good faith. Whether an individual

plaintiff's time corrections were accurate also depends upon individualized circumstances,

including the credibility of the claimant and the specifications of her claims. See Lusardi v.

Xerox Corp., 118 F.R.D. 351, 375 (D.N.J. 1987) (holding that potential putative class members were not similarly situated because "each individual class member must come forward in order to prove causation . . . and where in each instance [the defendant] has the possibility of raising any one of [its] several defenses"); Ray v. Motel 6 Operating Ltd. P'ship, 1996 WL 938231, at *4 (D. Minn. Mar. 18, 1996) (noting because the level of overtime for each employee varied for each plaintiff, there existed a "lack of commonality for damages").

Ironically, even assuming arguendo that Plaintiff's allegations regarding an illegal de facto policy are true (which they are not), Plaintiff's allegations in fact show that she is not similarly situated to a nationwide, state-wide, district-wide or even store-wide class of hourly retail store employees. As she alleges, the type of, and reason for, her off-the-clock overtime work varied between the two stores in which she worked and by time period. In addition, Plaintiff's own testimony shows that all of the unpaid work she claims to have performed either happened at just one of the stores in which she worked, was limited to a particular period of time, or does not fit with her "pressure" theory.

Specifically, Plaintiff claims that she was sometimes not paid for the following work:

- Waiting while cash was counted in the 160 stores at the end of the day (Hurst Dec. Ex. 3 (Eng-Hatcher Dep.) at 84-86);

- Making sales to customers during a lunch break (id. at 106-08, 110-11, 220-21, 235-36);

- Working off-the-clock to make sales before or after shift in the 1185 store (id. at 190, 207-08);

- Doing outbound sales activities on days off for her first three months in the 1185 store (id. at 127);

44

- Coming in on days off to make sales for customers in the 1185 store (id. at 198-99); and

- Handing out flyers on her lunch break at the 1185 store (id. at 105, 122).

Plaintiff's own testimony, however, shows that other than the cash-counting and flyer-distribution allegations, the acts she complains of all allegedly occurred just at the 1185 store (but not the 160 store). Moreover, these allegations all involve off-the-clock work to make sales. But as Plaintiff admits, Sprint converted to the RTA system in 2006, and after that conversion an RSC could not make a sale unless they were "on-the-clock" (i.e., the system forced the RSC to clock in before sales could be made). (Pl. FLSA Br. at 9.) Thus, Plaintiff herself has confined most of her claims to before the fall of 2006: Since then an RSC could not make a sale during a lunch break without being on-the-clock, could not work before or after her shift to make sales without being on-the-clock, and could not come in on a day off to activate a customer without being on the clock.

Her allegations regarding allegedly unpaid time for performing outbound sales activities and flyer distribution are even more limited in time and location. Plaintiff testified that she only performed outbound sales activities for three months in the 1185 store when it first opened in order to drum up business. (Hurst Dec. Ex. 3 (Eng-Hatcher Dep.) at 126-127.) Thus, this claim is limited to a specific store, during a specific period of time, and for a store-specific reason. This is hardly support for a nationwide claim. The same is true for the flyer-distribution claim, as Plaintiff testified that it only occurred at the 1185 store and that in late 2005 the store hired someone whose job was to hand out the flyers, relieving RSCs of this duty. (Hurst Dec. Ex. 3 (Eng-Hatcher Dep.) at 182.) Like her other allegations, this claim is confined to a particular store and time period.

45

Finally, Plaintiff alleges that she was locked in the 160 store while cash was counted without pay. (Hurst Dec. Ex. 3 (Eng-Hatcher Dep.) at 85-88.) Yet, according to Plaintiff, this never happened to her at the 1185 store. (Id. at 191.) Moreover, this allegation does not fit with Plaintiff's "pressure" theory, as it does not involve off-the-clock work to increase sales.

