**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Joseph H. Meltzer, Esq.
Gerald D. Wells, III, Esq.
Nick S. Williams, Esq. (NW-5946)
Katherine B. Bornstein, Esq.
Robert J. Gray, Esq.
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

- and -

**THE SHAPIRO FIRM, LLP**
Robert J Shapiro, Esq. (RS-3220)
Jonathan S. Shapiro, Esq. (JS-3068)
500 Fifth Avenue, 14th Floor
New York, NY  10110
Telephone: (212) 391-6464
Facsimile: (212) 719-1616

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA ENG-HATCHER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION; SPRINT/UNITED MANAGEMENT COMPANY; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.07-CV-7350 BSJ-KNF<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTIONS FOR (1) CONDITIONAL COLLECTIVE CERTIFICATION; (2) COURT AUTHORIZED NOTICE; (3) PRODUCTION OF NAMES AND ADDRESSES PURSUANT TO 29 U.S.C. § 216(b); AND (4) CLASS CERTIFICATION**<br><br>ORAL ARGUMENT REQUESTED<br><br>Date Action Filed: August 17, 2007 |

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT .................................................................................................4

   I.   THE COURT SHOULD CONDITIONALLY CERTIFY PLAINTIFF'S PROPOSED COLLECTIVE ACTION ...........................................4

      A.   The Lenient "First Stage" Analysis For Conditional Certification Applies ...............................................................4

      B.   Plaintiff Is Similarly Situated To The Putative Collective Class Members .....................................................................6

      C.   Plaintiff Is Not Required to Prove The Merits Of Her Claims At The Notice Stage ...........................................................10

      D.   Fact-Specific Inquiries Are Not Appropriate At The Notice Stage ..........13

      E.   Defendants' claim That Plaintiff "Mischaracterized" The Evidence Is Baseless—The Evidence Speaks For Itself And Demonstrates That Retail Consultants Are Similarly Situated............................................16

         1.  Sprint's Nationwide Policy To Keep Overtime As Close To Zero As Possible ...............................................................16

         2.  Sprint Has A National Policy Of Setting Sales Quotas For Retail Consultants ...................................................................18

         3.  Sprint's Own Documents Indicate That It Disciplines Any Employee Who Permits A Retail Consultant To Work Overtime When It Has Not Been Authorized..............................................................18

         4.  Defendant Maintained Hotlines To Respond To Complaints From Retail Consultants That They Were Not Paid For All Hours They Worked ...................................................................19

      F.  Plaintiff's Proposed Notice Is Proper ...........................................19

  II.  PLAINTIFF'S PROPOSED RULE 23 CLASS SHOULD BE CERTIFIED .......21

      A.  Defendant's "Ascertainability" Argument Fails............................21

      B.  Defendant's Attack On The "Numerosity" Of The Proposed Class Defies Common Sense..................................................................23

C.  Plaintiff Has Adequately Demonstrated Commonality and
    Typicality ................................................................................................25

D.  Plaintiff Is An Adequate Class Representative ...............................................29

E.  Common Issues Predominate.........................................................................31

CONCLUSION.............................................................................................................33

Plaintiff Melissa Eng-Hatcher ("Plaintiff" or "Eng-Hatcher") hereby submits this Reply Memorandum of Law in Further Support of Plaintiff's Motions for (1) Conditional Collective Certification; (2) Court Approved Notice; (3) Production of Names and Addresses Pursuant to 29 U.S.C. § 216(b); (4) Class Certification pursuant to Fed. R. Civ. P. 23.[1]

## PRELIMINARY STATEMENT

Sprint Nextel Corporation and Sprint/United Management Company's ("Sprint" or "Defendant") opposition brief—which is long on vitriolic attacks, and short on controlling case law—fails to defeat Plaintiff's entitlement to conditional collective certification pursuant to the FLSA and class certification of her state law claims pursuant to Rule 23.

*First*, with respect to Plaintiff's motion for collective certification and related relief, Defendant attempts to short circuit the legal process, and invites the Court to make legal and factual determinations properly made—at the earliest—on summary judgment.  In this regard, Defendant ignores the relatively low threshold Plaintiff is *actually* required to meet, and attempts to conflate the lenient "first stage" analysis required to conditionally certify a class under the FLSA, on the one hand, with an evaluation of the merits of Plaintiff's claims, on the other. Similarly, Defendant ignores the fact that no merits discovery has occurred to date, and self-servingly claims that the close of class discovery marks the point at which the Court may apply the more stringent, second stage certification analysis.  Regrettably for Defendant, that is not the method by which collective certification motions are determined.

---

[1] Defendant submitted an omnibus brief in opposition to Plaintiff's Motion for (1) Conditional Collective Certification; (2) Court Approved Notice; and (3) Production of Names and Addresses Pursuant to 29 U.S.C. § 216(b); and Motion for Class Certification Pursuant to FED. R. CIV. P. 23 ("*Def. Br.*").  To avoid confusion, Plaintiff has likewise filed a consolidated reply.

Indeed, all that Plaintiff is required to do at this preliminary stage is show that she is "similarly situated" to the putative class members she seeks to represent. It is well settled that this standard is exceedingly lenient and, consequently, conditional certification is typically granted. Defendant's premature effort to convince the Court that it should deny Plaintiff's motion because her claims allegedly lack merit does not alter the fact that Retail Consultants (as previously defined) are similarly situated within the meaning of the FLSA.[2]

Tellingly, Defendant does not dispute Plaintiff's preliminary demonstration that Retail Consultants (1) are classified as non-exempt employees working in Defendant's retail stores; (2) are all compensated based on the number of work hours recorded as having worked; (3) are required to meet prescribed sales quotas; and (4) work under Management Personnel[3] who are incentivized to lower labor costs.[4] And ironically, while attempting to isolate Plaintiff's experiences from those of other Retail Consultants, Defendant's own evidence—in the form of questionable declarations procured from its own current employees and deposition testimony taken to date—confirms that she is similarly situated to other Retail Consultants.

---

[2] Defendant asserts that there has been sufficient time for Plaintiff to conduct discovery; however, Defendant has provided wholly insufficient discovery to Plaintiff to date—even for pre-certification purposes. Among other things, Defendant continues to withhold documents relating to nationwide complaints of off the clock work. Despite Defendants' attempt to obfuscate the issue (which is also the subject of a concurrent motion to compel by Plaintiff), Plaintiff nonetheless provides ample evidence to support conditional certification of the proposed collective class.

[3] "Management Personnel" includes assistant store managers, store managers, district managers and retail directors—all of whom are salaried.

[4] Defendants take issue with Plaintiff's description of how the sales quotas for Retail Consultants are determined (including whether all Retail Consultants are required to meet sales quotas), and assert that Management Personnel monitor "headcount" not "labor costs." These are merits-based inquiries which are inappropriate at this stage of the proceedings. Regardless of the precise designation regarding how Management Personnel were compensated, it is clear that they were compensated for keeping employee hours in line with Company expectations.

Further, Defendant's argument that Plaintiff's "*de facto*" illegal policy theory "does not make sense," and that her claims are unsuitable for collective action treatment, is belied by the fact that all of its Retail Consultants were governed by Defendant's nationally instituted sales and labor management policies.

Accordingly, Plaintiff respectfully submits that the FLSA claims of Defendant's' Retail Consultants should be collectively certified under the recognized *Hoffmann-La Roche* standard, and that notice should be distributed.

*Second*, Defendant's arguments in opposition to Plaintiff's motion for class certification of a New York law Rule 23 class action are equally without merit. As demonstrated below, Plaintiff's proposed class is easily "ascertainable" under controlling authority from within this Circuit—authority which Defendant ignores. Next, given the fact that Defendant maintains over 1,200 stores nationally—at least 40 of which are in New York—Defendant's attack on the "numerosity" of Plaintiff's proposed class defies common sense. In addition, Plaintiff's factual demonstration is more than sufficient to satisfy the "commonality" and "typicality" requirements of Rule 23. Moreover, contrary to Defendant's unsupported contentions, Plaintiff is clearly an "adequate" class representative. Finally, Defendant's attack on the "predominance" of the claims of the putative class contravenes governing authority from within this Circuit, and therefore, fails. Consequently, Plaintiff's proposed Rule 23 class should be certified.

In sum, despite Defendant's protestations to the contrary, Plaintiff has supplied ample support for her allegations and easily traversed the certification requirements under both the FLSA and Rule 23. Accordingly, her motions should, respectfully, be granted.

