NICHOLS KASTER, PLLP
Michele R. Fisher
Paul J. Lukas
Charles G. Frohman
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

ATTORNEYS FOR PLAINTIFF INTERVENORS

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELISSA ENG-HATCHER, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>SPRINT NEXTEL CORPORATION; SPRINT/UNITED MANAGEMENT COMPANY; and DOES 1 through 10, inclusive,<br><br>     Defendants. | Case No. 07-CV-7350 (BSJ)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-INTERVENORS' MOTION TO INTERVENE FOR THE SOLE PURPOSE OF SETTLEMENT DISCUSSIONS** |

## INTRODUCTION

Defendant Sprint/United Management Company, along with Sprint Nextel Corp., Nextel Retail Stores, LLC and Sprint PCS, Inc. (collectively referred to as "Sprint"), is involved in a number of class actions across the country commenced by current and former retail employees for violations of federal and state labor laws.[1]  Consequently, many current and former

---

[1] See, e.g., Sibley v. Sprint Nextel Corp., No. 08-CV-2063 KHV/JPO (D. Kan. 2008); Cavanaugh v. Sprint United Mgmt. Co., No. 04-3418 (N.D. Ga.); Williams v. Sprint United Mgmt. Co., No.

employees are class members or putative class members in more than one of these cases. The large number of plaintiffs has given Sprint the opportunity to try to eliminate its liability for millions of dollars worth of damages by using a broad and general release during settlement proceedings that discharges claims in other pending class actions—claims not raised or contemplated by the plaintiffs in the settled cases. Specifically, class members are faced with releasing their unpaid commission claims because the overbroad release Sprint is using includes such claims, even if they are not asserted in the cases being settled.

Plaintiff-Intervenors[2] represent a class of more than 34,000 commissioned retail employees who work or worked in Sprint's retail operations and who allege that they have been systematically denied the commissions they earned because of Sprint's faulty computer systems. The employees in that large class action assert that the value of their claims may exceed $100 million. The United States District Court for the District of Kansas certified the case as a nationwide class action in November 2008. Sprint is inappropriately attempting to release the Sibley commission claims through settlement in other cases, even if the claims in the lawsuits are wholly unrelated. The plaintiffs in the Sibley action now seek to intervene in the instant action to prevent the improper release of their commission claims. Because Plaintiff-Intervenors have a protected interest that is not adequately represented in the Eng-Hatcher action, Plaintiff-

---

03-2384 (D. Kan.); Webster v. Sprint PCS, No. 06-4623 (C.D. Cal.); Anderson v. Sprint Nextel Corp., No. CV-07-04480 (C.D. Cal.); Quinteros Marin v. Sprint Nextel Corp., No. CV-07-6362 (C.D. Cal.); Senff v. Sprint Nextel Corp., No. 07-6576 (C.D. Cal.); Dunbar v. Nextel of Cal., Inc., No. BC 283092 (Cal. Super. Ct.); Osorio v. Sprint/United Mgmt. Co., No. 08-3228 (N.D. Ill.); Bruner v. Sprint/United Mgmt. Co., No. 07-2164 (D. Kan.); Lipnick v. Sprint/United Mgmt. Co., No. 08-2133 (D. Kan.); Luedike v. Sprint Nextel Corp., No. 07-CV-01082 (S.D. Ind.); Almonte v. Nextel of N.Y., Inc., No. 08-2149 (D. Kan.).

[2] The class representatives in Sibley are Roxie Sibley, Jeanne Noel, Ernesto Bennett, Jamie Williams, Greg St. Julien, Tracy Hernandez, John Jasinski, Jay Richie, and Teisha King.

Intervenors should be allowed to intervene for the sole purpose of ensuring that any settlement that may be reached does not unfairly release their commission claims.

**FACTUAL BACKGROUND**

Plaintiff Eng-Hatcher filed the instant action on behalf of herself and all similarly situated persons in this Court on August 17, 2007 against Sprint Nextel Corporation ("Sprint") for violations of federal and New York labor laws. (Compl. and First Amd. Compl., Dkts. 1, 8.) Plaintiff Eng-Hatcher alleges that Sprint violated these laws by failing to properly pay overtime (the "overtime claims"). (Dkt. 8 at ¶¶ 54, 56-76.) Plaintiff Eng-Hatcher also asserts that Sprint improperly deducted amounts from employee wages in violation of New York labor laws (the "chargeback claim"). (Id. at ¶¶ 55, 77-82.) Plaintiff Eng-Hatcher' has filed motions for conditional and class certification, which are currently pending with the Court. (Dkts. 37, 39.)

