```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
MELISSA ENG-HATCHER,                       :
on behalf of herself and all others        :
similarly situated,                        :   07 Civ. 7350 (BSJ)
                                           :        Order
                Plaintiff,                 :
                                           :
        v.                                 :
                                           :
SPRINT NEXTEL CORP., SPRINT/UNITED         :
MANAGEMENT CO. and DOES 1 through 10       :
inclusive,                                 :
                                           :
                Defendants.                :
------------------------------------------x
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/13/09

Plaintiff Melissa Eng-Hatcher ("Eng-Hatcher" or "Plaintiff") brings this action, on behalf of herself and all others similarly situated, against Sprint Nextel Corporation, Sprint/United Management Company, and Does 1 through 10, inclusive, (collectively "Sprint" or "Defendants") for violations of the Federal Labor Standards Act of 1938, 29 U.S.C. § 201-219 ("FLSA"), and New York Labor Law ("NYLL"), Article 6, § 190 et seq. Before the Court are the motions of Plaintiff Melissa Eng-Hatcher for 1) conditional certification of the instant action as a collective action pursuant to the Fair Labor Standards Act, and 2) certification of the instant action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons set forth below, both of Plaintiffs' Motions for Certification are DENIED.

1

## BACKGROUND & PROCEDURAL HISTORY

Defendant Sprint operates over 1,200 stores throughout the United States. (Pl. Mem. Supp. § 216(b) Mot. at 6.) Sprint employed Plaintiff Eng-Hatcher at two of the company's New York stores as a Retail Sales Consultant of wireless products for 17 months in 2004 and 2005. (Id. at 9.)

Plaintiff claims that she was denied her statutorily mandated right to unpaid wages and overtime compensation. (Compl. ¶¶ 1, 10.) More specifically, Plaintiff asserts that she and members of the proposed classes "were required to perform work for the benefit of Defendant while they were 'Off the Clock'" and were not compensated for such work. (Id. ¶ 16.)[1] Plaintiff argues that the "effect of this [was] that the actual hours worked by Plaintiff and members of the Classes were above forty during some workweeks, thereby making them eligible for premium overtime compensation." (Id. ¶ 19.)[2] Plaintiff also claims that under NYLL, she did not receive "the mandated

---

[1] Plaintiff alleges that she was routinely required to clock-out of Defendant's timekeeping system yet had to remain in the store while management counted receipts. (Compl. ¶¶ 10-33.) Plaintiff alleges that she regularly continued to work after her scheduled shift had ended, yet was only paid for such hours on holidays and inventory days. (Id.) Plaintiff also claims that she worked during her lunch breaks and on her days off, without being clocked into Defendant's time-keeping system, to perform, inter alia, sales-related activities outside Defendant's retail stores. (Id.)
[2] Additionally, Plaintiff alleges that she and potential class members "were not provided with all mandatory meal breaks," and "were often limited to taking their lunch break within their retail location." (Compl. ¶ 20.) There, Plaintiff and potential class members "were unable to take their full meal break uninterrupted," yet "Defendont still automatically deducted time for the lunch break from the time records . . . for that day." (Id. ¶ 21.)

2

minimum wage for all hours worked," among other related claims. (Id. ¶ 8.)

Before the Court is Plaintiffs' Motion for Conditional Certification of the collective action pursuant to the FLSA, as well as a request for the Court to order Defendants to provide Plaintiff's counsel with a list of all putative class members to which Hoffman-La Roche notice would be issued. Plaintiff also seeks to represent a state-wide class of persons pursuant to Federal Rule of Civil Procedure 23 to recover all unpaid wages and overtime compensation pursuant to the NYLL. (Compl. ¶ 3.)

Plaintiff filed her Complaint on August 17, 2007. On February 29, 2008, Magistrate Judge Kevin Nathaniel Fox ordered that a three-month period of discovery should commence regarding "all discovery, of whatever nature, respecting whether plaintiff is similarly situated to other prospective plaintiffs." (Feb. 29, 2008 Order.) This period was later extended until June 20, 2008 (May 20, 2008 Sched. Order.) for a total discovery period of nearly four months. Before this discovery took place, Plaintiff did not request conditional certification of the action. Typically, parties conduct this type of discovery after conditional certification has been granted. 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1807 (3d ed.).