Whether taken as a whole or individually, none of her claims, even if accepted as true, evidence a nationwide, state-wide, district-wide or store-wide problem. While Sprint vigorously denies that Plaintiff was not paid for all hours worked, her allegations at most represent isolated and varied violations of Sprint's policies by two SMs in 2004 and 2005. Plaintiff has offered nothing to expand her claims beyond these confines and hence her claims are unsuitable for collective action treatment. Seever, 528 F. Supp. 2d at 174 (denying conditional certification because allegations primarily related to the unique circumstances at one store.).

5.    **Plaintiff's Proposed Notice is Inadequate.**

For the reasons set forth above, issuance of notice in this action would be inconsistent with the requirements of the FLSA. Nevertheless, should the Court determine that notice should issue, the form of notice Plaintiff proposes is improper in several respects: (i) failing to fully and accurately describe Defendants' respective position as to the defenses asserted in this action; (ii) improperly defining the class and the class period; (iii) setting an overly lengthy time frame of 120 days to opt-in; (iv) including the case caption and the Court's name at the top of the notice, creating the impression of judicial sponsorship of the litigation, see Woods v. New York Life Ins. Co., 686 F.2d 578, 580-81 (7th Cir. 1982); King v. ITT Cont'l Baking Co., 1986 WL 2628, at *2 (N.D. Ill. Feb. 18, 1986); (v) failing to inform potential class members that if they do not prevail, court costs and expenses could be assessed against them, see Garcia v. Elite Labor Serv., Ltd., 1996 WL 33500122, at *4 (N.D. Ill. July 11, 1996); (vi) failing to require each opt-in to

46

properly answer, without objection, Defendants' first set of interrogatories and document requests, and (vii) improperly stating the statute of limitations for an FLSA claim on page 3 as "2 to 3 years" rather than 2 or 3 years.

Thus, in the event the Court grants Plaintiff's FLSA motion in whole or in part, the Court should order the parties to meet and confer in good faith to draft a mutually agreed-upon notice that can be jointly submitted to the Court for approval. See Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 949 (M.D. Fla. 1994). In the event the parties cannot agree, Defendants respectfully request the opportunity to submit their own proposed notice.

## B.    Plaintiff's Motion for Certification of a Rule 23 Class Should Be Denied.

In addition to a nationwide FLSA collective action, Plaintiff also seeks Rule 23 certification of a class of former and current Sprint employees who she alleges worked off-the-clock and thereby were denied wages and overtime under New York law.[41] As explained supra

---

[41] Under the New York Labor Law, for willful violations, an employee may recover "an additional amount as liquidated damages equal to twenty-five percent of the total of such underpayments found to be due him." N.Y. Lab. Law § 663. "New York Civil Practice Law and Rules § 901(b) provides that a plaintiff may not seek class-wide relief that includes statutorily prescribed liquidated or punitive damages unless the statute in question explicitly authorizes its enforcement by class actions." Foster v. Food Emporium, 2000 WL 1737858, at *3 (S.D.N.Y. Apr. 26, 2000) (holding that there was no basis for authorizing notice to potential class members going back six years under the New York Labor Law); N.Y. C.P.L.R. § 901(b). While some courts have found that § 901 is not a complete bar to class certification and that certification may be obtained where the plaintiffs have offered to waive any right to recover liquidated damages, the New York Court of Appeals has not ruled on the matter. Lewis v. Nat'l Fin.Sys., Inc., 2007 WL 2455130 (E.D.N.Y. Aug. 23, 2007).