## ARGUMENT

### I.    THE COURT SHOULD CONDITIONALLY CERTIFY PLAINTIFF'S PROPOSED COLLECTIVE ACTION

#### A.    The Lenient "First Stage" Analysis For Conditional Certification Applies

As described in Plaintiff's moving papers, the overwhelming majority of courts have accepted the "two-tiered" approach to conditional class certification under the FLSA. *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 320-321 (S.D.N.Y. 2007) (Batts J) ("Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery"); *Cuzco v. Orion Builders, Inc.,* 477 F.Supp.2d 628, 632 (S.D.N.Y. Mar. 8, 2007) (Robinson J) (noting that "[c]ourts typically undertake a two-stage review in determining whether a suit may proceed as a collective action under the FLSA.").

Because discovery is continuing (and only class discovery has been scheduled by the Court), this case is at the lenient first stage of this process.[5]  Despite this, Defendant seeks (incorrectly) to impose the higher "decertification" standard.  Indeed, Defendant makes much ado about the fact the court-ordered period for *class* discovery has closed.[6]  However, the close of *class* discovery (which did not delve into either the merits of Plaintiff's claims or Defendant's defenses) does not translate to application of the second, more stringent stage of conditional

---

[5] As noted, Defendant's failure to produce an adequate 30(b)(6) designee with respect to complaints and investigations of off-the-clock work by Defendant's Retail Consultants and their deficient responses to Plaintiff's discovery requests is currently the subject of a Motion to Compel. *See* Dkt. No. 42.

[6] *See* Def. Br. at 25 (referring to this Court's Feb. 29, 2008 Scheduling Order (Dkt. No. 26), and May 20, 2008 Scheduling Order (Dkt No. 32) which extended the close of class discovery to June 20, 2008).  Plaintiff respectfully notes that whether class discovery has, in fact, closed is an open question since there is a motion to compel *sub judice*.

certification.[7]  In fact, the second step of a collective action inquiry occurs *after* notice has been

sent, potential putative class members have opted-in and discovery is complete.  *Hallisey v. Am.*

*Online, Inc.,* No. 99-CV-3785, , 2008 WL 465112, *1 (S.D.N.Y. Feb. 19, 2008).  Moreover,

because it is made in anticipation of a later more searching review, a movant bears a very light

burden in substantiating its allegations at this stage.  *Gjurovich v. Emmanuel's Marketplace, Inc.,*

282 F.Supp.2d 91, 95 (S.D.N.Y. 2003).

Tellingly, Defendant cite no cases (let alone any from within this Circuit) to support their

bald assertion that this Court should disregard established jurisprudence and leapfrog the first

stage inquiry for conditional collective certification.  *See* Def. Br. at 23-26.  Moreover,

Defendant disregard the fact that discovery in the present matter is far from complete, including

that significant merits discovery is still to occur.  As such, the Court should conduct the first

stage analysis for conditional collective certification; as established by jurisprudence from this

Circuit.  *See Dumitrescu v. Mr. Chow Enters.,Ltd.*, No. 07-CV-3601, 2008 WL 2600667

(S.D.N.Y. June 30, 2008) (Leisure J); *Iriarte v. Redwood Deli and Catering, Inc.,* No. 07-CV-

5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) (Gold Mag. J); *Damassia v. Duane Reade,*

*Inc.*, No. 04-CV-8819, 2006 WL 2853971 (S.D.N.Y.  Oct. 15, 2006) (Lynch J).

---

[7] *Cf. McElmurry v. U.S. Bank Nat'l Ass'n*, 2006 U.S. Dist. LEXIS 89875 (D. Or. Dec. 8, 2006).  There, the court by-passed the lenient first stage analysis because the facts before it were extensive and discovery (including merits discovery) was largely complete  As such, the court determined there was no need for additional discovery to make a determination of whether the plaintiffs and putative class members were similarly situated to proceed at trial as a collective class.  *Id.* at *13-*14.  Plainly, that is not the case at bar given that merits discovery has not yet been scheduled by the Court, much less conducted.  The instant matter can also not be compared to *Morisky v. Public Serv. Elec. Gas & Co.*, 111 F.Supp.2d 493, 498 (D.N.J. 2000) (also cited by Defendants), a case in which discovery was completed well before the plaintiff's motion for notice was filed.  As a result, the *Morisky* court applied the stricter second-stage standard and found that the plaintiffs had not met their burden to proceed collectively through trial.  *Id.*  As noted above, that is not the case at bar.

**B.     Plaintiff Is Similarly Situated To The Putative Collective Class Members**

As set forth in Plaintiff's Motion, Retail Consultants are similarly-situated because: (1) they are classified as non-exempt employees working in Defendant's retail stores; (2) are all compensated based on the number of work hours recorded; (3) are required to meet prescribed sales quotas; and (4) work under Management Personnel who are incentivized to lower labor costs. Defendant does not contradict these similarities.[8] Moreover, Retail Consultants are similarly situated with respect to their common claim that they were denied compensation by Defendant. As such, Plaintiff unquestionably meets her notice stage burden.

All that certification at this stage of an FLSA collective action requires is that Plaintiff "demonstrate a factual nexus that supports a finding that potential plaintiff's were subjected to a common . . . scheme" that violated the law. *Jackson v. N.Y. Tel. Co*., 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (Koeltl J). Notably, courts in this district have found plaintiffs and putative class members to be similarly situated based simply on the plaintiff's "substantial allegations." *See, e.g., Ayers v. SGS Control Servs., Inc*., No. 03-CV-9078, 2004 WL 2978296, *5 (S.D.N.Y. Dec. 21, 2004) (Ellis MJ). In either case, the standard is lenient and conditional collective action certification is usually granted. *See Gjurovich*, 282 F.Supp.2d at 95-96).

As demonstrated by Plaintiff's deposition testimony and Defendant's own documents, Retail Consultants were, by necessity, required to work off the clock and/or were not paid for all overtime hours they worked for the benefit of Defendant and its Management Personnel. For example, Plaintiff testified at her deposition that she was not paid for the time she spent in

---

[8] To the contrary, Defendants argue that the figure for sales quotas that Retail Consultants must meet are "set" by district managers, based on Defendants' nationwide sales quota policies. *See* Def. Br. at 19-20. Likewise, Defendants proffer several unavailing contentions that Management Personnel are not incentivized to lower labor costs. *See* Def. Br. at 9-10. Yet, Defendants' own documents and the deposition testimony of their 30(b)(6) designees indicates otherwise. *See, e.g.,* Declaration of Gerald D. Wells, III filed on July 11, 2008 in support of Plaintiff's Motion ("Wells Decl.), Exhibit N (SPRMEH-001971).

Defendant's retail stores after she had clocked out at the end of the day.  *See* Wells Decl. Exhibit B, Deposition Transcript of Melissa Eng-Hatcher ("Eng-Hatcher Dep.") at 85:4 – 86:4.  She was routinely required to clock-out of Defendant's time-keeping system yet had to remain in the store while receipts were counted.  *Id.* 45:10 – 49:5; 88:6-13.  Furthermore, Plaintiff regularly continued to work after her scheduled shift had ended, yet was only paid for such hours on holidays and inventory days.  *Id.* 87:7 – 189:5.  Plaintiff also worked during her lunch breaks and on her days off, without being clocked into Defendant's time-keeping system, to perform, *inter alia*, sales-related activities outside Defendant's retail stores. *Id.* at 105:18-21; 105:25 – 107:15.

Moreover, because Defendant's (nationwide) policies were uniform their Retail Consultants were governed by the same *de facto* policy.  These company-wide policies inarguably favor collective certification and issuance of notice to putative class members, particularly where, as here, Defendant was unquestionably on notice that their policies resulted in Retail Consultants not receiving compensation for all hours they worked.  *Fasanelli*, 516 F.Supp.2d at 321.  For example, Plaintiff identified (by name and retail store) several other putative class members who were similarly affected by Defendant's *de facto* policy of not paying all wages due and owing to its Retail Consultants, including Robert Torres, Germaine Gardner, Helen Rosario, Johnny Santana, Cecil Desousa and Jinette Saez.[9]  *See* Eng-Hatcher Dep. at p. 86:116-87:14, 112:16-113:4; 120:9-14; 128:5; 232:11-233:6.  This identification of their potential class members is sufficient to warrant collective certification.  *See, e.g., Laroque v. Domino's Pizza, LLC*, No. 06-CV-6387, 2008 WL 2303493, *6 (E.D.N.Y. May 30, 2008) (Irizarry J) (certifying a collective action where the plaintiff had, *inter alia*, alleged a specific pattern of FLSA violations and identified a number of other potential class members by name);

---

[9] Moreover, Plaintiff also identified individuals with the name "Tarik" and "Raquel" who, Plaintiff believes, will be identified as a result of conditional certification of her collective action.