Plaintiff-Intervenors brought a nationwide putative class action in the United States District Court of Kansas in February 2008, seeking to recover commissions Sprint denied them in violation of their commission agreements. (See Ex. A.) Plaintiff-Intervenors allege that Sprint failed to provide retail employees with a commission system that accurately tracked, calculated, and awarded them their commissions due under their commission agreements, which resulted in both a breach of contract and a violation of the Kansas Wage Payment Act, K.S.A. § 44-313 et seq.[3] (See id.; Fisher Aff. at ¶ 2.) These employees assert that Sprint denied them commissions in amounts ranging from hundreds of dollars to more than one thousand dollars a month per employee. (Id.; Ex. B at 8.) In November 2008, the U.S. District Court for the District of Kansas certified Sibley as a class action that includes:

---

[3] The retail employees' commission agreements contain choice-of-law and choice-of-forum clauses stating that Kansas law governs the agreements and specifying the Kansas District Court as the federal forum for lawsuits. (Fisher Aff. at ¶ 4.)

> All persons nationwide who worked for Defendants' retail stores since the merger with Nextel[4] including Retail Store District Managers, Retail Store Managers, Assistant Retail Store Managers, Lead Retail Consultants, Retail Consultants, Retail Sales Representatives, and other retail employees whose compensation was based in full or in part on commissions.

(Ex. B at 10.) Pursuant to the Sibley class certification order, Sprint identified 34,608 class members. (Fisher Aff. at ¶ 3.) These commission claims could easily exceed $100 million in value. (Id.) At least 1,756 of the Sibley class members are from the state of New York. (Id.)

The interests of Sibley class members may be compromised in other class action settlements. In May, June and August 2007, three putative classes of California-based Sprint employees sued Sprint in California state court for violations of California law based on Sprint's failure to pay hourly wages, its failure to pay overtime wages, its failure to provide meal and rest breaks, its practice of making illegal deductions from its employees' pay, and its failure to include certain information on its employees' paychecks. (See Ex. C.) These three cases (the "Anderson cases")[5] were removed, consolidated in the District Court for the Central District of California, and subsequently settled. (See Senff v. Sprint Nextel Corp., Civ. No. 07-6576 (SVW/FFM) (C.D. Cal.) Dkt. 1; Anderson v. Sprint Nextel Corp., Civ. No. 07-4480 (C.D. Cal.) Dkts. 1, 29, 44, 46, 51, 53; Quinteros Marin v. Sprint Nextel Corp., Civ. No. 07-6362 (SVW/FFM) (C.D. Cal.) Dkt. 1.) The Anderson cases did not assert any claims that Sprint breached its commission agreements with these employees or failed to timely pay them all their commissions due, yet Sprint sought to have these claims released in conjunction with the settlement. Plaintiff-Intervenors first realized that Sprint was using an overbroad release to settle its other lawsuits in December 2008, when they received notice of the settlement in the Anderson

---

[4] The merger occurred on or about August 2005. (Id. at ¶ 5.)
[5] The consolidated action is entitled Anderson et al. v. Nextel Retail, Sprint Nextel Corp., Sprint Nextel, Court File No. 07-4480 (C.D. Cal).

cases. (Fisher Aff. at ¶ 6.) Shortly thereafter, on January 12, 2009, Plaintiff-Intervenors objected to the settlement of the Anderson cases based on the scope of the release. (Id.; See Ex. D.) As a result of overbroad language included in the release used to settle the Anderson cases— a settlement that resulted in an approximate settlement payout to the class of $600,000— thousands of the Sibley class members residing in California may lose tens of millions of dollars in commissions claims. (See generally Ex. D.) The Anderson court has yet to rule on Plaintiff-Intervenors' objection.[6]