3

It is evident that Plaintiff conducted several depositions and received hundreds of documents from Defendants during their four-month discovery period. Plaintiff attempted to extend the discovery period and also filed a motion to compel testimony and documents from Defendants, but both requests were denied by the magistrate judge. Plaintiff did not file any objections to these orders with the Court pursuant to Federal Rule of Civil Procedure 72, and the class discovery period is therefore closed regarding whether Plaintiff is similarly situated to other Sprint employees. On July 11, 2008, Plaintiff made her Motion for Certification pursuant to both the FLSA and Rule 23.

## I. FLSA 216(b) CLASS CERTIFICATION

Regarding her FLSA claims, Plaintiff requests that the Court certify the collective action and authorize the distribution of notice to "[a]ll persons who work or have worked for Sprint as Retail Consultants anywhere in the United States...." (Pl. Proposed Notice of Collective Action, at 2.) Retail Consultants are defined as "all other similarly situated individuals who worked as non-exempt hourly paid employees in Defendant's retail stores. (Id.)[3]

---

[3] The term "Retail Consultants" encompasses Retail Sales Consultants as well as other positions. (Pl. Mem. Supp. § 216 Mot. at 1.) Retail Sales Consultants are specifically assigned the task of selling wireless products and accessories. (Hurst Dec. Ex 3 (Eng-Hatcher Dep.) at 37:8-9.)

4

### A. FLSA LEGAL STANDARD

The FLSA permits employees to maintain an action "for and in behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b). Although the FLSA does not provide for notice of the collective action, courts have discretion to authorize such notice. See Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170-71 (1989).

Courts examine the pleadings and affidavits to determine whether the putative class members are "similarly situated." Hoffmann v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997). In the early stages of litigation, plaintiffs bear the burden of "making a modest factual showing sufficient to demonstrate that [he] and [they] together were victims of a common policy or plan that violated the law." Id. The court must determine whether there is a "factual nexus between the [plaintiff's] situation and the situation of other current and former [employees]." Hoffman, 982 F.Supp. at 262. If such a nexus exists, the court will conditionally certify the action.

If conditional certification has been granted, then upon the completion of discovery, defendants may move to de-certify the class if discovery reveals that plaintiffs are not similarly situated. Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971, at * 3 (S.D.N.Y. Oct. 5, 2006). At that stage, courts must apply a more "stringent standard" of proof in

determining whether plaintiffs are similarly situated. Id. "[I]f the claimants are similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).

**B. FLSA DISCUSSION**

Presently, Plaintiff requests a "first stage" conditional certification. Because the Court has previously allowed Plaintiff almost four months to uncover "all discovery, of whatever nature, respecting whether plaintiff is similarly situated to other prospective plaintiffs" (Feb. 29, 2008 Order.), Defendants argue that Plaintiff does not qualify for the more lenient standard of a conditional class certification but should be judged under the more rigorous second stage standard. This argument is moot since the Court holds that the Plaintiff fails to meet even the lenient standard for conditional class certification.

In her papers, Plaintiff alleges that Defendants employed a "nationwide *de facto* policy," born of two explicit policies, that "incentivized" management to engage in illegal actions. First, Defendants "exercised strict control and direction over its labor costs," including a policy to "have its Retail

Consultants incur as close to zero overtime hours as possible." (Pl. Mem. Supp. § 216(b) Mot. at 2.) Second, Defendants rewarded management with "lucrative bonus compensation for meeting (or exceeding) sales targets." (Id. at 3.) Plaintiff alleges that Sprint has fundamentally inconsistent policies — maximizing sales and minimizing overtime — and that they conflict to the detriment of Retail Consultants. As Plaintiff's theory goes, because store managers rely on their Retail Consultants' sales to earn bonuses, managers must force their Retail Consultants to work off-the-clock since sales quotas are unattainable when only regular hours are worked. Yet Sprint's policy of discouraging overtime pay incentivizes managers to not pay their employees for these hours. (Id.)