Here, the Plaintiff has waived any right to seek liquidated damages. (Amend. Compl. (Docket No. 8) ¶ 17 ("No penalties, liquidated damages or punitive damages of any kind under New York law are sought in this action and are expressly waived.").) As such, the Plaintiff is not an adequate class representative. See, e.g., Drimmer v. WD-40 Co., 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class.") (citation and internal quotation marks omitted). Moreover, Plaintiff's choice to waive all liquidated damages

Section IV(A)(2), Plaintiff identifies no Sprint policy for denying wages and overtime (indeed, Sprint's policies explicitly prohibit off-the-clock work). Rather, Plaintiff contends that by offering sales-based incentive compensation to its Retail Store Consultants and managers, and focusing attention on controlling excessive overtime from time to time, that Sprint had a de facto policy under which managers theoretically felt pressured to violate Sprint policy and allow and encourage Retail Store Consultants to work off-the-clock. (Pl. Rule 23 Br. at 2.) As explained in response to Plaintiff's motion for conditional certification of an FLSA collective action, Plaintiff's theory is sheer speculation. The evidence Plaintiff has put forth (primarily her own deposition testimony) is wholly insufficient to meet the rigorous class certification standard under Rule 23.

1. **The Applicable Standard for Rule 23 Certification.**

Although not specifically referenced in Rule 23, courts generally require that the class be definite and ascertainable before undertaking the Rule 23 analysis. Kiobel v. Royal Dutch Petroleum Co., 2004 U.S. Dist. LEXIS 28812, at *15-17 (S.D.N.Y. Mar. 31, 2004). In order to certify a class action under Rule 23, the plaintiff must demonstrate that the class and its representative meet each of the requirements of Rule 23(a) and one of the subsections of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

meliorates against the possibility that there are a sufficient number of like-minded class members such that the numerosity requirement is met.

Here, Plaintiff relies on Rule 23(b)(3),[42] therefore she must also establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Class certification may be granted only if the court is satisfied after a "rigorous analysis" that each of the Rule 23 requirements have been established. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982). "The burden of proving each of the requisite elements of Rule 23 is on the party seeking certification, and failure to prove any element precludes certification." Ansari v. N.Y. Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

The Second Circuit recently clarified the standard that governs the adjudication of Rule 23 class certification in In re Public Offering Securities Litigation., 471 F.3d 24 (2d Cir. 2006) ("IPO"). There, the Court rejected use of a lesser standard, such as "some showing." Id. at 27. The Court compared the Rule 23 requirements to threshold issues such as personal or subject matter jurisdiction which require a substantive ruling by the district court. Id. at 40.

In determining whether the Rule 23 requirements are met, the bare allegations in the complaint will not suffice. As the Second Circuit directed, "all of the evidence must be assessed as with any other threshold issue." Id. at 27. "[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Id. at 41, 42 (instructing district court to "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit").

---

[42] (Pl. Rule 23 Br. at 19.)

49

While the district court should not decide the merits of the claims at the class certification stage, resolution of certain factual disputes is not prohibited, and indeed is required. Specifically, the district court's determination "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met." Id. at 42. The district court's "obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." Id. at 41.

### 2.    The Rule 23 Class Proposed By Plaintiff Is Overly Broad and Not Ascertainable.

"To establish that a class is ascertainable, Plaintiffs must show that its members are readily identifiable so that the court can determine who is in the class and, therefore, bound by the ruling." Wilson v. Toussie, 2008 U.S. Dist. LEXIS 25469, *10-11 (E.D.N.Y. Mar. 31, 2008); Manual for Complex Litigation (Fourth) § 21.222 (2004) (noting that the class definition is of critical importance because it identifies persons entitled to relief, bound by the judgment and entitled to notice in a Rule 23(b)(3) action). Thus, "courts commonly examine whether a class is adequately defined before turning to the other requirements for certification." 5 James Wm. Moore, et al., Moore's Federal Practice, § 23.21[3][d] (3d ed. 2008); Bano v. Union Carbide Corp., 2005 U.S. Dist. LEXIS 32595, at *14-15 (S.D.N.Y. Aug. 12, 2005) (finding that although not expressly required by Rule 23, ascertainability is an element of class certification).