*Gjurovich*, 282 F.Supp.2d at 96 (certifying a collective action where "[t]he Plaintiff has identified by name a number of current or former . . . employees who held the same or similar positions as the Plaintiff [and] who, like the Plaintiff . . . may not have received overtime compensation."); *see also, Dumitrescu*, 2008 WL 2600667, *5-6 (certifying a collective action where the plaintiffs identified potential putative class members).[10]

Plaintiff's testimony regarding other aggrieved individuals is consistent with Defendant's *own records* which reveal that other Retail Consultants have contacted Defendant alleging that they, too, were not paid for all hours worked.  *See* Wells Decl. Exhibit L (SPRMEH-002946) (see ticket numbers 933162, 991375, 993521, 1025447, 1061020, 1080389, 501806, 733023, 733320).

Furthermore, the declarations submitted by Defendant's current Retail Consultants confirm that Plaintiff and the putative class members are similarly situated: (i) they are all required to clock-in and out using Defendant's time-keeping system; (ii) they are all paid based on the number of hours they are recorded as having worked; (iii) they perform sales-related activities outside Defendant's retail stores; and (iv) they have sales quotas to meet.  *See, e.g.*, Declaration of Ashley Hurst filed in support of Defendant's Response ("Hurst Decl.") (Dkt. No. 52), Exhibits 42-48 therein.  Indeed, the declarations identify not only Defendant's policies

---

[10] *See also Falcon v. Starbucks Corp.*, No. 05-CV-0792, 2008 WL 155313, at *6 (S.D. Tex. Jan. 15, 2008) (denying de-certification of nationwide collective action where there was significant evidence that plaintiffs either worked off-the-clock or had time shaved off of their hours by store managers); *Wilks v. Pep Boys*, No. 02-CV-0837, 2006 WL 2821700, at *6 (M.D. Tenn. Sept. 26, 2006) (denying de-certification where the defendant's time-keeping and compensation policies were set at the national level and resulted in an "unofficial" policy whereby plaintiff's worked off-the-clock and/or have their time records adjusted).  Defendants go to great pains to attempt to distinguish *Falcon* and *Wilks*, arguing that "the factors contributing to "the pressure" in <u>Falcon</u> and <u>Wilks</u> are not present here."  *See* Def. Br. at 38. Yet, the factors Defendant's claim is lacking is belied by the evidence in the case, which indicates, *inter alia*, that (i) Sprint requires Retail Consultants to meet sales quotas; (ii) Sprint's nationwide policy is to have as close to zero overtime as possible; and (iii) Sprint rewards their Management Personnel for meeting sales goals and reducing labor costs.  *See generally* Plaintiff's Motion.

common to all Retail Consultants, but also generally set forth common tasks that Retail Consultants perform, many of which were also identified by Plaintiff. Defendant's assertion that Plaintiff has not demonstrated that Retail Consultants were subjected to a common policy or plan rings hollow, and falls under its own weight. *See* Def. Br. at 28. That these Retail Consultants also suffered from Defendant's *de facto* policy of minimizing hours is born out by Defendant own documents. *See, e.g.,* Wells Decl. Ex. L (SPRMEH-002946)(payroll hoteline records memorializing complaints from Retail Consultants regarding Defendant's failure to pay for all hours worked).

It is evident, therefore, that Defendant's Retail Consultants share substantial similarities with respect to their job functions, time-keeping responsibilities, method of compensation, necessity to meet sales quotas and, ultimately, not being paid for all hours they worked. Even if there is some variation among Retail Consultants, that should not prevent collective certification or dissemination of notice.[11]

In addition, Defendant's tepid assertion that Plaintiffs "class definition is inconsistent with her theory of a *de facto* policy that pressures store management to force retail store employees to work off the clock" does not warrant serious consideration. *See* Def. Br. at 30. Plaintiff has narrowly tailored her class definition and has clearly delineated putative class

---

[11] Defendants' reliance on the assertions contained in the declarations it submitted from its current employees that they all received full compensation for all hours worked are of questionable persuasive value. As one court aptly noted, there is the "heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive." *Mevorah v. Wells Fargo Home Mortgage, Inc.*, No. C 05-1175 MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) (Patel, J.) (quoting *Belt v. Emcare Inc.*, 299 F. Supp.2d 664, 668 (E.D. Tex. 2003).

members.[12]  Proceeding on a collective class basis would be efficient for all parties involved in the litigation.  *See Patton v. Thompson Corp.,* 364 F.Supp.2d 263, 267-268 (E.D.N.Y. 2005) (granting collective certification motion and noting that doing so promoted the "broad remedial purpose" of the FLSA and would not cause any harm to defendants since they could later move for decertification if collective action members were not found to be similarly situated) (citation omitted); *cf. Campbell v. PriceWaterhouseCoopers, LLP*, No. Civ. S-06-2376 LKK/GGH, 2008 WL 818617, *18 (E.D. Cal. Mar. 25, 2008) (in a Rule 23 class certification context, finding that "[a]lthough there may be manageability issues, they are significant only if they create a situation that is less fair and efficient than other available techniques.") (citations omitted).

### C.    Plaintiff Is Not Required To Prove The Merits Of Her Claims At The Notice Stage

In opposing Plaintiff's Motion, Defendant makes a number of conclusory and unsupported legal claims regarding their written (and importantly, unwritten) nationwide policies.  Even if an examination of the Defendant's written and *de facto* policies was appropriate at this stage (which it is not), the question of whether they apply to, and impact upon, all Retail Consultants is susceptible to collective class treatment.

Further, Defendant attempts to preclude *Hoffman-LaRoche* notice by arguing that Plaintiff's experiences are not emblematic of a larger problem at Sprint, but rather are isolated to only her.  *See* Def. Br. at 27-28.[13]  As noted herein, at the first step of the "conditional

---

[12] Defendant argues that the class proposed by Plaintiff should include only individuals with the job title of "Retail Store Consultant."  *See* Def. Br. at 31.  Defendants assert that because only Retail Store Consultants were required to meet sales quotas they were, therefore, not subject to Defendants' *de facto* policy.  However, whether they were or not goes to the merits of this case, and, as such, is improper at this stage of the litigation.  *Hoffman v. Sbarro*, *Inc.,* 982 F. Supp. 249, 262 (S.D.N.Y. 1997)

[13] Remarkably, Defendant claims that Plaintiff must also show that others are interested in joining this case in order for the court to certify a collective action.  *See* Def. Br. at 27. However, Defendant's proffer is unavailing, and its citation to two cases (both from outside this

certification" stage, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." In fact, in granting motions for conditional certification, courts are careful to remain objective regarding the merits of the case. *See Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations that the law has been violated); *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 262  (S.D.N.Y. 1997)("the court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"); *see also, Neary v. Metro. Prop. and Cas. Ins. Co.*, 517 F. Supp.2d 606, 622 (D. Conn. 2007) ("Courts are not to evaluate the merits of potential plaintiffs' claims when determining whether a putative class meets the similarly situated standard") (citations omitted).

Importantly, courts have granted conditional certification even where plaintiffs' work experiences differed.  *Hallisey*, 2008 WL 465112, *2 (granting conditional certification where the defendant pointed out differences in plaintiffs' work experiences, finding that "the fact that employees worked a variety of different jobs in a number of different departments at different locations [did not] preclude class treatment."); *see also, Realite v. Ark Rests. Corp*., 7 F. Supp. 2d 303 (S.D.N.Y. 1998)  (finding that plaintiffs were similarly situated despite working at 15 different restaurants and holding a variety of different positions).

The mere fact that all Retail Consultants "were together the victims of a single decision, policy or plan" supports a finding of "similarly situated, the granting of conditional certification

---

Circuit) lend little support to its bald assertion.  Indeed, as defense counsel are aware, the purpose of sending notice to putative class members is to determine their interest in joining this case.  *Dumitrescu*, 2008 WL 2600667, *5-6 (named plaintiff's alone sufficient to certify collective action).  Further, as Plaintiff noted in her opening brief, there have been multiple actions filed against (and settled by) Defendants regarding substantially the same claims as Plaintiff asserts here.  *See* Plaintiff's Motion at 22.

as a FLSA collective action and court-approved notice to all putative class members." *See Wilks v. Pep Boys,* No. 02-CV-0837, 2006 WL 2821700, *6 (M.D. Tenn. Sept. 26, 2006)(de-certification denied where defendant's "unofficial" policy affected exempt employees nationwide). As such, any slight variation in how Retail Consultants performed off-the-clock work or how their time-records were adjusted is irrelevant. *Falcon v. Starbucks Corp.,* No. 05-CV-0792, 2008 WL 155313, *6 (S.D. Tex. Jan. 15, 2008)(collective action certified despite plaintiff's performing different duties while off-the-clock where evidence showed that the defendant's policies created an environment that led to off-the-clock work and shaving of time-records).