The Anderson cases are not the only cases where Sprint is insisting on broad releases in an attempt to eviscerate the Sibley class members' claims. There is currently a case filed in the United States District Court for the Northern District of Illinois entitled Osorio v. Sprint/United Management Co., Case No. 08 C 3228. Plaintiffs in the Osorio action allege that Sprint violated state and federal laws by failing to pay wages and overtime for time worked pre-shift or post-shift, for attending meetings, for time worked when completing daily set-up or closing duties, and for time elapsed during computer and software start-up. (See Osorio Dkt. 1, Compl. at ¶¶ 3-5.) The Osorio Plaintiffs also assert that Sprint failed to properly or timely pay overtime insofar as it miscalculated overtime payments by failing to include commissions earned in determining the regular rate of pay upon which overtime is based. (Id.) Plaintiff-Intervenors learned from Osorio's counsel that Sprint was seeking to release Sibley class member claims through any settlement that might be reached in the Osorio action. (Fisher Aff. at ¶ 7.) As a result, Plaintiff-Intervenors sought to intervene in that action. (Id.; Osorio Dkt. 57.) The Osorio court allowed Plaintiff-Intervenors to attend a settlement conference in the matter in June 2009 but no settlement was reached. (Osorio Dkt. 61, 63) Sprint has specifically stated that it will not settle

---

[6] The hearing was held on April 27, 2009. (Id.)

the Osorio action without a release of the Sibley claims. (Fisher Aff. at ¶ 7.) Moreover, Sprint's counsel represented to Plaintiff-Intervenors' counsel on June 4, 2009 that Sprint does not believe that settlement negotiations in the Sibley action are appropriate before Plaintiff-Intervenors' experts have reviewed the class-wide commission data to be produced by Sprint this fall and have performed their analysis of commissions due. (Id.) Sprint wants to settle the Sibley class members' claims through other actions, but does not want to negotiate or pay for the claims the Sibley court has certified.

Similar to the Anderson and Osorio cases, the Eng-Hatcher action asserts wage and hour claims. The Eng-Hatcher plaintiffs do not actually raise or contemplate commission claims like those raised in the Sibley action. The Eng-Hatcher action alleges that Sprint failed to pay its employees for overtime time hours worked. It also sets forth a claim that retail employees were subject to unlawful deductions to their pay when a customer to whom they sold a product canceled their plan or returned the product, regardless of the reason for return or cancellation. (Dkt. 8 at ¶ 32.) The Eng-Hatcher action has nothing to do with unpaid commissions like the Sibley action. Plaintiff-Intervenors have hired commission reconciliation experts, have expended considerable money on these experts, and are currently analyzing voluminous data from numerous commission related systems produced by Sprint in order to start their analysis on how much they were shorted in commission payments. Plaintiff-Intervenors seek to intervene in this action to prevent the compromise of their claims for unpaid commissions during any future settlement.

Sprint's has made its goal clear—settle the Sibley commission claims as a throw in to the settlement of other unrelated lawsuits. If Plaintiff-Intervenors are not allowed to intervene to participate in future Eng-Hatcher settlement proceedings, Eng-Hatcher putative class members

who are also members of the <u>Sibley</u> action run the risk of losing claims for unpaid commissions without receiving just compensation.

## ARGUMENT

The Second Circuit has established that "[t]he very purpose of intervention, whether of right or permissive, is to enable those satisfying the requirements of Rule 24 to assert their interests in all pending aspects of the lawsuit, within the limitations of purpose imposed at the time of intervention." <u>United States v. Bd. of Educ. of Waterbury, Conn.</u>, 605 F.2d 573, 576 (2nd Cir. 1979). Plaintiff-Intervenors seek to intervene in this action for the sole purpose of being allowed to participate in any settlement negotiations in order to ensure that their claims and the claims of the certified class they represent are not waived without adequate compensation. Plaintiff-Intervenors meet the requirements to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure. Moreover, this Court should exercise its discretion to allow Plaintiff-Intervenors to intervene by permission under Rule 24(b).

**I.     PLAINTIFF-INTERVENORS MAY INTERVENE AS A MATTER OF RIGHT.**

Intervention in a federal action is governed by Federal Rule of Civil Procedure 24. Rule 24(a) provides for intervention as of right:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). This rule should be liberally construed in favor of potential intervenors. <u>Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.</u>, 772 F.2d 401, 404 (8th Cir. 1985). This is because "intervention is the proper mechanism for nonparties to protect interests that may be

7

adversely affected by a trial court's judgment." Felzen v. Andreas, 134 F.3d 873, 874 (7th Cir. 1998).