Defendants argue that their policies are legal. (Def. Opp. Br. at 32-33 ("Incentive compensation plans are a widely used, effective, and legal way to reward and incentivize employees who are productive and successful in their sales roles," and "controlling overtime expenses is both legal and good business.").) Defendants also argue that Plaintiff is merely theorizing that two legal policies incentivize managers to act illegally, and this theory fails to meet the modest factual showing of a common policy or plan that violated the law. (Id. at 26.)

7

It is undisputed that Sprint maintains official corporate policies that prohibit working off-the-clock and mandate that all overtime, even if not pre-approved, be paid. (See Hurst Dec. Ex. 12 at 15 (2007 Employee Guide)(stating that employees "cannot perform 'off the clock' ... work without pay,"); Ex. 13 at 5 (Pay Practices Guidelines)(stating that "[o]vertime must be paid for all hours worked regardless of whether the hours are approved by management.").) Defendants claim that they train all employees regarding these policies and procedures. (See Hurst Dec. Ex. 10 (Wyatt Dec.) at ¶ 7.)

The Court finds that Plaintiff has not presented persuasive evidence that it is likely Sprint has a common plan or practice requiring Retail Consultants to work uncompensated overtime at many of its locations nationwide. While the Plaintiff claims that Sprint's de facto policy causes dozens, if not hundreds, of Sprint managers in practice to violate Sprint's clear, lawful written policies, she merely presents her own deposition testimony as proof of these allegations.[4] In her deposition,

---

[4] Plaintiff also points to records from Sprint's Employee Helpline to argue that Retail Consultants have contacted Sprint with complaints similar to Plaintiff. (Pl. Rep. at 8.) However, this fails to prove that Sprint had an illegal policy since each of the "aggrieved" employees apparently reached a resolution to their grievance by calling the hotline. (See Wells Decl., Ex. L (records of complaints made to Sprint's Employee Helpline regarding paycheck concerns; every one of the tickets Plaintiff cites appears to be resolved by the hotline operator).) The hotline is seemingly a valid and effective way of preventing employees from not being paid for the hours they worked, not evidence of a plan to the contrary.
   Plaintiff similarly cites the names and docket numbers, and nothing more, of six other lawsuits filed in various courts against Sprint that she

8

Plaintiff identifies five other Retail Consultants by name, employed at the same stores as Plaintiff, that she claims told her that they also did not receive pay for overtime worked.[5] Eng-Hatcher provides no details about these conversations, and provides no affidavits from any other employees corroborating her claims.[6] This reliance on limited anecdotal hearsay does not persuasively show that Sprint likely has a common plan or practice, implemented through individual store managers, requiring Retail Consultants to work uncompensated overtime at many of its 1,200 locations.

Alternatively, Defendants provided more than a dozen affidavits to support their argument that Plaintiff is not similarly situated to her potential class members based on the evidence provided. These affidavits include declarations from current and former Retail Consultants from the two stores where

---

claims allege similar off-the-clock allegations. (Pl. Mem. Supp. § 216(b) Mot. at 22.) Plaintiff argues that such suits are evidence of Retail Consultants nationwide who apparently would want to join this collective action. The Court finds these citations do not add to the showing required here for certification.

[5] Plaintiff only makes general statements in deposition testimony as to the content of her conversations with these other employees. (E.g. Eng-Hatcher Dep. 88:14-19 ("Q: Do you know one way or the other, as you sit here today, whether anyone else was paid for that [over]time? A: Yes. Raquel -- we would have conversations. She said she didn't get paid overtime."); see also 234:21-235:20 (alleging that her co-workers also worked through lunch breaks and stating that "I'm not sure if they were paid or not ... I know that I wasn't paid during my lunch break when I did activations.").)