Where class membership cannot be ascertained until it is determined whether the individual at issue suffered an injury, the class is not sufficiently ascertainable. Kiobel, 2004

U.S. Dist. LEXIS 28812, at *15-17; <u>Wilson</u>, 2008 U.S. Dist. LEXIS 25469, at *11 ("A class's

definition will be rejected when it requires addressing the central issue of liability in a case and

therefore the inquiry into whether a person is a class member essentially require[s] a mini

hearing on the merits of each [plaintiff's] case.") (quoting <u>Noble v. 93 Univ. Place Corp.</u>, 224

F.R.D. 330, 341-42 (S.D.N.Y. 2004); <u>see also generally</u> <u>IPO</u>, 471 F.3d at 44-45 (discussing the

importance of ascertainment and noting that the need for individualized determinations of class

membership also supports the conclusion that individual questions will permeate the litigation).

    A class definition is overly broad where the class encompasses persons who have not

been harmed.  <u>See</u> <u>Owen v. Regence BlueCross BlueShield of Utah</u>, 388 F. Supp. 2d 1318, 1334

(D. Utah 2005) (agreeing with defendant's evidence that "the proposed definition of the class is

overbroad because many of the proposed class members have suffered no damages"); <u>Zapka v.</u>

<u>Coca-Cola Co.</u>, 2000 WL 1644539, at *3 (N.D. Ill. Oct. 27, 2000) (holding class definition

improper where it included individuals who were not harmed); <u>Canady v. Allstate Ins. Co.</u>, 1997

WL 33384270, at *3 (W.D. Mo. June 19, 1997) ("Because the court cannot accept plaintiffs'

blanket contention that every member of the proposed broad class has allegedly suffered harm as

a result of the defendants' wrongdoing, the court must find that the class definition is

overbroad."); <u>Swain v. Brinegar</u>, 517 F.2d 766, 779-80 (7th Cir. 1975) (holding that class

definition was over-inclusive because it included owners, tenants, and users of farm land in

Illinois who were not subject to having their land condemned for proposed highway project).

    Here, the Plaintiff defines the following proposed Rule 23 class in her certification

papers:

      All persons within the State of New York who: (i) are, or were employed by
      Defendant to work in its retail stores as non-exempt hourly employees; (ii) are, or
      were not, paid for all the hours they worked in any given work week; and (iii) are,

or were not paid premium overtime compensation at a rate not less than one and
one-half times their regular rate for all hours worked beyond the forty (40) hour
work week, within the six years prior to August 17, 2007.

(Pl. Proposed Rule 23 Order.)[43]  Plaintiff's class definition is untenable because membership in

the class is not ascertainable and the class definition is overly broad.[44]

On its face, Plaintiff's class is defined as those individuals who were **not** paid for all

hours worked, and **not** paid overtime due.  In order to ascertain who is a class member, the Court

would be forced to conduct a mini-trial with respect to each hourly employee to determine if that

employee was subjected to some theoretical pressure to work off-the-clock to make additional

sales, was allowed to work off-the-clock in violation of Sprint policy, and did in fact allegedly

work off-the-clock.  Such a class definition is not sufficiently ascertainable and should be

rejected.  See Wilson, 2008 U.S. Dist. LEXIS 25469, at *11.

Plaintiff's class definition is also overly broad.  As explained supra Section III(B)(1), all

"non-exempt hourly employees" in Sprint's retail stores would include individuals who were

employed in positions that do not engage in active selling (such as Technical Service

Representatives and Hosts).  Individuals in these positions could not have been impacted by

---

[43] Plaintiff's articulation of the proposed class would include members who **are** paid for all hours
worked.  Presumably, the comma in subsection (ii) was inadvertently placed in the wrong spot.

[44] Plaintiff defined the proposed Rule 23 class differently in her Complaint:

> All persons within the State of New York who: (i) are/were employed **as Sales
> Representatives** with the Company; (ii) are/were not paid for all the hours
> worked in a given workweek; and (iii) are/were not paid premium overtime
> compensation at a rate not less than one and one-half times their regular rate for
> all hours worked beyond the forty (40) hour work week (the "Class Action
> Members").