The case of *Francis v. A&E Stores, Inc*., No. 06-Civ.1638, 2008 WL 2588851 (S.D.N.Y. June 26, 2008) (Report and Recommendation) is instructive. There the court rejected defendant's contentions (i) that the geographic scope of the class be limited since plaintiff had not provided any basis for nationwide certification purposes and (ii) that the scope of the class be limited to individuals in the district where plaintiff worked. Rejecting these factual arguments, the court noted that at the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations. *Id*. *2 (citing *Young v. Cooper Cameron Corp*., 229 F.R.D. 50 (S.D.N.Y. 2005). The court further held that any variations among the duties of potential opt-ins could be explored during discovery and addressed in a motion for de-certification. *Id.* at *2.

As Plaintiff and Defendant's other Retail Consultants shared similar experiences and were uniformly subject to Defendant's nationwide *de facto* policy, this Court should likewise grant Plaintiff's Motion.

### D.      Fact-Specific Inquiries Are Not Appropriate At The Notice Stage

Defendant claims that the Court will be required to make individualized factual inquiries of the claims of the putative class members. *See* Def. Br. at 41-46. However, Defendant's attempt to create factual disputes is not appropriate at the first stage of a *Hoffman-LaRoche* motion. Such arguments are reserved for the more stringent second stage analysis and only after discovery is complete. *Hallisey*, 2008 WL 465112 *1. In making this determination, the court does not reach the merits of the plaintiff's claims. *Gjurovich*, 282 F.Supp.2d at 96 ("The ultimate determination regarding the merits of the case … is made later in the litigation process.); *Realite*, 7 F.Supp.2d at 306 ("[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in [the] case."). Consequently, fact specific inquiries are inappropriate at this stage of the proceedings.

The cases cited by Defendant are readily distinguishable. For example, in *Prizmic v. Armour, Inc*., No. 05-CV-2503, 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006), which is cited throughout Defendant's Response, the presiding Magistrate Judge denied the plaintiff's application for conditional collective certification (without prejudice) because plaintiff had failed to provide *any* evidence in support of certification. Further militating against certification was the employer's claim that the plaintiff was not even an employee under the FLSA, a contention that plaintiff failed to rebut. Moreover, the court noted that plaintiff had not "identified a single potential plaintiff" even though the employer produced the names of current and former employees during discovery. *Id*. *8-9. Unlike *Prizmic*, Plaintiff here has identified several other individuals who were victims of Defendant's *de facto* scheme. Moreover, *Prizmic* has been distinguished by subsequent decisions from within this Circuit. *See, e.g., Iriarte*, 2008 WL 2622929, *3 (distinguishing *Prizmic* and holding that plaintiff's affidavit and defendant's

13

discovery responses were alone sufficient to warrant collective certification).  As noted herein,
Plaintiff has supplied ample evidence in support of her motion.

Defendant also relies on *Diaz v. Electronics of Am. Inc.*, No. 04-CV-0840E(SR), 2005
U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005); reliance on that case is also misplaced.  In
*Diaz*, the court denied the plaintiff's motion for conditional collective certification because the
plaintiff did not contend that he was forced to work off-the-clock and had his time sheets altered
at the direction of management.  The court ruled that Diaz's claim was "particular to his
experiences" at the store he worked at and he could not show some similarity across the
Defendant's stores.  *Id.* at *14-15.[14]  Here, however, Plaintiff testified to the existence of
Defendant's *de facto* policy (which was implemented and enforced by Management Personnel).[15]

Unlike the disparate cases relied on heavily by Defendant, courts routinely conditionally
certify FLSA collective actions where employees share the same non-exempt status, are paid by
the hour, have similar work experiences and are all subject to the same policy of uncompensated
work. *See, e.g., Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008); *Young*,
229 F.R.D. at 55; *Patton v. Thomson Corp.*, 364 F.Supp.2d 263, 267 (E.D.N.Y. 2005); *Roebuck
v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234, 238-239 (N.D.N.Y. 2002); *Fasanelli*, 516
F.Supp. 2d at 322; *Adams v. Inter-Con Sec. Systs., Inc.*, 242 F.R.D. 530, 536-573 (N.D. Cal.
2007); and *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-CV-0802, 1999 WL 1081357, *3-4 (D. Or.

---

[14] It was not, as Defendant suggests in its Response, that the court found these types of
legal claims too individualized for certification.  Rather, it was that the single plaintiff's
allegations, in those circumstances and without evidence of management involvement, were too
individualized for class certification.

[15] Defendant's reliance on *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL
210008 (S.D. Tex. Jan. 24, 2007) is similarly misplaced as the court there used a collective
certification standard that is not the established standard in this circuit.

Dec. 1, 1999). [16]  Furthermore, conditional certification is warranted where, as here, Defendant's management benefited by receiving bonus compensation for having their Retail Consultants meet sales quotas, on the one hand, and avoid labor costs (through right control of the number of "on the clock" employees) on the other.  Indeed, as one court aptly observed:

> [Defendant's] general policy of requiring [exempt employees] to perform job duties that could not easily be completed within 40 hours while, at the same time, strongly discouraging overtime … created an environment that at least strongly motivated managers to commit the alleged FLSA violations . . .  [While] Defendant correctly notes that it is not unlawful for an employer to have a policy of discouraging overtime[] [w]here such a policy, however, in combination with other factors, leads to a consistent pattern of FLSA violations, it can support a finding that Plaintiffs are similarly situated for purposes of section 216.

*Falcon,* 2008 WL 155313, *6.

In short, Plaintiff has supplied ample evidence to demonstrate the fact that she is similarly situated to other Retail Consultants, and that she and other Retail Consultants suffered from Defendant's transgressions of applicable wage and hour laws.  *See* Section II, C, *infra*. This alone is sufficient to warrant collective certification.  *See Patton v. Thompson Corp.*, 364 F.Supp.2d 263 (E.D.N.Y. 2005) (granting collective certification where plaintiff demonstrated, *inter alia*, that plaintiff was paid in a similar manner as other employees in her position, leading the court to conclude that "it is likely that there are other similarly situated employees who have a similar viable claim").

Thus, the Court should decline Sprint's invitation to weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated to Plaintiff.

---

[16] At best, Defendant tries to misdirect the inquiry by arguing (Def. Br. at 42, n.46) that since this case is not a "misclassification" case, such cases cited by Plaintiff are inapplicable. This argument misses the point entirely.  The standard for 216(b) certification is the same irrespective of whether the case is an "off-the-clock" case or a "misclassification" case.  *See Hens v. Clientlogic Operating Corp.*, No. 05-CV-381S, 2006 WL 2795620 *2-4 (W.D.N.Y. Sept. 26, 2006) (applying the same standard and certifying claims essentially identical to those here – time spent working off-the-clock before and after shifts and during lunch).

*Id.* Instead, the Court should focus on whether Plaintiff has met her "minimal" burden of showing that other employees may be "similarly situated." *See, e.g., Realite*, 7 F. Supp. 2d at 306. In sum, Defendant has provided no sound basis for ignoring established precedent in this Circuit for applying the lenient standard at this stage of the proceedings and certifying Plaintiff's collective action.

> **E.    Defendant's Claims That Plaintiff "Mischaracterized" The Evidence Is Baseless -- The Evidence Speaks For Itself And Demonstrates That Retail Consultants Are Similarly Situated**

Defendant's purported "mischaracterizations" and references to "Actual Evidence" are nothing more than self-serving attempts to resolve disputed factual issues on the merits which ultimately fall within the purview of the finder of fact. As illustrated below, Defendant's alleged "mischaracterizations" are based on narrow and discrete portions of deposition testimony or documentary evidence. Defendant's citations wholly ignores the weight of other testimony and documentary evidence that supports the conclusion that ample evidence exists to support a finding that Plaintiff is similarly situated with other putative class members, thereby warranting certification of her collective action.

> **1.    Sprint's Nationwide Policy To Keep Overtime As Close To Zero As Possible.**

There is more than ample factual evidence in the record to support Plaintiff's assertion that ss' nationwide policy, as communicated to its Management Personnel, is to keep overtime expenses as close to zero as possible. This is best illustrated in Defendant's centralized procedures for formulating labor hour budgets and headcount budgets for its retail stores.