Under Second Circuit precedent, a movant must satisfy four requirements to intervene in an action as a matter of right pursuant to Rule 24(a)(2). The movant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. In re Egri, 68 Fed. Appx. 249, 254 (2nd Cir. 2003) (citing New York News, Inc. v. Kheel, 972 F.2d 482, 485 (2nd Cir. 1992)).

Here, Plaintiff-Intervenors not only make a timely application, but also possess a significant interest—their claims for unpaid commissions—that may be impaired by disposition of the action by parties who are not adequately suited to assess and value the commission claims. Therefore, Plaintiff-Intervenors' motion to intervene for the sole purpose of participating in any settlement negotiations should be granted so that Plaintiff-Intervenors may ensure that any resolution reached in this case that also affects members of the Sibley class is fair.

### A.   Plaintiff-Intervenors' Motion To Intervene Is Timely.

In the Second Circuit, there is no precise definition of timeliness. United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2nd Cir. 1994). "The determination of the timeliness of a motion to intervene is within the discretion of the district court, evaluated against the totality of the circumstances." D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2nd Cir. 2001) (internal citations omitted). In assessing timeliness the court may look at the following factors: (1) the length of time the intervenor knew or should have known of his or her interest in this case; (2) the prejudice to the original parties resulting from the intervenor's delay; (3) the prejudice to the

8

intervenor if the motion is denied; and (4) any unusual circumstances. In re Holocaust Victim Assets Litig., 225 F.3d 191, 197-98 (2nd Cir. 2000).

First, Plaintiff-Intervenors' motion is timely. The Eng-Hatcher action is still in the relatively early stages of litigation and the case has yet to be certified as a collective or class action. Plaintiff-Intervenors first realized that Sprint was using an overbroad release to settle another lawsuit in California in December 2008, when they received notice of the settlement in the Anderson cases. Shortly thereafter, on January 12, 2009, Plaintiff-Intervenors filed their objection to the Anderson settlement and a decision on that motion is still pending. Plaintiff-Intervenors subsequently learned in May 2009 that Sprint was attempting to settle another putative class action filed in the Illinois, the Osorio action, through a similar overbroad release, and immediately brought a motion to intervene in that matter. The court allowed Plaintiff-Intervenors to attend the Osorio settlement conference in June 2009. It was at that time that Plaintiff-Intervenors' counsel learned of the parties' efforts to include the Eng-Hatcher Plaintiff and her counsel in on the Osorio settlement discussions in an attempt to try to resolve both cases together. This alerted Plaintiff-Intervenors that Sprint may be attempting to discuss settlement of the Eng-Hatcher case - discussions that have consistently proven to present great risk to the Sibley class members' commission claims. As a result, Plaintiff-Intervenors bring the instant motion to intervene.

Second, neither the Eng-Hatcher Plaintiffs nor Sprint will be prejudiced by Plaintiff-Intervenors' intervention for the sole purpose of ensuring any settlement contemplated does not waive the Sibley class members' commission claims. Plaintiff-Intervenors' counsel would simply be involved to ensure the Sibley class members' millions of dollars worth of commission claims are not released in exchange for payment solely for other unrelated claims. See generally

9

Shore v. Parklane Hoseiry Co., Inc., 606 F.2d 354, 356 (2nd Cir. 1979) (limited intervention was permitted for purpose of participating in the settlement approval hearings).

Third, Plaintiff-Intervenors will be unduly prejudiced if their motion to intervene is denied. Allowing settlement negotiations to proceed in the future without including Plaintiff-Intervenors would be prejudicial and unfair because Plaintiff-Intervenors' interests when it comes to their commission claims are not likely to be adequately considered by the Eng-Hatcher Plaintiff. The Eng-Hatcher Plaintiff and her counsel simply do not have the information, data, resources, and experts Plaintiff-Intervenors have to assess the unpaid commission claims that are not asserted in the Eng-Hatcher action. Indeed, there has been no need for them to obtain or analyze this data because their case does not involve claims for commissions that were never paid. Without intervention, individuals in both the Eng-Hatcher and the Sibley actions may be forced to abandon their right to participate in one suit by participating in the other, even though the claims in the two actions are different and seek damages for different harm. Requiring Plaintiff-Intervenors to forgo claims in one lawsuit just to participate in another action in which distinct legal claims are asserted is unquestionably prejudicial.