[6] While not a conclusive factor in its decision, the Court does find it telling that after nearly four months of discovery Plaintiff is unable to present any evidence, other than her own allegations, that other current or former aggrieved Sprint Retail Consultants exist and desire to participate as plaintiffs in this case.

9

Plaintiff was employed, including Retail Sales Consultants that worked alongside Plaintiff as well as her supervisors.[7]

Defendant's evidence shows that Sprint does discourage employees from working overtime. (Hurst Dec. Ex. 36 (Bailey Dep.) at 35.) But it also demonstrates that store managers have discretion over whether overtime is authorized. (See Id. Ex. 10 (Wyatt Dec.) at ¶ 20 (Sprint Store Manager stating that "Sprint Nextel's policy is that overtime hours must be pre-approved by me [store manager] or my Assistant Store Manager. I sometimes instruct employees that they may not work overtime during a particular month. However, even if an employee works overtime without permission, the employee is paid time for the overtime....").). And, as mentioned above, it is undisputed that Sprint maintains an official policy of paying all overtime, even if not pre-approved. (See Hurst Dec. Ex. 12 at 15 (2007 Employee Guide).)

There also is no question that Sprint promulgates sales quotas that all staff are expected to meet. (Id. at ¶ 13.) However, as shown by several of the affidavits of retail employees provided by Defendant, the size of these quotas vary widely by store, by month, with the number of employees in the store, with past store performance, and with other factors.

---

[7] Defendants also provided extensive excerpts from depositions of Plaintiff and various Sprint executives, as well as, inter alia, several official corporate documents such as the Master Incentive Compensation Guide (Hurst Dec. Ex. 8), Employee Guide (Ex. 12), and Pay Practices Guidelines (Ex. 13).

10

(See, e.g., id. Ex. 11 (Ancion Dec.) at ¶ 29 (Sprint Store Manager who hired Plaintiff, stating: "The actual sales quotas were set by the District Managers and Directors and changed monthly and could vary from store to store.").); id. Ex. 5 (Galluccio Dep.) at 54-55 (Sprint District Manager testifying that the "quotas that are set for the store managers are based on my quota [as district manager], and they're divvied out to the stores based on run rates within my area. However, ... each district does them differently.").

Despite these variables, Plaintiff claims that her alleged experience is typical of Retail Consultants nationwide. There is however no admissible proof from or about any specific employee other than Eng-Hatcher (and her overly general statements about others) that support her claim that Retail Consultants commonly work unpaid overtime. Because of the discretion given to Sprint management at the local level, as well as the wide range of variables given to determining sales quotas and overtime practices, the Court is not persuaded that local Sprint managers throughout the country are beholden to a common policy to force their Retail Consultants to work unpaid overtime. While collective actions have been conditionally certified in off-the-clock cases, and in cases with employees at various locations, and in cases where a defendants' written policies were commonly violated in practice, the Court has not

11

located any case in which conditional certification was ordered when there were as many variables as presented here.

As noted above, Plaintiff does identify five other Retail Consultants by name that she claims were also not paid for overtime. Plaintiff cites three district court cases within the Second Circuit and argues that the mere "identification of [] potential class members is sufficient to warrant collective certification." (Pl. Reply Br. at 7.) However, each of those cases involve a much more modest class composition. See Laroque v. Domino's Pizza, LLC, 557 F.Supp.2d 346, 353 (E.D.N.Y. 2008)(approving a class of delivery drivers and customer service representatives employed at one chain outlet); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 91, 94 (S.D.N.Y. 2003)(certifying a class composed of employees of one grocery store location); Dumitrescu v. Mr. Chow Enterprises, Ltd., No. 07 civ. 3601, 2008 WL 2600667 (S.D.N.Y. June 30, 2008) (certifying a class composed of employees of two restaurants). The Court finds that Plaintiff's case is different in the size and scope of her requested class certification. Identifying potential class members may be a sufficient showing when the potential class is made up of individuals "who worked in the same location, during the same general period, under essentially the same management," see Laroque, 557 F.Supp.2d at 353, but fails to meet the modest factual showing required by the courts

when plaintiff attempts to impute her own limited experience to a nationwide class. Here, the minimal evidence fails to justify the size and scope of Plaintiff's requested class certification.