(Amend. Compl. (Docket No. 8) ¶ 54 (emphasis added).)  As defined in Plaintiff's Complaint at
Paragraph 2, the term "Sales Representatives" means certain sales employees, including those
that do not work in a retail store.

Plaintiff's theoretical pressure to work off-the-clock.  In addition, this definition would include Assistant Store Managers whose commission-based compensation is similar to Store Managers and based in part on overall store performance.  (Hurst Dec. Ex. 10 (Wyatt Dec.) at ¶ 13.) Plaintiff's pressure theory would therefore apply equally to ASMs and SMs, as overall store performance is the incentive goal for both.  Thus, ASMs, as her own testimony reflects, would fall in with Plaintiff's "Management Personnel" and not her class.

In addition to not being ascertainable, and defined in an overly broad manner, Plaintiff's proposed class fails to meet the express requirements of Rule 23.

### 3.    Plaintiff Has Failed To Establish That The Proposed Class Is So Numerous That Joinder Of All Members Is Impracticable.

Plaintiff contends that an internet search reveals over 40 Sprint stores in New York, that "each store employed a number of Retail Sales Consultants during the class period," and therefore the numerosity requirement is met.  (Pl. Rule 23 Br. at 13.)  Plaintiff has failed to establish that the number of class members is so numerous that joinder of all members is impracticable.

Plaintiff's bald assertion regarding the number of Sprint stores in New York wholly misses the real issue – whether the number of putative class members is so numerous that joinder is impracticable.  As discussed above, Plaintiff's proposed class is made up of hourly-paid retail store employees who were not paid for all hours worked or overtime due.  (Pl. Proposed Rule 23 Order.)[45]  Plaintiff has failed to establish that any other Retail Store Consultant was not paid for

---

[45] In addition, Plaintiff states summarily on page 10-11 of her Rule 23 brief that she and others are also entitled to damages because Sprint's "Chargeback policy," i.e. "charging Retail Consultants for closed accounts" is an impermissible deduction from wages under New York law.  Plaintiff wholly fails to put forth any evidence or argument that such a claim is appropriate

all hours worked or overtime due, let alone a sufficient number of individuals such that joinder is impracticable. See Lewis v. Nat'l Fin. Servs., Inc., 2007 U.S. Dist. LEXIS 62320, at *23-24 (E.D.N.Y. Aug. 23, 2007) (denying Rule 23 certification because plaintiff put forth no evidence of the number of proposed class members employed by the defendant at a particular time; noting that "plaintiffs' discovery difficulties do not relieve them of their obligation of satisfying Rule 23's requirements"); Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987) (denying class certification where plaintiff could only speculate concerning whether others in proposed class sustained same injury).

Plaintiff's statement regarding an internet search for the number of Sprint stores is also not supported by sworn testimony or other evidence. In addition to being an unsworn statement, Plaintiff's internet search shows nothing regarding the numbers of class members. As Ms. Dixon explained during her Rule 30(b)(6) deposition, the brand name Sprint is utilized by several hundred branded exclusive dealers nationwide in addition to company-owned stores. (Hurst Dec. Ex. 4 (Dixon Dep.) at 17.) Branded exclusive dealer stores may look exactly like a company-owned store, but the employees of those stores are not compensated through Sprint's payroll system. (Id. at 18.) Moreover, Sprint merged with Nextel in August 2005 and Plaintiff's proposed class period extends back to 2001. Plaintiff's statement regarding the number of "Sprint" stores currently, as found in an internet search, for New York does not establish the number of Sprint stores in New York back to 2001, the number of Retail Store Consultants employed by Sprint in those stores, and whether any were allegedly pressured to violate Sprint policy and work off-the-clock.

---

for Rule 23 certification, therefore Plaintiff has de facto abandoned this claim. Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases).