For example, one of Defendant's FED. R. CIV. P 30(b)(6) designees, Derek Bailey, testified that Defendant's finance division (based at their corporate headquarters in Overland Park, Kansas) creates and disseminates labor hour budgets for retail stores to the Company's

vice-presidents and directors, who in turn communicate them to their district managers. *See* Wells Decl., Exhibit G, Deposition Transcript of Derek Bailey ("Bailey Dep.") 28: 8-29:14. Absent "unique" situations that may affect store business, *i.e.* highway construction, district managers would follow the budget. *Id.* at 28:15-29:1. A primary goal of the "headcount" budget was "to avoid having to have the need to work overtime." *Id.* at 34: 3-20.

Indeed, communications from James Mickey, Defendant's former president of the retail channel outlined the Company's cost containment measures to bring the Company's headcount in line with budget. *Id.* at 43: 4-24. In particular, Mr. Mickey disseminated an e-mail to directors for the North Central, Northeast, Southeast, Southwest and West areas, directing them to, among other things, "eliminate all overtime, except for the ASM position (salary plus), which is limited to 10 hours per week" *See* Declaration of Gerald D. Wells, III in support of Plaintiff's Reply to Def. Br. ("Wells Reply Decl."), Exhibit A (SPRMEH-002915-002919). Plainly, Mr. Mickey's email was disseminated to directors in the area where Plaintiff worked and is a prime example of Defendant's *de facto* policy.[17]

The evidence shows that Defendant exerted similar control over its New York operations. For example, the Company's New York retail director disseminated a memorandum to the Company's store management team advising that it is "our responsibility to do whatever possible to control costs in our stores,"mandating their compliance with scheduling and overtime procedures by March 13, 2006. *See* Wells Reply Decl., Exhibit B (SPRMEH-002847). Clearly, these emails evidence a strong policy by Defendant to do whatever was necessary to keep labor

---

[17] Any attempt by Defendant to distance itself from this email is futile. Indeed, irrespective of any corrective action Defendant took against Mr. Mickey, the simple fact remains that the email was sent from a senior executive of the Company (the president of the Retail Channel) and memorializes the very *de facto* policy which Plaintiff complains of.

costs to a minimum.  That policy – as Plaintiff has attested to – resulted in Retail Consultants not being paid for all hours worked.

### 2. Sprint Has A National Policy Of Setting Sales Quotas For Retail Consultants.

Defendant's object to Plaintiff's characterization that Sprint's sales quota policy is both national in scope and effect, and is promulgated by their corporate headquarters.  *See* Def. Br. At 20.  Moreover, they argue that they do not have a national policy of setting sales quotas for Retail Consultants.  Yet, Defendant's rhetoric and wordplay can not exculpate them from the clear and unambiguous fact that Retail Consultants were required to meet sales quotas; a nationwide policy that was created by Defendant's headquarters and, by Defendant's own admission, implemented by Management Personnel.  *See, e.g.*, Wells Decl. Exhibit N (SPRMEH-001971).  Indeed, Retail Consultants are instructed by Management Personnel to meet their sales quotas.  *See* Eng-Hatcher Dep. at 124:5-15.

### 3. Sprint's Own Documents Indicate That It Disciplines Any Employee Who Permits A Retail Consultant To Work Overtime When It Has Not Been Authorized

Despite Defendant's assertions to the contrary, Sprint monitors compliance with labor costs/headcount budgets on a regular basis to ensure that overtime expense is as low as possible. *See* Bailey Dep. at. 34:17 – 35:13; 37:20 – 38:4.  Moreover, Defendant requires that Retail Consultants must first receive authorization from management personnel (including district managers and regional directors) before working overtime.  *See* Wells Decl. Exhibit E, Deposition Transcript of Kim Dixon ("Dixon Dep.") at 46:7-15; *see also* Wells Decl. Exhibit H, (Bates SPRMEH 000256).  Defendant takes issue with Plaintiff's statement that it is Sprint's policy to formally discipline any employee who permits a Retail Consultant to work overtime when it has not been authorized in advance.  *See* Def. Br. at 20-21.  Yet, Defendant's 30(b)(6)

18

designee, Mark Galluccio, testified to this fact.  *See* Wells Decl. Exhibit F, Deposition Transcript

of Mark Galluccio ("Galluccio Dep.) at 78:5-10; *see* also Wells Decl. Exhibit K, (SPRMEH

002348).  Defendant attempts to "explain away" his testimony by arguing that "theoretically" an

employee could be disciplined.  Yet, the wording of Defendant's own policy belies its assertion.

*See* Wells Decl. Exhibit H (SPRMEH 000256) and K (SPRMEH 002348).  As such, Defendant's

rhetoric is unavailing.

### 4.  Defendant Maintained Hotlines To Respond To Complaints From Retail Consultants That They Were Not Paid For All Hours They Worked

Remarkably, Defendant objects to Plaintiff's characterization of their Hotlines, yet, that

characterization is drawn from Defendant's own documents.  For example, documents provided

by Defendant indicates that Retail Consultants could call Hotlines maintained by Defendant to

raise payroll and ethics issues. Hurst Decl. Exhibit 16 ("Sprint Store Employee Handbook,"

dated March, 2005).   This fact is supported by the deposition testimony of another of

Defendant's 30(b)(6) designees.  *See* Wells Decl. Exhibit D, Deposition Transcript of Rob Lynch

("Lynch Dep.") at 72:20 – 73:6; 80:24 – 81:15.  As such, Defendant's semantics should fall on

deaf ears.

### F.    Plaintiff's Proposed Notice Is Proper

As to the notice that should issue to putative class members, notwithstanding Defendant's

serial (and baseless) objections, the proposed notice ("Notice") submitted by Plaintiff is

consonant with forms approved by courts in numerous prior cases.[18]

Among other things, Defendant contends that the Notice should not include the case

caption and the Court's name at the top because it would "creat[e] the impression of judicial

---

[18] *See* Def. Br. at 46, claiming that the "form of notice Plaintiff proposes is improper in
several respects" without elaborating on and/or specifying the alleged deficiencies beyond bald
assertions (and limited reference to distinguishable case law).

sponsorship of the litigation." *See* Def. Br. at 46. However, the case caption shows nothing more than the Notice is approved by the court and is made pursuant to court order. Likewise, Plaintiff has taken pains to format the Notice in a manner that will optimize the recipients' understanding. This information will help Retail Consultants understand the importance of this piece of mail and will encourage them to read its contents carefully. *See Carlson v. Leprino Foods Co.*, No. 1:05-cv-798, 2006 WL 2375046, at *1 (W.D. Mich. Aug. 15, 2006) ("The use of a caption is important so that readers will not confuse this notice with junk mail (which is unfortunately abundant).").

Similarly, Defendant takes issue with the 120-day period that putative class members have to opt-in to this case. *See* Def. Br. at 46. Yet, this period is sufficiently appropriate to allow putative class members to (i) receive the Notice; (ii) review its contents and weigh their options; and (iii) discuss the case with counsel and others. Furthermore, the 120-day window is necessary to ensure that any undeliverable Notices are returned to Counsel and new addresses are obtained, and to provide Counsel with sufficient time to review returned Consent To Sue forms, contact opt-in class members with additional questions if those forms are not fully (or properly) completed, and finally file the Consent To Sue forms with the court.

Finally, Defendant argues that the Notice should include warnings that opt-in class members may have to pay Defendant's costs and expenses, and answer their Interrogatories and Requests for Production of Document. However, these amendments are improperly calculated to chill participation by putative class members. In addition, they also misstate the law. For these reasons, the Notice proposed by Plaintiff is timely, accurate and fair. [19]

---

[19] Defendant also (and without explanation or reference to any legal authority whatsoever) object to the Notice on the basis that (i) it improperly defines the class and the class period; and (ii) improperly states the statute of limitations as "2 to three years" rather than "2 or 3 years." *See* Def. Br. at 46-47. Plaintiff submits that the wording of the Notice sufficiently delineates

## II.    PLAINTIFF'S PROPOSED RULE 23 CLASS SHOULD BE CERTIFIED

### A.    Defendant's "Ascertainability" Argument Fails[20]

Defendant attempts to argue that Plaintiff's "class definition is not sufficiently ascertainable and should be rejected" because the proposed class "is defined as those individuals who were **not** paid for all hours worked, and **not** paid overtime due," Opp. at 52 (emphasis in original).  Defendant contends that certifying such a class would force the Court "to conduct a *mini-trial* with respect to each hourly employee to determine" if that employee was forced by Sprint policy and procedure to work off-the-clock.  *Id.* (emphasis added).  In forwarding this *in terrorem* argument, Defendant conveniently avoids discussion of authority from this Court that is squarely to the contrary.