In sum, Plaintiff-Intervenors moved to intervene as soon as practicable. Neither the Eng-Hatcher class nor Sprint would be prejudiced by intervention and the Sibley class will be unduly prejudiced if their counsel is not present for settlement negotiations, where Sprint, like it has done in at least two actions so far, will inevitably attempt to get a broad release of their commission claims for which it pays nothing. For these reasons, Plaintiff-Intervenors' motion is timely.

    **B.**    **The <u>Sibley</u> Plaintiffs Possess a Direct, Substantial and Legally Protectable Interest That May Be Impaired By the Resolution of This Action.**

The second and third factors to be determined under Rule 24(a)(2) are related and generally considered together. A potential intervenor's Rule 24 interest must be significantly protectable and direct as opposed to remote or contingent. <u>Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.</u>, 725 F.2d 871, 874 (2nd Cir. 1984); <u>Donaldson v. United States</u>, 400 U.S. 517, 531 (1971). A potential intervenor must also establish that "his ability to protect that interest may as a practical matter be impaired or impeded." <u>Marvel Entm't Group, Inc. v. Hawaiian Triathlon Corp.</u>, 132 F.R.D. 143, 145 (S.D.N.Y. 1990) (internal citations omitted).

Here, Plaintiff-Intervenors have a direct and substantial interest in the pending litigation. Many of the <u>Sibley</u> class members are also putative class members in the <u>Eng-Hatcher</u> action. Plaintiff-Intervenors clearly have a "direct, significant legally protectable interest" in the litigation. Their interest involves their legal claims and their right to participate in the <u>Sibley</u> action to recover their unpaid commissions without having their claims released by another putative class that is asserting different claims and has yet to even be certified.

    **C.**    **The Proposed Plaintiff-Intervenor Class Is Not Adequately Protected By the Existing Parties.**

Proposed intervenors need only demonstrate that their interests may not be adequately represented by the existing parties to be successful in their intervention efforts. Indeed, "an intervenor need only show that representation *may* be inadequate, not that it *is* inadequate." <u>Kleissler v. U.S. Forest Serv.</u>, 157 F.3d 964, 974 (3rd Cir. 1998) (quoting <u>Conservation Law Found. v. Mosbacher</u>, 966 F.2d 39, 44 (1st Cir. 1992)) (emphasis added). "The burden of making this showing is 'minimal' with the weight of responsibility for demonstrating adequate representation falling on the opposing party." <u>CBS v. Snyder</u>, 136 F.R.D. 364, 368 (S.D.N.Y.

1991). Specifically, this Court has relied on three factors when determining if an existing party adequately represents a potential intervenor's interests: (1) whether the interests of a present party in the suit are sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervenor would add some necessary element to the proceedings which would not be covered by the parties in the suit. Cook v. Pan Am. World Airways, Inc., 636 F. Supp. 693, 697 (S.D.N.Y. 1986) (citing Blake v. Pallan, 554 F.2d 947, 955 (9th Cir. 1977)).

      The Eng-Hatcher putative class and the Plaintiff-Intervenor class do not have the same ultimate objective. The Eng-Hatcher action asserts claims requesting compensation for unpaid overtime and improper wage deductions, while the Sibley action focuses on unpaid commissions due to Sprint's faulty commission calculation system. The Sibley Plaintiffs seek compensation for *all* unpaid commissions, but the Eng-Hatcher plaintiffs do not seek to include these commissions in their overtime or unlawful deduction claims. Plaintiff-Intervenors have hired several experts who are analyzing voluminous data from numerous systems that make up Sprint's commission process to determine how much they have been shorted in commission pay. The Eng-Hatcher plaintiffs simply do not have this data or knowledge because they are not pursuing a claim for unpaid commissions. Without intervention, the Eng-Hatcher named plaintiffs could, if the case is certified as a class for settlement purposes, settle all the class members' claims without receiving adequate compensation for the commissions they earned that are unpaid.

Plaintiff-Intervenors' interests will not be adequately protected by the current litigation without their participation. Therefore, pursuant to Rule 24(a)(2), intervention as a matter of right is proper in this proceeding.

## II.   IF THE REQUIREMENTS OF RULE 24(A) ARE NOT MET, PERMISSION TO INTERVENE IS APPROPRIATE UNDER RULE 24(B).

Plaintiff-Intervernors have adequately demonstrated that intervention as a matter of right is appropriate in this case. However, there is yet another basis to allow for intervention under Fed. R. Civ. P. 24(b).