Accordingly, Plaintiff's motion to conditionally certify the class under the FLSA is hereby denied, and the FLSA portion of this case will proceed as a claim on behalf of the Plaintiff only.

## II. RULE 23 CLASS CERTIFICATION

Plaintiff also requests that the Court grant her Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). Plaintiff proceeds on behalf of herself and "[a]ll persons within the State of New York who: (i) are, or were, employed by Defendants to work in its retail stores as non-exempt hourly employees; (ii) are, or were not, paid for all the hours that they worked in any given workweek; and (iii) are, or were not paid overtime compensation ...." (Pl. Mot. for R. 23 Class Cert. at 1.)

### A. RULE 23 LEGAL STANDARD

To qualify for Rule 23 class certification, Plaintiff must prove that the putative class action meets each of the four requirements set forth in Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. In re IPO Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006). Additionally, the Second Circuit has added an "implied

requirement of ascertainability" to the express requirements of Rule 23(a). Id. at 30. This requirement "obligates plaintiffs to demonstrate that the class they seek to certify is readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." McBean v. City of New York, No. 02 Civ. 5426, 2009 WL 2524617 (S.D.N.Y. Aug. 14, 2009).[8]

## B. RULE 23 DISCUSSION

### 1. Numerosity

Rule 23(a)(1) requires a potential class to be "so numerous that joinder of all members is impracticable." Evidence of exact size or identity of class members is not required, see Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993), and numerosity is generally presumed when the prospective class consists of 40 members or more. Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 370 (S.D.N.Y. 2007).

In her papers, Plaintiff states that a "simple google search reveals over 40 Sprint stores in New York. Obviously, each store employed a number of Retail Sales Consultants during the class period" that qualify as members of the proposed class. (Pl. Mot. for R. 23 Class Cert. at 13.) The Court agrees that

---

[8] While the Court should not decide the merits of the claims at the class certification stage, Rule 23 certification "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established." In re IPO Sec. Litig., 471 F.3d at 42.

joinder of all members would be impracticable and thus meets the numerosity requirement.

2. Commonality and Typicality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical" of the class. As a practical matter, the two requirements merge in the Second Circuit's inquiry. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999); see also Iglesias-Mendoza, 239 F.R.D. at 370. The commonality and typicality requirements are satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove defendant's liability." Robidoux, 987 F.2d at 936-37. Plaintiffs must produce some "quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by a company-wide policy or practice of discrimination." Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 95 (S.D.N.Y. 2006).

Plaintiff has failed to offer sufficient evidence that her theory of a *de facto* policy existed at other stores in New York. See supra § I(B). Even if Plaintiff is able to prove that her managers chose to violate Defendant Sprint's policy and require

15

that she work off-the-clock, she fails to establish that this policy was uniformly applied across the state to all class members. Thus, Plaintiff fails to show that "each class member's claim arises from the same course of events." Robidoux, 987 F.2d at 936-37. See also In re Fosamax Prods. Liab. Litig., 248 F.R.D.389, 399 (S.D.N.Y. 2008)(finding that a class representative's claims were not typical since they "hardly advance the claims of other class members at all" because "almost every element [of the] claim will require highly individualized proof of each class members' ... circumstances"); Mendoza v. Casa De Cambio Delgado, Inc., 2008 U.S. Dist. LEXIS 27519, at **9-10 (S.D.N.Y. Apr. 7, 2008)(finding that plaintiffs' failure to define the class through evidence makes certification inappropriate).[9] The Court finds that Plaintiff's claims are not typical.