Aside from the unsworn speculative statement in Plaintiff's brief, Plaintiff has failed to offer <u>any</u> evidence to meet the numerosity requirement. Thus, Plaintiff has wholly failed to establish the numerosity requirement. <u>See</u> <u>IPO</u>, 471 F.3d at 27, 40 (rejecting the "some showing" standard; directing that the district court must be satisfied through sufficient affidavits, documents or testimony, that the requirement is met); <u>Lewis</u>, 2007 U.S. Dist. LEXIS 62320, at *22 ("Where the plaintiff's assertion of numerosity is based on pure speculation or bare allegations, the motion for class certification fails.") (internal quotation marks omitted).

4.    **Plaintiff Has Failed To Establish Commonality And Typicality.**

The commonality and typicality requirements "tend to merge" because "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." <u>Gen. Telephone Co. of Sw. v. Falcon</u>, 457 U.S. 147, 157 n.13 (1982). "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." <u>Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.</u>, 504 F.3d 229, 245 (2d Cir. 2007). Typicality "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." <u>In re Fosamax Prods. Liab. Litig.</u>, 248 F.R.D. 389, 398 (S.D.N.Y. 2008). "Typicality can be summed up in [a] nutshell – as the class representative's claims go, so go the claims of the class." <u>Id</u>. at 398-99. Plaintiff must produce some "quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by a company-wide policy or practice of discrimination". <u>Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79</u>, 238 F.R.D. 82, 95 (S.D.N.Y. 2006).

55

Here, Plaintiff contends that the following issues are common to her and the proposed class members: whether Sprint paid Plaintiff and the class members for all wages and overtime due; whether Plaintiff and class members were expected and/or forced to work off-the-clock; whether Plaintiff and class members were credited and paid for all hours worked; whether "as a result of the actions taken by its supervisory employees and officers, Defendant violated applicable New York wage and hour statutes"; and whether Plaintiff and class members have sustained damages and if so, in what amount. (Pl. Rule 23 Br. at 15.)  In support of typicality, Plaintiff points to the "central disputed issue of law and fact" – that Sprint allegedly deprived Plaintiff and class members of overtime "through its corporate-wide policy of imposing unrealistic sales quotas on its hourly employees to maintain their jobs or risk discipline or discharge, while at the same time attempting to severely restrict overtime pay." (Id.)

Plaintiff's generalized and wholly unsupported allegations of commonality and typicality cannot suffice to establish these Rule 23 requirements.  Plaintiff has done nothing more than list so-called "common issues of law and fact" stated at such a high level of generality that they would be common to almost any claim for unpaid wages regardless of the circumstances.  For example, a claim by a hypothetical plaintiff who alleges that her manager refused to pay her for all hours worked because of her gender or race would encompass each of the generalized so-called "common" issues.  Obviously, such a claim is not at all interrelated to Plaintiff's claim such that she should or could represent that hypothetical plaintiff's interests.  See In re Fosamax Prods. Liab. Litig., 248 F.R.D at 398 (concluding, where plaintiffs argued typicality was met because the claims of all class members arose from defendant's failure to warn and all members were pursuing the same state-law claim, that "[t]his formulation of the issue approaches the typicality inquiry at an excessive level of abstraction").

When Plaintiff's grievance is examined at <u>any</u> level of detail whatsoever, a fatal deficiency is revealed:  Plaintiff has put forth no evidence whatsoever that her theory of a <u>de facto</u> policy existed at any other store in New York, or was applied by any other manager in the State, much less applied throughout the State of New York since 2001.  Even if Plaintiff is able to prove that both of <u>her</u> managers chose to violate Sprint policy and require that she work off-the-clock, she has failed to establish that this purported <u>de facto</u> policy was uniformly applied across the State to all class members since 2001.  <u>See In re Fosamax Prods. Liab. Litig.</u>, 248 F.R.D at 399 (finding that the class representatives' claims will not advance the claims of other class members because each class member's claim will require individualized proof).