Indeed, Defendant's "ascertainability" argument—made as here in the context of Rule 23 certification of a New York labor law class action for unpaid overtime—was explicitly

---

both the class and the class period and the statute of limitations under the FLSA.  Defendant's suggested modifications are therefore without foundation.  However, in order to facilitate the notice process Plaintiff is amenable to meeting and conferring with Defendant to determine the content of the notice.

[20] Defendant's lead-off argument against class certification—set forth in a lengthy footnote—is a quixotic campaign to convince the Court that CPLR § 901(b) may preclude class certification here, even though Plaintiff has waived her right to seek liquidated damages.  *Def. Br.* at 47 n.41.  One of the very cases Defendant relies upon for this dubious proposition, *Lewis v. Fin. Sys., Inc.*, No. 06-CV-1308 (DRH) (ARL), 2007 WL 2455130, *7 (E.D.N.Y. Aug. 23, 2007)—which never actually addresses the issue—itself sets forth numerous cases rejecting Defendant's argument.  *Id.* (collecting cases holding that New York law authorizes certification of a Rule 23 class when plaintiff waives right to recover liquidated damages).  Moreover, given the frequency with which federal courts in New York certify classes asserting claims under the New York Labor Law, Defendant's argument cannot be considered serious.  *See, e.g., Damassia v. Duane Reade, Inc.*, --F.R.D.--, 2008 WL 2201469, *13 (S.D.N.Y. May 27, 2008); *Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04-CV-0022, 2008 WL 941643, *9 (E.D.N.Y. Mar. 31, 2008); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y. 2007); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2006 WL 2819730, *17 (S.D.N.Y. Sept. 29, 2006); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001).  In addition, Plaintiff discusses, *infra*, numerous other federal cases certifying such classes.  In sum, Defendant's argument in this regard is emblematic of the insupportable and extreme positions it assumes throughout its opposition papers.

21

considered and rejected by this Court in *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 341-42

(S.D.N.Y. 2004) (Scheindlin, J.).  As here, in *Noble*,

> Defendants argue[d] that the proposed class, which includes 'all non-exempt employees who were not paid overtime compensation for each hour worked in excess of forty hours per week . . . is not defined by the characteristics of an identifiable group . . . [i]f the Court were to certify [the] proposed class, it would be impossible to determine if an employee was a member of the class until there was an analysis of each employee's claim.  This could result in a series of *mini-trials* . . . .

*Id.* at 341 (emphasis added).  Rejecting this argument, the Court noted that:

> [C]ertification is routinely granted where the proposed class definition relies in part on the consideration of defendants' alleged liability.  Were it otherwise, the benefits of the class action mechanism could be significantly undermined because plaintiffs seeking relief based upon a defendant's alleged unlawful *practice or policy* might be precluded from collectively bringing suit.  Moreover, rejection of defendants' argument . . . is consistent with this Circuit's liberal interpretation of the requirements of Rule 23.

*Id.* at 341-42 (footnotes omitted) (emphasis in original).

Furthermore, federal courts in New York routinely certify classes similar to the proposed

class here in cases seeking recovery for state labor law violations, and find such classes

"ascertainable."  *See, e.g., Niemiec v. Ann Bendick Realty*, No. 04-CV-00897-ENV-KAM, 2007

WL 5157027, *2, 12 (E.D.N.Y. Apr. 23, 2008) (proposed class seeking compensation for

"unpaid minimum wages, and/or overtime premium wages, and/or spread-of-hours wages, and/or

other wages" was "easily ascertainable"); *Toure v. Cent. Parking Sys. of N.Y.*, No. 05-CV-5237

(WHP), 2007 WL 2872455, *4, 8 (S.D.N.Y. Sept. 28, 2007) (class consisting of "non-

management employees . . . who, at *any time* [during the class period] were *denied* overtime

pay" was ascertainable) (emphasis added); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D.

178, 182-84 (S.D.N.Y. 2007) (class of "parking attendants who, *at any time* [during the class period] were *denied* overtime pay and vacation pay" was ascertainable) (emphasis added).

Similar to the cases above, Plaintiff here seeks certification of a class comprised of:

> All persons within the State of New York who: (i) are, or were, employed by Defendant to work in its retail stores as non-exempt hourly employees; (ii) are, or were, not paid for all the hours that they worked in any given workweek; and (iii) are, or were, not paid premium overtime compensation at a rate not less than one and one-half times their regular rate for all hours worked beyond the forty (40) hour work week, within the six years prior to August 17, 2007.

This proposed class is plainly identifiable. Accordingly, and consistent with the weight of authority cited above, Defendant's argument that the proposed class lacks "ascertainability" is without merit, and should be rejected.[21]

## B. Defendant's Attack On The "Numerosity" Of The Proposed Class Defies Common Sense

Continuing its reliance upon the fact that the proposed class here is comprised of non-exempt retail employees who "were not paid" for all hours worked or overtime due (*Def. Br.* at 53 (emphasis in original)), Defendant applies similar sophistry in arguing that Plaintiff has failed to demonstrate numerosity. As pointed out in Plaintiff's moving papers (Class Mem.),

---

[21] In light of the clear authority from this Court and within this Circuit supporting the "ascertainability" of Plaintiff's proposed class for purposes of certification, Defendant's citation to various out-of-jurisdiction cases, several of which are post-certification, and one of which dates as far back as 1975, should be disregarded. *See Def. Br.* at 51. In addition, Defendant's reliance on *Wilson v. Toussie*, No. 01-CV-4568 (DRH) (WDW), 2008 WL 905903, *1 (E.D.N.Y. Mar. 31, 2008) is entirely misplaced. There, the plaintiff sought certification of a proposed class defined, *inter alia*, by whether a potential member i) was "Black[]" or "Hispanic[];" ii) had been "steered" to areas designated for "Black and Hispanic purchasers;" and iii) purchased "an intentionally overpriced and over-appraised" home, a home with a mortgage "they could not afford," a home "with property tax payments higher than represented," homes that were "defectively built," homes "lacking in promised amenities," *"and/or* homes located in different towns and in worse neighborhoods than represented." (emphasis added). Because of this amorphous and confusing definition, the court declined certification. Here, by contrast, the definition of Plaintiff's proposed class is straightforward.

Defendant operates approximately 1,254 stores throughout the United States (*see* Class Mem. at 3), and maintains over 40 stores in New York (*id.* at 13).  Defendant does not dispute any of these facts,[22] but instead attempts to obfuscate the plain fact that Plaintiff easily satisfies the numerosity requirement.

For example, Defendant attempts to confuse the numerosity calculus through an irrelevant reference to "[b]randed exclusive dealer stores."  *See Def. Br.* at 54.  However, the figure of 1,254 stores nationally—according to the testimony of Sprint's own employees— includes *only* company-owned and operated stores,[23] and does not include "branded exclusive" stores.

As discussed in Plaintiff's moving papers, it is not necessary to identify the exact number or identity of class members.  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Thus, when, as here, "general knowledge and common sense indicate that [the class] is large, the numerosity requirement is satisfied."  *Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP, 2008 WL 2949377, *4 (C.D. Cal. July 30, 2008) (certifying California wage-and-hour class). Moreover, "the Court can take judicial notice of the numerosity of the class."  *Leider v. Ralfe*, No. 01-CV-3137 (HB) (FM), 2003 WL 24571746, *8 (S.D.N.Y. Mar. 4, 2003) ("Although the plaintiffs have provided no statistics concerning the size of their proposed class, even a casual stroll along West 47th Street in Manhattan . . . would establish that the class is sizeable"). Accordingly, in light of the fact that Defendant has well over 1,000 stores nationally, and maintains well over 40 stores in New York, a combination of Defendant's own testimony and

---

[22] A review of the "store locator" function on Defendant's own website, www.sprint.com, reveals approximately 50 Sprint branded (as opposed to affiliated) stores in the New York City metropolitan area alone.

[23] *See* Wells Decl., Exhibit E, Dixon Dep. at p. 18:1-2; *see also* Wells Decl., Exhibit D, Lynch Dep. at 38: 13-20 (indicating that the Company owned approximately 1,240 stores).

24

"general knowledge and common sense" dictate that the numerosity requirement is plainly satisfied.