The Federal Rules of Civil Procedure also allow for permissive intervention. Specifically, Rule 24(b) provides, in pertinent part:

> On timely motion, the court may permit anyone to intervene who: (1) is given a conditional right to intervene by a federal statute; or (2) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b). An applicant must demonstrate that (1) the applicant shares a common question of law or fact with a party, (2) the application is timely, and (3) the court has independent jurisdiction over the applicant's claims. Cook, 636 F.Supp. at 698-99. Unlike Rule 24(a), subsection (b) does not require a potential intervenor to demonstrate a direct, significant legally protectable interest. See generally SEC v. Realty & Improvement Co., 310 U.S. 434, 459 (1940) (permissive intervention does not require "direct personal or pecuniary interest in the subject of the litigation").

If a movant clearly demonstrates all three requirements of Rule 24(b), the rule "vests broad discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims." Cook, 636 F.Supp. at 699 (quoting SEC v. Everest Mgmt. Corp., 475 F.2d 1236, 1240 (2d Cir. 1972)). When deciding whether to grant permissive intervention, courts should determine "whether the intervention will unduly delay or

prejudice the adjudication of the rights of the original parties." Pitney Bowes, 25 F.3d at 73 (citing Fed. R. Civ. P. 24(b)(2)).

      **A.    Sprint Will Argue The Claims in Sibley and Eng-Hatcher are Similar Enough to Give This Court Jurisdiction Over Any Settlement and Permit a Broad Release.**

Plaintiff-Intervenors have already established in Sections I.A. and I.B. that their motion is timely, and that the interests of the Eng-Hatcher plaintiffs and the Plaintiff-Intervenors overlap due to their involvement in both cases. The overlap of putative class members in the Eng-Hatcher and Sibley actions may result in the Court approving a settlement that releases many of the Sibley Plaintiffs' commission claims by approving an overtime pay settlement negotiated solely by the Eng-Hatcher putative class. Moreover, Sprint, will inevitably argue, like it did in the Anderson cases, that the claims in Eng-Hatcher are similar enough to those in Sibley to warrant a broad release. Plaintiff-Intervenors disagree. However, to the extent the Court decides to approve an overbroad release in conjunction with any future settlement, Sprint will argue that the Court has jurisdiction over Plaintiff-Intervenors' commission claims pending in Sibley. Sprint cannot argue that the factors are not present to warrant intervention under Rule 24(b).

      **B.    Intervention By the Proposed Plaintiff-Intervenor Class Will Not Unduly Delay Or Prejudice The Original Parties to the Eng-Hatcher Action.**

If the three requirements under Rule 24(b) are established, the court must determine if intervention would unduly delay or prejudice the original parties. See Sec. Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1381 (7th Cir. 1995) (holding that "the court must give some weight to the impact of the intervention on the rights of the original parties").

Intervention poses no potential for undue delay. This is not a last-minute intervention that would threaten an extensively negotiated, carefully crafted consent decree. See In re Discovery Zone Sec. Litig., 181 F.R.D. at 596 (discussing City of Bloomington v. Westinghouse

Elec. Corp., 824 F.2d 531 (7th Cir.1987)).  To the contrary, Plaintiff-Intervenors seek to intervene prior to the parties expending time, resources, and money negotiating and drafting a settlement to which Plaintiff-Intervenors will ultimately object.  Plaintiff-Intervenors simply seek to be involved in discussions before a settlement is reached for the sole purpose of ensuring that the settlement does not unfairly prejudice their commission claims asserted in the Sibley action.  Moreover, as demonstrated above, the interests of the Eng-Hatcher putative class members will not be unduly prejudiced.  Indeed, intervention will in fact protect the rights of these putative class members to get a fair result in both the Eng-Hatcher and the Sibley actions.

## CONCLUSION

For the foregoing reasons, Plaintiff-Intervenors respectfully request that this Court grant their Motion to Intervene for Purposes of Settlement.

Date: 7.20.09                                     NICHOLS KASTER, PLLP

*/s/ Michele R. Fisher*
Michele R. Fisher
fisher@nka.com
Paul J. Lukas
lukas@nka.com
Charles G. Frohman
frohman@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: 612-256-3200
Fax: 612-215-6870

ATTORNEYS FOR PLAINTIFF-INTERVENORS