3. Fairness and Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to demonstrate that the proposed action will fairly and adequately protect the interests of the class. To satisfy this requirement, plaintiffs must show (1) that there is an absence of conflict and antagonistic interests between them and the class members, and (2) that

---

[9] Plaintiff provides a number of cases where the Court found a class representative's claims to be typical and common to other class members and argues these cases are "directly analogous" to the present case. (Pl. Reply Mem. at 28.) The Court finds each of those cases distinguishable, largely due to Plaintiff's lack of a viable theory of unlawful conduct by Defendant, as described above.

plaintiffs' counsel is qualified to and capable of conducting the litigation. Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007). Defendants do not challenge the qualifications or capability of Plaintiff's counsel but do argue that Plaintiff's interests are antagonistic to other class members.

The Court finds that Plaintiff's interests are in conflict with other members of the class, specifically Senior Retail Store Consultants ("SRSCs").[10] SRSCs are part of Plaintiff's proposed class because they are "non-exempt hourly employees" despite having a supervisory role over other Retail Consultants. Together with other management positions, Plaintiff claims that her SRSCs allegedly did not credit her for all time that she worked despite requests to do so. (Wells Dec. Ex. B (Eng-Hatcher Dep.) at 77:10-79:19, 85:15-86:5.) If SRSCs are some of the very individuals that denied Plaintiff her compensation, Plaintiff's interests would be in conflict with those class members. See Alix v. Wal-Mart Stores, Inc., 838 N.Y.S.2d 885, 898 (N.Y. Sup. 2007)(finding that plaintiff was not an adequate representative where members of proposed class "are the very people allegedly to have participated in defendant's alleged wrongful conduct

---

[10] Defendants also claim that Assistant Store Managers would be in conflict with Plaintiff. However, Assistant Store Managers are not hourly paid employees and would thus not be part of the proposed class. (See Hurst Dec. Ex 33 (Lynch Dep.) at 47:2-5; Pl. Mem. Supp. R. 23 Mot. at 1 (defining the class as "All ... non-exempt hourly employees ...").)

17

(or, at the very least, were aware of such conduct)"). The Court thus finds that Plaintiff's claims are antagonistic with potential class members.

4. Ascertainability

Finally, the Court finds that Plaintiff fails to meet the "ascertainability" requirement as defined by the Second Circuit. The implied requirement of ascertainability "obligates plaintiffs to demonstrate that the class they seek to certify is readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling." McBean v. City of New York, No. 02 Civ. 5426, 2009 WL 2524617 (S.D.N.Y. Aug. 14, 2009). When a proposed class definition "links class membership with the merits of the class members' claims," the class is not ascertainable. Kiobel v. Royal Dutch Petroleum Co., 2004 U.S. Dist. LEXIS 28812, at *17 (S.D.N.Y. Mar. 31, 2004)(citations omitted); see also Wilson v. Toussie, 2008 U.S. Dist. LEXI 25469 (E.D.N.Y. Mar. 31, 2008)("A class's definition will be rejected when it requires addressing the central issue of liability in a case and therefore the inquiry into whether a person is a class member essentially require[s] a mini hearing on the merits of each [plaintiff's] case.")(quotations omitted).

In this case, the Court has found that Plaintiff has failed to identify an illegal policy employed by Defendant Sprint. See supra § I(B). Without such an overarching policy, determinations

18

of class membership would require an inquiry into the merits of each member's claims. Class membership could not be ascertained until it was determined whether the Retail Consultant at issue was forced to work off-the-clock by a store manager. Thus, as the class is defined by Plaintiff, "determining a membership in the class would essentially require a mini-hearing on the merits of each case." Kiobel, 2004 U.S. Dist. LEXIS 28812, at *17 (citations omitted). The Court finds that the class is not ascertainable.

Accordingly, the Plaintiff's motion to certify the class under Federal Rule of Civil Procedure 23 is hereby denied, and the NYLL portion of this case will proceed as a claim on behalf of the Plaintiff only.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification as a Collective Action pursuant to the FLSA and as a Class Action pursuant to Rule 23 are DENIED.

SO ORDERED:

                                                BARBARA S. JONES
                                                **UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
              November 13, 2009