The motion for Rule 23 class certification in <u>Mendoza v. Casa De Cambio Delgado, Inc.</u>, 2008 U.S. Dist. LEXIS 27519 (S.D.N.Y. Apr. 7, 2008), was similarly flawed.  In <u>Mendoza</u>, the plaintiffs made a blanket allegation that they were similarly situated to other employees who were entitled to unpaid wages for overtime work.  <u>Id</u>. at *7.  Yet, "no affidavit or other evidence by the employees provide[d] any connection to other employees . . . ."  <u>Id</u>. at *9.  The Court denied class certification, succinctly concluding that "[h]aving read all the papers, one cannot help but ask 'where's the beef.'"  <u>Id</u>. at *10; <u>see also</u> <u>IPO</u>, 471 F.3d at 41 ("[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.").

Plaintiff has failed to put forth sufficient evidence (or any evidence) to show that her claim (her theory of a <u>de facto</u> policy) and the class claims "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  <u>Falcon</u>, 457 U.S. at 157 n.13.  Therefore, her motion for Rule 23 class certification should be denied.

5.    **Plaintiff Is Not An Adequate Class Representative.**

"[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (internal quotation marks omitted).  As such, Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class.  The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." Id. at 625.  In order to determine whether the adequacy requirement is met, the Court should inquire as to whether the plaintiff's interests are antagonistic to the interests of other members of the class.  Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp., 222 F.3d 52, 60 (2d Cir. 2000).

Here, Plaintiff contends that "there is absolutely nothing" to suggest any antagonistic interest and that her interests are coextensive with the class members because they must "prove the same wrongdoing by Defendant as the absent class members in order to establish Defendant's liability." (Pl. Rule 23 Br. at 17-18.)  In fact, Plaintiff's deposition testimony shows that she has an actual and explicit conflict of interest with other proposed class members, namely individuals who held the position of Senior Retail Store Consultant and Assistant Store Manager. As set forth more fully supra Section IV(A)(3)(a), Plaintiff testified that Senior Retail Store Consultants and Assistant Store Managers in both her stores unlawfully denied her overtime pay. Based on her own testimony, Plaintiff clearly has a conflict with portions of the class she seeks to represent as her definition currently includes some of the alleged violators of the New York Labor laws. Alix, 838 N.Y.S.2d at 898 (finding that plaintiff was not an adequate representative where members of proposed class "are the very people allegedly to have participated in defendant's alleged wrongful conduct (or, at the very least, were aware of such conduct)").

58

**6.    Plaintiff Has Failed to Show That Issues Common to the Class Predominate and That Class Action Is the Superior Method of Adjudication.**

The Rule 23(b)(3) predominance requirement "is more demanding than the commonality requirement under Rule 23(a)." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. "[A]n issue is common to the class when it is susceptible to generalized, class-wide proof." In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006). "[T]o meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted). Matters pertinent to superiority include the class members' interests in individually controlling the prosecution of separate actions and the likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3)(A) & (D).

Here, the Plaintiff contends that the central and predominate issue in this case is "whether Defendant's policies with respect to sales quotas and incentives created a state-wide de facto policy whereby Retail Consultants were effectively denied compensation for all hours they worked." (Pl's Rule 23 Br. at 21.) According to Plaintiff, a class action is the superior method of adjudication because if this issue is not tried in a single forum, the result is "potentially hundreds of duplicative individual actions." (Id.)

Plaintiff's use of the term "policy" incorrectly implies that she has identified a practice or rule that is uniformly applied to all putative class members. She has not. Rather, Plaintiff merely speculates that her own managers felt pressured – by Sprint's sales-based incentive

compensation program and focus on controlling excessive overtime from time to time – to violate company policy and allow, encourage or require that Retail Store Consultants work off-the-clock. Then, notwithstanding the fact that allegations regarding her managers' motivation is mere guesswork, by moving for class certification Plaintiff is asking this Court to make an additional untenable leap – to assume, without any evidentiary basis, that her theory applies to all non-exempt hourly-paid employees who worked in Sprint's New York retail stores for a period of six years.