### C.     Plaintiff Has Adequately Demonstrated Commonality And Typicality

As Defendant correctly observes, the commonality and typicality requirements "'tend to merge,'" (*Def. Br.* at 55 (citing *Gen. Tel. Co. of Sw v. Falcon,* 457 U.S. 147, 157 n.13 (1982)), and that Plaintiff must produce "some quantum" of evidence "*tending to show the existence of a class of persons affected by a company-wide policy or practice . . .* " (*Def. Br.* at 55 (citing *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79,* 238 F.R.D. 82, 95 (S.D.N.Y. 2006) (emphasis added)).   Contrary to Defendant's contention, however, Plaintiff's showing in this regard has been more than ample.

For example, in her moving papers, Plaintiff demonstrated, *inter alia*, the following:

**General Company-Wide Policies and Practices Affecting Retail Consultants**

- Defendant is centrally organized and exercises strict control over store management and operations.  *See* Bailey Dep. at 28:13-24; Galluccio Dep. at 100:20–101:8.
- All corporate policies concerning operations, management, compensation, sales targets, quotas, and record keeping for all Sprint stores, including those in New York, are standardized.  For example, corporate managers in Kansas determine the headcount budgets allocated to each store nationally.  *See* Bailey Dep. at 28:13-24; Deposition of Laurilyn Dowling ("Dowling Dep.") at 31:22-24.
- Defendant mandates that Retail Consultants first receive authorization from Management Personnel (including district managers and regional directors) before working overtime.  *See* Dixon Dep. at 46:7-15; *See also* Wells Decl. Exhibit H.
- Sprint's nationwide policy is to keep overtime costs to as close to zero as possible.  Bailey Dep. at 35:11-13.
- Sprint has a nationwide policy requiring Retail Consultants to meet predetermined sales quotas.  *See* Eng-Hatcher Dep. at 124:5-15; Bailey Dep. at 36:7-10.
- Repeated failure to meet a sales quota can lead to termination. Bailey Dep. at 36:16-17.
- Defendant offered multiple incentive programs to Management Personnel based on meeting sales-related targets.  *See* Dowling Dep. at 24:15 – 26:2; *See also* Wells Decl. Exhibit J (SPRMEH 000714).

**Common Duties of, and Specific Policies Affecting, all Retail Consultants**

- All Retail Consultants are non-exempt, hourly employees, and despite having varying job titles, these employees share common job duties. *See* Lynch Dep. at 15:4-9; *See also* Galluccio Dep. at 33:9– 4:2; 54:21– 55:8 (noting that Retail Consultants sell Defendant's products and services).
- Defendant views its Retail Consultants as essentially the same for the purpose of overtime compensation. *Id*.
- All Retail Consultants are all required to clock-in and clock-out using Defendant's point-of-sale computerized system – or "Retail Management System" ("RMS") – which records the total hours they have worked. Bailey Dep. at 58:18 – 59:4; Lynch Dep. at 46:21-23; 58:1-6; *See also* Wells Decl. Exhibit I (SPRMEH 000257).
- The time punches entered into the RMS system are transferred (for payroll purposes) to Defendant's Retail Time and Attendance ("RTA") and PeopleSoft systems for processing. Lynch Dep. at 47:16-19; 65:1-10.
- While Defendant's time-keeping system has changed over time, the requirement for Retail Consultants to record the hours they worked has remained the same. Eng-Hatcher Dep. at 75:10-22; 211:10-12; 212: 4-7; Bailey Dep. at 52:7-12; 58:18 – 59:4; Galluccio Dep. at 61:10-19.
- Defendant's RTA system enables it to maintain and monitor time and attendance. Lynch Dep. at 47:16-19. In addition, store management can access the time-keeping system to adjust the time records of Retail Consultants. Lynch Dep. at 49:9-25; 50:12-19. The time-keeping system records any changes made to employee time records. *Id*.
- All Retail Consultants are only paid for the recorded, adjusted hours they worked. Lynch Dep. at 41:19 – 42-1; 65:14-20.
- Until the fall of 2006, employees were able to make sales without being clocked in to Defendant's time-keeping system. Lynch Dep. at 51:4-10.

**Failure to Lawfully Compensate Plaintiff**

- Plaintiff was employed by Defendant as a Retail Consultant at two of the Company's New York City stores. *See* Eng-Hatcher Dep. at 35:2-15; 36:21-25; 37:15-18.
- During the course of Plaintiff's employment, Defendant failed to compensate her for all hours she worked. *Id*. at 68:3-4; 74:16-19; 83:22-25.
- Plaintiff was not paid for the time she spent in Defendant's retail stores after she had clocked out at the end of the day. *Id*. at 85:4 – 86:4. She was routinely required to clock-out of Defendant's time-keeping system yet had to remain in the store while receipts were counted. *Id*. at 45:10–49:5; 88:6-13.
- Additionally, Plaintiff was not paid for handing out company fliers and performing sales outside Defendant's retail stores. Eng-Hatcher Dep. at 193:2.
- Plaintiff also worked during her lunch breaks and on her days off, without being clocked into Defendant's time-keeping system, to perform, *inter alia*, sales-

related activities outside Defendant's retail stores. *Id.* at 105:18-21; 105:25 –
107:15; 113:18-19; Lynch Dep. at 26:15-25.

**Failure to Lawfully Compensate Other Retail Consultants**

- Defendant's Retail Consultants could not meet Defendant's prescribed sales
  quotas without working off-the-clock. Eng-Hatcher Dep. at 189:24 – 190:8.
- Plaintiff's colleagues, like Plaintiff, were required to remain in the store while
  receipts were counted after having clocked out of Defendant's time-keeping
  system. *Id.* pp. 49:11-21; 86:16 – 87:14.
- Management personnel emphasized that Retail Consultants were to work outside
  Defendant's retail stores, including during lunch hours, in order to generate sales
  and meet prescribed quotas. *Id.* at 124:5-21; 127:12-23.
- Plaintiff and her colleagues, including Robert Torres, Germain Gardner, Helen
  Rosario and Johnny Santana, Cecil Desousa and Jinette Saez all regularly worked
  outside of Defendant's retail store after their shifts had ended. *Id.* at 127:24 –
  128:5.
- Other Retail Consultants complained about their paychecks not accurately
  reflecting all the hours they worked. *Id.* at 112:16 – 113:4; 120:9-14; 232:11–
  233:6.
- The Company's failure to pay all Retail Consultants for all hours worked,
  including premium compensation for all hours worked, appears to be a pervasive
  problem throughout New York state and the country. *See* Wells Decl. Exhibit L;
  *see also id.* Exhibit L (SPRMEH 002946).

Thus, as discussed in Plaintiff's moving papers, Plaintiff and putative class members

share numerous common questions of law and fact, including:

Whether Defendant failed to pay Plaintiff and members of the Class all wages due and
owing to them, including overtime compensation for each hour worked in excess of forty
for a work week;

Whether Plaintiff and members of the Class were expected to and/or forced to regularly
work off-the-clock;

Whether Plaintiff and members of the Class were credited for all actual hours worked;

Whether Defendant failed to pay Plaintiff and members of the Class for all hours worked;

Whether, as a result of the actions taken by its supervisory employees and officers,
Defendant violated applicable New York wage and hour statutes; and

Whether Plaintiff and members of the Class have sustained damages and, if so, what the
proper measure of damages is.

In sum, contrary to Defendant's self-serving assertion, Plaintiff's "allegations of commonality and typicality" are not "generalized and wholly unsupported" (*Def. Br.* at 56); rather, they are specific and substantially documented. Indeed, Plaintiff's showing is plainly sufficient under applicable law. First, Plaintiff need only establish one common question of law or fact in order to meet the exceedingly low threshold set by Rule 23(a)(2). Because, as noted above, there are numerous common questions of law and fact, she has more than met this requirement. Second, typicality is met, as here, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented. . . irrespective of minor variations in the fact patterns underlying the individual claims." *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

Numerous other federal courts in New York have found that the commonality and typicality requirements are satisfied under circumstances directly analogous to those presented here. *See, e.g., Nobel,* 224 F.R.D. at 342-43 (commonality and typicality requirements met with respect to proposed class of "'cooks, stock clerks, cashiers, dishwasher[s], and the like' who were required to work overtime, but not compensated for their additional labor in accordance with state law"); *Niemiec*, 2007 WL 5157027, *7-8 (commonality and typicality present with respect to proposed class seeking compensation for "unpaid minimum wages, and/or overtime premium wages, and/or spread-of-hours wages, and/or other wages"); *Toure*, 2007 WL 2872455, *6-7 (commonality and typicality satisfied in class consisting of "non-management employees . . . who, at *any time* [during the class period] were *denied* overtime pay") (emphasis added); *Mentor*, 246 F.R.D. at 183 (commonality and typicality met by class of "parking attendants who, *at any time* [during the class period] were *denied* overtime pay and vacation pay") (emphasis

added).[24]   Indeed, in wage and hour claims, courts within this Circuit have found commonality and typicality to be satisfied by plaintiffs' own statements alone.  *See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (holding that before merits discovery, "plaintiffs' own statements suffice to establish the commonality and typicality of their wage and hour claims").