A similar argument was recently rejected in Alix v. Wal-Mart Stores, Inc., 838 N.Y.S.2d 885, 893 (Super. Ct. 2007), and the court's analysis is instructive.[46] In Alix, the plaintiffs sought certification of a class action lawsuit for violation of New York Labor Law. The plaintiffs claimed that company policy discouraged overtime, yet employees were expected to complete their tasks and disciplined for failing to do so and that this "set the stage for routine 'off the clock' hours." Id. The court held that plaintiffs failed to meet the predominance requirement for class certification. Id. at 896. The court reasoned that "[w]hile proof of this atmosphere of unrelenting pressure to cut payroll costs may be relevant, it primarily serves as a backdrop to the fact-specific inquiries that must, of necessity, occupy center stage." Id. at 893. As the court explained, in order to establish a prima facie case of violation of New York Labor Law, "plaintiffs must adduce specific evidence as to which associates worked 'off the clock,' on what occasions, and for how long . . . [and] that defendant either knew or had reason to know that its employees were thus engaged." Id. at 893-94. As the court concluded,

---

[46] Alix applied New York class action law which, similar to Rule 23(b)(3), requires that "questions of law or fact common to the class . . . predominate over any questions affecting only individual members." Id. at 893.

> **[P]roving the essential elements of the alleged Labor Law violations will inescapably require individualized inquiry. Not all hourly associates worked without proper compensation, and the circumstances under which any associate did work "off the clock" or was deprived of premium pay for overtime cannot be established by vague generalizations.** Regardless of whether defendant created, as a result of broadly applicable policies, the conditions under which uncompensated or undercompensated work may have been performed and even if constructive knowledge of such activities could be inferred on a class-wide basis, **each scenario in which an hourly associate may have been deprived of earned wages would be unique.** As a result, defendant's liability to any aggrieved litigant can only be established by the proof of facts specific to that individual plaintiff. Thus, it cannot be said that the common factual questions *predominate* over those which affect only individual members of the proposed class.

Id. at 896 (bold emphasis added).

Assuming arguendo that Plaintiff could prove that she felt pressure to work off-the-clock at some point in time during her employment, such a finding has no import to a hypothetical claim for unpaid wages by a Retail Store Consultant who worked at a different store, let alone at all stores throughout New York State back to 2001. Thus, Plaintiff has failed to establish the predominance requirement. Furthermore, the need for numerous individualized determinations with respect to every putative class member (first to determine if the individual is even a member of the class, see supra Section IV(B)(3), and then to determine liability under New York Labor Law) makes Plaintiff's proposed class action unmanageable, and hence a class action is not superior to other methods of adjudication.

For the same reasons as in Alix, Plaintiff has failed to establish the Rule 23(b)(3) predominance and superiority requirements and therefore her motion for Rule 23 class certification should be denied.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motions for conditional collective certification and Rule 23 class certification should be denied.

DATED:  July 25, 2008

By:    /s/ Elise M. Bloom_____
ELISE M. BLOOM
ebloom@proskauer.com
GREGORY I. RASIN
grasin@proskauer.com
1585 Broadway
New York, New York  10036
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900

HUNTER R. HUGHES (GA State Bar No. 375850)
hrh@rh-law.com
J. TIMOTHY Mc DONALD (GA State Bar No. 489420)
jtm@rh-law.com
ASHLEY R. HURST (GA State Bar No. 724123)
arh@rh-law.com
ROGERS & HARDIN LLP
2700 International Tower
Peachtree Center
229 Peachtree Street, N.E.
Atlanta, GA  30303
Telephone:  (404) 522-4700
Facsimile:  (404) 525-2224

Attorneys for Defendants
Sprint Nextel Corporation and
Sprint/United Management Company