Accordingly, as demonstrated above, and in keeping with these authorities, Plaintiff more than satisfies the commonality and typicality requirements.

### D.    Plaintiff Is An Adequate Class Representative[25]

"Adequacy" in the context of Rule 23(a)(4) "amounts to little more than [a restatement of Rule 23(a)(3)'s prescription] that the plaintiff's claim must be typical of those of the entire class." *Ashe v. Bd. of Elections of N.Y.,* 124 F.R.D. 45, 50 (E.D.N.Y. 1989) (citation omitted). As discussed above, Plaintiff's claims are plainly typical of the proposed Class.  *See* Section II, C *supra.*   Moreover, as noted in Plaintiff's moving papers, Plaintiff and the putative class members were all employed by Defendant and share a common interest in challenging Defendant's *de facto* policy of denying them compensation for all hours worked.  Plaintiff's interests are, therefore, completely unified with those of the class because she must prove the same wrongdoing by Defendant as the absent class members in order to establish Defendant's liability.

---

[24] *See also Damassia v. Duane Reade, Inc.*, --F.R.D.--, 2008 WL 2201469, *13 (S.D.N.Y. May 27, 2008); *Gonzalez v. Nicholas Zito Racing Stable, Inc.*, No. 04-CV-0022, 2008 WL 941643,  *9 (E.D.N.Y. Mar. 31, 2008); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y. 2007); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2006 WL 2819730, *17 (S.D.N.Y. Sept. 29, 2006); *Ansoumana  v.  Gristede's  Operating  Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001).

[25] Defendant does not contest the adequacy of Plaintiff's counsel.

Despite these facts, Defendant attempts to argue that Plaintiff has "an actual and explicit conflict of interest with . . . individuals who held the position of Senior Retail Store Consultant and Assistant Store Manager," because these individuals allegedly "unlawfully denied her overtime pay."[26]  *Def. Br.* at 58.  This argument is misplaced, and is insufficient to overcome Plaintiff's clear demonstration of her adequacy.

Defendant does not and cannot contend that such Senior Retail Store Consultants ("SRSCs") and Assistant Store Managers ("ASMs") are "employers" within the meaning of the Labor Law.  Indeed, an "employer" is defined as "any person, corporation, limited liability company, or association *employing any individual* . . . ."  N.Y. Labor Law, art. 6, § 190(2) (emphasis added).  Plaintiff's action in this case is directed only at Defendant, her *employer*, and Defendant—not SRSMs and ASMs—was and is responsible for "unlawfully deny[ing] her overtime pay."  Moreover, ASMs are, by definition, not included in Plaintiff's proposed class as they are not hourly paid employees.  *See* Lynch Dep. at 47:2-5.  As noted above, the proposed class is comprised of only hourly paid employees.

Moreover, common sense dictates that SRSCs —like Plaintiff and the rest of the proposed Class—would have an interest in recovering from Defendant wages that were improperly withheld from them.  *See, e.g.,* Eng-Hatcher Dep. at 88:6-10 (noting that everyone including, presumably SRSCs, had to sign out before the register could be counted after a store closed).  In this regard, Defendant's claim of potential "antagoni[sm]" is entirely theoretical, and is plainly insufficient to overcome Plaintiff's adequacy as a class representative.  *See, e.g., Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, (E.D.N.Y. 1996) (even where there are

---

[26] As Defendant's attack is limited to Plaintiff's representation of Senior Retail Store Consultants and Assistant Store Managers, this amounts to a tacit admission by Defendant that Plaintiff is an adequate representative as to all other groups comprising Plaintiff's proposed class.

"some divergent interests," such "disparity is insufficient to defeat class certification under Rule 23(a)(4)")[27]

In sum, Plaintiff is clearly an adequate class representative.

### E.    Common Issues Predominate

Predominance "tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819, 2008 WL 2201469, *6 (S.D.N.Y. May 27, 2008) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). That test is plainly satisfied here, where among the "predominant" inquiries is whether Defendant's corporate policy of combining unreasonable sales quotas with zero allowance for overtime, necessarily resulted in the violation of New York's labor laws. Indeed, numerous federal courts in New York have held that, under circumstances directly analogous to those present here, the "predominance" inquiry is satisfied. *See, e.g., Noble*, 224 F.R.D. at 336, 339 (class of '"cooks, stock clerks, cashiers, dishwasher[s], and the like" who were required to work overtime, but not compensated for their additional labor in accordance with state law" met predominance requirement); *Niemiec*, 2007 WL 5157027, *12 (predominance satisfied); *Toure*, 2007 WL 2872455, *8 (same); *Mentor*, 246 F.R.D. at 184 (same); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2008 WL 597186, *8 (E.D.N.Y. March 2, 2008).

Ignoring these authorities, Defendant resorts to attacking Plaintiff's proposed class based exclusively upon a single, outlier case from Supreme Court, Albany County which was decided under applicable New York procedural standards. In that case, *Alix v. Wal-Mart Stores, Inc.*, 838

---

[27] To the extent that the Court believes it is appropriate, Plaintiff requests that the Court amend the proposed class definition so as to remove any possibility that the class, as currently configured, is over-broad. *See, e.g., Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP, 2008 WL 2949377, *3 (C.D. Cal. July 30, 2008) (amending and narrowing, *sua sponte*, proposed class definition).

N.Y.S.2d 885, 893-94 (Sup. Ct. Albany County 2007), the court found that predominance was not satisfied because "in order to establish entitlement to relief, not to mention apportionment of damages, plaintiffs must adduce specific evidence as to which associates worked 'off-the-clock,' on what occasions, and for how long." (emphasis added). In addition, the court continued, "plaintiffs must also demonstrate that defendant either knew or had reason to know that its employees were thus engaged." *Id.*

Thus, the *Alix* court apparently adopted a variation of the "mini-trial" argument forwarded previously by Defendant, but which has been squarely rejected by this Court and other New York federal courts.[28] The *Alix* court's ruling also stands in stark contrast to those of federal courts in New York, cited above, in which the predominance inquiry was found to be satisfied. *See, e.g., Nobel*, 224 F.R.D. at 345 ("Although determinations as to damages, exempt status, and alleged labor agreements will require individualized findings, common liability issues otherwise predominate") (footnote omitted); *Mentor*, 246 F.R.D. at 185 ("The Court finds that questions of law and fact—namely the existence of an unlawful policy of denying overtime pay to employees—predominate over questions affecting only individual members"); *Guzman,* 2008 WL 597185, *8 ("Predominance is satisfied here, where the central issue is whether the defendants had a uniform policy or practice denying overtime and spread-of-hours compensation to its employees") (citation omitted).

In sum, *Alix* does not govern this case, and for the reasons previously stated, the predominance inquiry is satisfied here under applicable federal law.

---

[28] The court in *Alix* also based its ruling part on the fact that New York follows the *Frye* test for admissibility of expert testimony, while distinguishing the more liberal *Daubert* test applicable in federal cases. 838 N.Y.S.2d at 895. As discussed above, the *Alix* decision is entirely out-of-step with governing federal authority concerning class certification. Moreover, the court there appeared to invoke any and all reasons for denying class certification, going so far as to find numerosity lacking despite the proposed class consisting of thousands of individuals. *Id.* at 889.

## CONCLUSION

For all of the reasons enumerated above, Plaintiff respectfully requests that this Court: (i) grant her Motion for Conditional Certification; (ii) order Defendant to provide Plaintiff's counsel with a list of all putative class members; (iii) direct issuance of *Hoffman-La Roche* notice to putative collective action members; and (iv) grant her motion for class certification.

Dated:  August 6, 2008                        Respectfully submitted,

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**

By:    */s/ Gerald D. Wells, III*_____
       Joseph H. Meltzer
       Gerald D. Wells, III
       Nick S. Williams, Esq. (NW-5946)
       Katherine B. Bornstein, Esq.
       Robert J. Gray, Esq.
       280 King of Prussia Road
       Radnor, PA 19087
       Telephone: (610) 667-7706
       Facsimile: (610) 667-7056

       - and -

       Robert J Shapiro, Esq. (RS-3220)
       Jonathan S. Shapiro, Esq. (JS-3068)
       500 Fifth Avenue, 14th Floor
       New York, NY  10110
       Telephone: (212) 391-6464
       Facsimile: (212) 719-1616

       *Attorneys for Plaintiff*